UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>)<br>v.                                          )<br>)<br>)<br>)<br>MICHAEL CROOKER,                 )<br>                    Defendant       ) | Criminal No. 04-30034-MAP |

MEMORANDUM WITH REGARD TO DEFENDANT'S
REQUEST TO BE RELEASED ON CONDITIONS
August 27, 2004

NEIMAN, U.S.M.J.

Michael Crooker ("Defendant") has been named in an indictment dated July 13, 2004, charging him with transportation by a convicted felon of a firearm in interstate commerce in violation of 18 U.S.C. § 922(g). While the matter was still at the complaint stage, the Government moved for detention pursuant to 18 U.S.C. § 3142(e) and (f), asserting that Defendant presented a risk of flight and a danger to the community. (See Document No. 02.) The court ordered that Defendant be temporarily detained, (see Document Nos. 03 and 04), and set the matter down for a preliminary examination and detention hearing. That hearing commenced on June 29, 2004.

After hearing testimony and argument, the court continued the preliminary examination at the request of the parties until July 15, 2004. The court also allowed the Government's motion for detention without prejudice, counsel for Defendant having indicated that he would not be contesting detention at the time but intended to pursue

the matter through a further motion. As indicated, Defendant was thereafter indicted and, on July 15, 2004, arraigned.

Thereafter, Defendant moved to re-open the detention hearing (see Document No. 14), which motion was allowed. A hearing on Defendant's request for release on conditions was held on August 24, 2004, at which time the court ordered that Defendant's detention remain in effect. The court now memorializes its decision in written form.

## I. Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, a defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142(b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

The Supreme Court has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). For this reason, a defendant may be detained only if the judicial officer finds by (1) *clear and convincing evidence*, that the defendant is a

danger to the community, or (2) *a preponderance of the evidence*, that the defendant poses a risk of flight.  See 18 U.S.C. § 3142(f); *United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991); *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986).  Furthermore, the judicial officer "may not impose a financial condition that results in the pretrial detention of the person."  18 U.S.C. § 3142(c).

The Bail Reform Act establishes a two-step procedure for making the determination that a defendant should be detained.  First, the Government is entitled to move for detention when a defendant has been charged with an offense enumerated in the Act for which Congress has determined that detention is warranted.  See 18 U.S.C. § 3142(f)(1).  Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the defendant and the safety of the community against any danger posed by the defendant's pretrial release.  *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether "any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Government is aided by the statutory presumptions created by 18 U.S.C. § 3142(e).  Where the offense charged is one of the offenses enumerated in section 3142(f)(1), a rebuttable presumption is created by section 3142(e), that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the defendant has been convicted of a federal offense that is described in section 3142(f)

or an offense under state law that would have been described in section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense.

The Government may invoke the same rebuttable presumption if the judicial officer finds probable cause to believe that the defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed in (a) the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c).

In making the determination as to whether a defendant overcomes the statutory presumption of 18 U.S.C. § 3142(e), the judicial officer is compelled to consider the following factors:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including --
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence

>  for an offense under Federal, State, or local law; and
>
>  (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g). The Government has not invoked the rebuttable presumption in the instant case.

## II. Finding of Facts and Discussion of Whether Detention is Warranted

The court makes the following factual findings and conclusions of law.

### A. Nature of Offense: § 3142(g)(1)

As described, Defendant, a convicted felon, has been charged with the transportation of a firearm in interstate commerce, specifically, a homemade silencer. The Government has indicated that Defendant faces a fifteen year mandatory minimum sentence were he to be convicted.

### B. The Weight of the Evidence: § 3142(g)(2)

Although Defendant questions whether the silencer at issue falls within the definition of a firearm for purposes of the statute, the court believes that the case against Defendant is strong.

### C. History and Characteristics of Defendant: § 3142(g)(3)(A)

Defendant is fifty-one years old and was born in Springfield. He obtained a G.E.D. while previously incarcerated. Other than times of incarceration, Defendant has lived in and around the Springfield area his entire life. He presently resides in Feeding Hills. Defendant is thrice divorced and has one adult child. Defendant's parents reside in Southwick.

