UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
vs. ) NO. 04-656-MAP
)
MICHAEL CROOKER )

PRELIMINARY MEMORANDUM OF LAW

**FACTS**

On July 13, 2004 a Federal Grand Jury returned a single count indictment against the defendant charging him with a violation of Title 18 U.S.C. Sec. 922 (g).

The indictment alleged the defendant knowingly caused a firearm to travel in interstate commerce.

The firearm which is the subject matter of this indictment was a so called silencer that was seized by Federal Agents from a package deposited for shipping with the Southwick Post Office. Postal authorities conducting an independent investigation had x-rayed the parcel and believed it contained a conventional firearm. After examining the contents the suspected firearm turned out to be an air gun not governed by Federal Law. A second object found in the parcel was a cylindrical metal tube threaded on one end to corresponding threads on the air rifle. This item is the "firearm" which is the subject of the instant indictment.

**ARGUMENT**

Section 922 (g) provides in pertinent part "it shall be unlawful for any person - (1) who has been convicted of a crime punishable by imprisonment for a term exceeding one year; to ship or transport in interstate or foreign commerce any firearm, or ammunition or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

1

An examination of two other sections within the act is necessary to properly focus the defendant's claim.

Section 924 entitled <u>Penalties</u> prescribes the sentence range for violations of section 922(g). For first offenders Sec. 924 (a) (2) provides "whoever knowingly violates subsection (a)(b),(d), (g), (h), (i), (j), or (o) of Section922 shall be fined as provided in this Title, imprisoned not more than 10 years or both. Section (3) (e)(1) provides for up to 15 years imprisonment by persons previously convicted of three serious drug offenses or a violent felony.

Section 921 entitled "<u>Definition</u>" purports to define the various terms included with this section.

Section 921 (a) (3) defines the term "firearm" and sets forth four classes of items which qualify as firearms. Section (c) defines a firearm as "any <u>firearm</u> muffler or <u>firearm</u> silencer".

The remaining three classes of items fitting the definition of firearms defined in paragraph (3) are (A) any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosives; (B) the frame or receiver of any such weapon, or (D) any destructive device -

Paragraph 24 further defines the term "firearm silencer" and "firearm muffler" as "...any device for silencing, muffling or diminishing the report of a <u>portable</u> <u>firearm</u>, including any combination of parts, designed, redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler and any part intended only for use in such assembly or fabrication.

The defendant claims the criminal statute at issue here is vague and overbroad as a result of the intersection of these three sections both on their face and as applied to his conduct here.

The defendant alleges paragraph (24) of sec.921 provides the ambiguity complained of. It appears to set out three classes of items which can be considered firearm silencers.

(1) devices for diminishing the report of portable firearms

(2) a combination of parts designed <u>and</u> intended for assembly of a firearm silencer

(3) any part solely intended for use in assembling a firearm silencer

Nowhere within the statute is the term "portable firearm" defined.

However the term portable firearm is construed, it would appear that the three classes of

2

defined items found in paragraph (24) must relate solely to the definition of firearms found in paragraph (3) as it appears in (A), (B), and (D) and cannot relate to subparagraph C.

In that regard, in order to qualify as a silencer under the statute the device must knowingly be intended to operate upon a firearm as defined in paragraph (3) and not an airgun.

The Supreme Court has held that a facial vagueness challenge to a statute may only succeed if the plaintiff demonstrates the law is impermissibly vague in all of its application.

Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489 (1982) Whiting v. Town of Westerly, 942 F. 2d 18 (1st Cir. 1991).

A "facial" challenge in context means a claim the law is "invalid" in toto and therefore, incapable of any valid application. Steffan v. Thompson, 415 U.S. 452 94 S. Ct. 1209 (1974).

When citizens cannot determine what conduct a law proscribes, the law's vagueness may raise constitutional due process concerns. The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. United States v. Harris, 347 U. S. 612 (1954).

The government takes the position the statute as it is now written criminalizes the, possession of any device capable of diminishing the report of a firearm and violates the law even if the device's ability to diminish is an unintended or unknown consequence or merely random and gratuitous. When taken to its logical extreme; a towel capable of being wrapped around the muzzle of a firearm, a pillow held over the barrel, or an empty litre soda bottle if fitted over the barrel, would all be capable of diminishing the report of a firearm to some degree.