Defendant has been unemployed since October of 2003. Defendant reports that he has used heroin since 1968 and crack cocaine since 2002 and received methadone treatment from 2000 to 2004.[1]

### D. Probation Status of Defendant: § 3142(g)(3)(B)

It appears that the charged crime was not committed while Defendant was on probationary or parole status.

### E. Whether Defendant Poses a Risk of Flight: § 3142(e)

The Government's assertions to the contrary, the court does not believe that Defendant poses a serious risk of flight. Defendant's only family ties are to western Massachusetts and he does not appear to have the financial or psychological wherewithal to flee.

### F. Whether Defendant Poses a Risk to the Community: § 3142(g)(4)

The Government vigorously asserts that Defendant, if released, will pose a danger to the community and that there are no conditions which would guard against that danger. The court agrees. Although the charge itself, standing alone, would not call for detention, circumstances surrounding the charge, together with Defendant's own threats and admissions in a series of letters written to this court and others, makes clear that Defendant poses a real threat to the community at large, if not particular

---

[1] At the time of his initial appearance, Defendant reported that he was concerned about his withdrawal from heroin. After consulting with the head nurse at the Ludlow Correctional Center, the court was convinced that Defendant's withdrawal could be monitored and treated at that facility. Defendant's counsel has since reported that Defendant is receiving medical care at the Wyatt Center to which Defendant was subsequently transferred by the U. S. Marshal Service.

individuals as well.

At the time of his arrest, Defendant was found to be in possession -- either in his car or at his residence for which search warrants were executed -- of explosive devices, agents and chemicals, as a result of which the Government may well seek additional charges against him. At least one of the explosive devices was detonated by law enforcement officials, revealing traces of aluminum powder and potassium nitrate. In addition, the Government indicates that ingredients for highly toxic poisons were found at Defendant's residence, including rosary peas which can be used for the production of abrin, a highly poisonous substance, as well as lye and a large jar of castor beans, i.e., the ingredients for ricin. The Government is convinced as well that Defendant has, in fact, manufactured ricin.

In addition, as a result of the execution of a search warrant at the home of Defendant's father, the Government found, in a shed on the property, three hundred rounds of ammunition together with some of Defendant's personal papers. As the Government argues, a fair inference can be drawn that this ammunition belongs to Defendant, his father having indicated that the only thing he kept in the shed was gasoline. The Government also asserts that e-mails sent by Defendant to an individual in the midwest, to whom the silencer was mailed, acknowledge his having sent nitric acid through the mail in full knowledge of the illegality of that activity.

As if these facts were not enough to demonstrate dangerousness, Defendant's own correspondence, copies of which were provided to the court and sealed with his agreement, reveals erratic and threatening behavior on his part. As examples only,

Defendant refers to Timothy McVeigh as a "martyr," makes mention of his own threats against the Government, expresses admiration for Osama bin Laden's brilliance, and threatens to continue to purposefully make weapons at the detention facility at which he presently resides.

Of course, even in cases where there is the potential for danger, there may still be strict conditions of release which can serve as a reasonable guard against that risk. *See Patriarca*, 948 F.2d at 794. Here, Defendant suggests, those conditions include residing with his parents and electronic monitoring.

The court does not agree that the suggested conditions of release, or any others for that matter, can reasonably assure the safety of the community. The very place where Defendant seeks to reside -- even if acceptable to his parents -- is where he apparently secreted ammunition. As importantly, Defendant's written taunts and threats cannot be excused by his prior use of drugs, his litigation experience, or as a "cry for help" for allegedly unfair treatment at the hands of the U.S. Marshal and the court. They are real threats which have to be taken seriously and cannot be thwarted by an electronic bracelet. Accordingly, Defendant shall continue to be detained.

IT IS SO ORDERED.

DATED: August 27, 2004

                                                               /s/ Kenneth P. Neiman
                                                             KENNETH P. NEIMAN
                                                             U.S. Magistrate Judge