Under the government's view the possession of these common household items would violate the statute regardless of a lack of knowledge or intent to render such a result.

Whether or not section 922 requires the government to establish both the knowledge the device is a silencer and to intend possession for that purpose, becomes a question of statutory construction.

The definition of the elements of a criminal offense is entrusted to the Legislature, Liparota v. United States, 471 U.S. 419 105 S. Ct. 2084 (1985).

Determining the mental state required for commission of a federal crime requires consideration of the statute and inference of the intent of Congress.

3

Traditionally, "scienter", was a necessary element in every crime. The existence of Mens rea is the rule rather than the exception to the principles of criminal jurisprudence. United States v. Balint, 258 U.S. 250 (1922).

There does exist a line of precedent which does impose strict criminal liability in what are termed "public welfare" or "regulatory offenses". This, however, is not such a case.

The Supreme Court has relied on the nature of the statute and the particular character of the items regulated to determine whether the mental element of the offense should be interpreted as dispensing with conventional Mens rea requirements. Staples v.United States, 511 U.S. 600 114 S.Ct. 1793 (1994)

This case is not unlike Staples in that the question is whether the defendant must know of the characteristics that make the item a statutory firearm. Even dangerous items can be so commonplace and generally available they do not alert individuals to the likelihood of strict regulations.

"All of the various host of items that can diminish the report of a firearm are not inherently dangerous and without a firearm are usually completely harmless."

As the Court in Staples stated; "it is unthinkable to us Congress intended to subject...citizens to a ten year term of imprisonment, "when what they reasonably believed was true turns out wrong.

In United States v. Syverson 90 F. 3rd 233 (7th cir. 1996), the Seventh Circuit examined the Staples rationale in a silencer case which related to a conventional firearm.

Finding that Staples controlled the definition of the elements in the silencer case before it, the Court found the government would have to prove a defendant knowingly possessed a silencer by proving the defendant knowingly possessed the item and that he knew the item had the features of a silencer holding... "under Staples the government had to prove the cylinder was made for the purpose of silencing a firearm... "not that the purpose was realized"... Syverson at 232

In this case the present language of the first part of paragraph 24 permits conviction for the possession of any device which can reduce the report of a statutory firearm without regard to knowledge or intent. This failure to include both a knowledge and scientific requirement renders the statute vague in all its applications. In contrast the second and third parts do require such

4

elements when dealing with an unassembled part or parts which are intended to be utilized to assemble such a device.

## THE RULE OF LENITY

The Rule of Lenity requires in certain circumstances that anbiguity in criminal statutes be resolved in a defendant's favor. Brennick v. United States, 337 F. 3rd 107 (1st Cir. 2003). United States v. Gronerson, 114 S. Ct. 1259 (1994), United States v. Bowen, 125 F. 3rd 9 (1st Cir. 1997)

A criminal statute is to be construed strictly against the government and in favor of the defendant.

A statutory expression of one thing is an applied exclusion of other things omitted from the statute. When a statute is plain and unambiguous it is interpreted according to its ordinary meaning.

A statute is ambiguous if it can be read in more than one way. United States v. O'Neil, 11 F. 3rd 292 (1st Cir. 1993).

A normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning.

The statutory definition at 18 U.S.C. 921 (a)(24) of "any device for silencing" is vague and ambiguous and must be construed in Crooker's favor under the Rule of Lenity. The terms Congress employed in the second and third paragraphs requires the government establish the device was <u>designed or intended</u> to be used in silencing a portable firearm, the government relies on the first part of the definition to claim any device capable of being used as a firearm-silencer or "which may be used" is prohibited." (See Lab Report attached As Exhibit A ). But Congress specifically rejected these terms in the 921 (a)(24) silencer definition but they do in fact use them in other parts of the Federal and National Gun Control Acts. See for example 18 U.S.C. 921 (a)(17)(A) "designed for use," 18 U.S.C. 921 (a)(17)(B)(I) "which may be used", 18 U.S.C. 921 (a)(17)(C) "primarily intended to be used," 26 U.S.C. 5845(e) "capable of" and "not capable" of," 26 U.S.C. 5845(h) "incapable of."

In all cases of statutory construction the Court is required to interpret the words of these statutes in light of the purpose Congress sought to serve.

The object is to give effect to Congressional purpose so long as Congressional language does not bar that result. <u>United States v. Lachman,</u> C.A. I. (Mass) 2004 WC 2378087, <u>Reno v. Koray</u>, 515 U.S. 50 (1995).

When rules of statutory construction produce conflicting results, court's must discern as closely as possible what the legislature intended.   <u>Helvering v. Stockholm Enskilda Bank</u>, 293 U.S. 84 56 S. Ct. 50 (1934).

In this case Legislative intent is impossible to infer because of the apparent inconsistencies within paragraph (24). In any event the breath of the language used in the first part of this paragraph is so sweeping and unrestrained by the exclusion of a requirement to show knowledge and intent as to render the statute unconstitutionally vague.

## CONCLUSION

For all of the reasons set forth above, the defendant is entitled to the requested relief.

THE DEFENDANT

BY: _____
Vincent A. Bongiorni, Esq.
95 State Street, Ste 309
Springfield, Ma. 01103
(413) 732-0222
BBO #049040

**DEPARTMENT OF THE TREASURY**
**BUREAU OF ALCOHOL, TOBACCO AND FIREARMS**

# Firearms Technology Branch
# Report of Technical Examination

Firearms Programs Division

Washington, D.C. 20226

Phone: (202) 927-7910

TO:

Special Agent Larry Ward
Bureau of Alcohol, Tobacco and Firearms
433 N. Summit Street, Suite 701
Toledo, OH 43604

DATE: JUL 1 3 2004

YOUR: 773060-04-0068

RE: Paulus, Michael

OUR: 2004-575-RDC

DATE EXHIBITS RECEIVED: 6/25/04

DELIVERED BY: Fed Ex 791873362199

TYPE OF EXAMINATION REQUESTED:

Test, Examination, Classification

**EXHIBITS:**

1. Cylindrical device, manufacturer unknown, no serial number, approximately 11-5/8 inches by 1-1/2 inches.

2. Cylindrical device, manufacturer unknown, no serial number, approximately 9-7/16 inches by 1-1/8 inches.

3. Cylindrical device, manufacturer unknown, no serial number, approximately 9-5/8 inches by 1-1/8 inches.

4. Cylindrical device, manufacturer unknown, no serial number, approximately 10-1/2 inches by 1-1/4 inches.

**FINDINGS:**

Exhibit 1 is a cylindrical device of unknown origin. It consists of an outer cylinder having an integral front and rear end cap, internally threaded rear end cap extension, intermittently spaced discs of felt-like material, and felt-like material placed between the discs. The interior was inspected with an optical probe since the device could not be disassembled. The inside diameter of the front end cap is approximately 5/8 of an inch. The exterior of the device is coated with a black paint-like material. This covering is chipped in numerous locations. The physical characteristics of this device are consistent with those of rudimentary firearm silencers.

A Ruger .22 caliber semiautomatic pistol from our reference collection was test fired in the presence of a calibrated Bruel & Kjaer Type 2231 sound lever meter. Exhibit 1 was attached to the pistol and the weapon test fired once again. This test was conducted on June 25, 2004, at the ATF Firearms Technology Branch test firing facility in Martinsburg, West Virginia. Below are the recorded results of this test:

EX. C

S/A Larry Ward

773060-04-0068
2004-575-RDC
Page 2

| | |
|---|---|
| Ruger pistol | 149.7 decibels |
| With Exhibit 1 | <u>127.1</u> decibels |
| Sound Reduction | 22.6 decibels |

The sound reduction obtained in the above test was very significant and noticeable and compares very favorably with other known firearm silencers.

Exhibit 2 is a cylindrical device of unknown origin. It consists of an outer cylinder having a front end cap, integral rear end cap having an internally threaded rear end cap extension, and tightly packed discs of felt-like material. The interior was inspected by removing the threaded front end cap. The inside diameter of the front end cap is approximately 3/8 of an inch. The exterior of the device is coated with a black paint-like material. The physical characteristics of this device are consistent with those of rudimentary firearm silencers.

A Ruger .22 caliber semiautomatic pistol from our reference collection was test fired in the presence of a calibrated Bruel & Kjaer Type 2231 sound lever meter. Exhibit 2 was attached to the pistol and the weapon test fired once again. This test was conducted on July 6, 2004, at the ATF Firearms Technology Branch test firing facility in Martinsburg, West Virginia. Below are the recorded results of this test:

| | |
|---|---|
| Ruger pistol | 150.8 decibels |
| With Exhibit 2 | <u>119.9</u> decibels |
| Sound Reduction | 30.9 decibels |

The sound reduction obtained in the above test was very significant and noticeable and compares very favorably with other known firearm silencers.

Exhibit 3 is a cylindrical device of unknown origin. It consists of an outer cylinder having an integral front and rear end cap, internally threaded rear end cap extension, intermittently spaced discs of felt-like material, and felt-like material placed between the discs. The interior was inspected with an optical probe since the device could not be disassembled. The inside diameter of the front end cap is approximately 5/16 of an inch. The exterior of the device is coated with a black paint-like material. The physical characteristics of this device are consistent with those of rudimentary firearm silencers.

A Ruger .22 caliber semiautomatic pistol from our reference collection was test fired in the presence of a calibrated Bruel & Kjaer Type 2231 sound lever meter. Exhibit 1 was attached to the pistol and the weapon test fired once again. This test was conducted on July 6, 2004, at the ATF Firearms Technology Branch test firing facility in Martinsburg, West Virginia. Below are the recorded results of this test:

| | |
|---|---|
| Ruger pistol | 150.8 decibels |
| With Exhibit 3 | <u>119.5</u> decibels |
| Sound Reduction | 31.3 decibels |

The sound reduction obtained in the above test was very significant and noticeable and compares very favorably with other known firearm silencers.

S/A Larry Ward

773060-04-0068
2004-575-RDC
Page 3

Exhibit 4 is a cylindrical device of unknown origin. It consists of an outer cylinder having an integral front and rear end cap, rear end cap extension, intermittently spaced sections of metal screen mesh and discs. The interior was inspected with an optical probe since the device could not be disassembled. The inside diameter of the front end cap is approximately 5/16 of an inch. The exterior of the device is coated with a black paint-like material. A marking of ".25" was found on the concave area of the tapere end of the outer cylinder. The physical characteristics of this device are consistent with those of rudimentary firearm silencers.

A Ruger .22 caliber semiautomatic pistol from our reference collection was test fired in the presence of a calibrated Bruel & Kjaer Type 2231 sound lever meter. Exhibit 1 was attached to the pistol and the weapon test fired once again. This test was conducted on July 6, 2004, at the ATF Firearms Technology Branch test firing facility in Martinsburg, West Virginia. Below are the recorded results of this test:

| | |
|---|---|
| Ruger pistol | 150.8 decibels |
| With Exhibit 4 | 119.2 decibels |
| Sound Reduction | 31.6 decibels |

The sound reduction obtained in the above test was very significant and noticeable and compares very favorably with other known firearm silencers.

## CONCLUSION:

Exhibits 1, 2, 3, and 4 have characteristics consistent with those of firearm silencers. Test results demonstrated that these devices are very capable of reducing the report of a portable firearm. Each is therefore a "firearm" as defined in 18 U.S.C. § 921(a)(3) and a "firearm silencer" as defined in 18 U.S.C. § 921(a)(24) of the Gun Control Act of 1968 (GCA). Each is also a "firearm" as defined in 26 U.S.C. § 5845(a)(7) of the National Firearms Act (NFA). Further, none of these silencers are identified as required in 26 U.S.C. § 5842 of the NFA.

Richard D. Craze
Firearms Enforcement Officer

Earl L. Griffith
Firearms Enforcement Officer

Sterling Nixon
Chief, Firearms Technology Branch