UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA  )
                          )
vs.                       ) No. 04-656-MAP
                          )
MICHAEL CROOKER           )

## PRELIMINARY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS

On June 1, 2004 an Agent of the United States Postal Inspection Service, Bryan Bailey, received a referral from an USPIS field office in Milwaukee, Wisconsin. The referral was described by Dailey as a customer complaint. The gist of the complaint was an advertisement on e-bay offering the sale of certain materials on line with shipment through the U.S. mail. The list of items offered for sale included hydrochloric acid. The unnamed source of this complaint was alleged to have identified defendant, Crooker, as the seller of the items on the list and provided the inspectors with information indicating Crooker "usually mailed all items he sold parcel post, including nitric acid".

Armed with this information Bailey contacted the Southwick Post office and requested that he be contacted when Crooker returned to mail future parcels. On June 8, 2004 Bailey was notified Crooker had delivered a parcel for mailing that day. Bailey was told by employees of the Southwick Post Office, Crooker was asked whether the parcel contained hazardous materials. Crooker was reported as identifying the contents as metal parts. Bailey ordered the employees to seize the parcel.

Two days after the parcel's seizure USPIS Agents conducted an x-ray of the parcel. After reviewing the x-ray Bailey formed an opinion the parcel contained "some type of firearm". Bailey contacted the local BATF office and determined neither Crooker nor the addressee, one Paulus, were authorized to possess firearms. On June 14, 2004 six days after the initial seizure Agent Bailey applied for and received a search warrant authorizing a search of the parcels for a "firearm". A search of the contents of the parcel revealed an air rifle and a device which the

1

Government claims fits the statutory definition of a firearm.  The Agents executing the warrant seized the parcel and all its contents.  Nine days after the seizure Agents obtained a second warrant to search the defendant's residence for evidence of the Interstate Transportation of firearms .  This search resulted in the wholesale seizure of items of the defendant's personal property.  Numerous State and local Agencies accompanied Federal Agents onto defendant's residence during the execution of this warrant.

## ARGUMENT
### THE WARRANTLESS SEIZURE OF THE PARCEL

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." and accomplishes its objective by providing protections of probable cause and particularity.  A sealed package entrusted to the Postal Service is "unquestionably an 'effect' within the meaning of the Fourth Amendment."  United States v. Jacobsen, 466 U.S. 109, 114, 104 S. Ct. 1652, 1657, 80 L. Ed. 2d 85 (1984).  Accordingly, though "government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining [its] contents...

The first clause of the Fourth Amendment provides that the"right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated..."  This text protects two types of expectations, one involving "searches", the other "seizures."  A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.   A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.  The Supreme Court has also consistently construed this protection as proscribing only governmental action; it is wholly inapplicable "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government, or with the participation or knowledge of any governmental official."  Walter v. United States, 447 U. S. 649, 662 100 S. Ct. 1295, 2404 65 L. Ed. 2d 410 (1980).

2

Specifically, defendant contends that the detention and subsequent search of the parcel at issue violated his Fourth Amendment right against unreasonable search and seizure because (1) the detention was not based on a reasonable suspicion that it contained contraband; and (2) it was unreasonable. See United States v. LaFrance, 879 F. 2d 1,4 (1st Cir. 1989) (police entitled to delay delivery if delay is based on reasonable suspicion and is reasonably executed). To determine the reasonableness of the delay, the trial Court should examine the diligence of the investigators, the length of detention, and the information conveyed to the suspect. LaFrance, 879 F. 2d at 7 (citing United States v. Place, 462 U. S. 696, 709-710 103 S. Ct. 2637, 2645-46 77 L. Ed. 2d.

The defendant claims the initial seizure of the parcel by postal employees at the request of USPIS agents violated his rights under the Fourth Amendment and is the logical starting point for the Court's analysis.

It has long been held that first class mail such as letters and sealed packages subject to letter postage as distinguished from newspapers, magazines, pamphlets and other printed matter is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment.

The fact that postal employees were lawfully in possession of the parcel did not give them authority to seize the parcel. The Court in Ex parte Jackson, 96 U. S. 727, 24 L. Ed. (1877). established that sealed packages in the mail cannot be opened without a warrant, it has been settled that an officer's authority to possess a package is distinct from his authority to examine its contents. See Arkansas v. Sanders, 442 U. S. 753, 758, 99 S. Ct. 2586, 2590, 61 L. Ed. 2d 235; United States v. Chadwick, 433 U. S. 1, 10, 97 S. Ct. 2476, 2482, 53 L. Ed. 2d 538.

In the enforcement of regulations as to what may be transported in the mails, a distinction is to be made between different kinds of mail matter between what is intended to be kept free from inspection, such as letters and sealed packages subject to letter postage; and what is open to inspection, such as newspapers, magazines, pamphlets, and other printed matter, purposely left in a condition to be examined. Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty

3

of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized as is required when papers are subjected to search in one's own household. No law of Congress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; and all regulations adopted as to mail matter of this kind must be in subordination to the great principle embodied in the Fourth Amendment of the Constitution." Jackson, supra.....""the use of the mails is almost as much a part of free speech as the right to use our tongues." Mr. Justice Holmes in United States ex rel. Milwaukee Social Democratic Pub Co. V. Burleson, 255 U. S. 407, 437, 41 S. Ct. 352, 363,65 L. Ed. 704 (dissenting opinion)... "while Congress may classify the mail and fix the charges for its carriage, it may not set up regimes of censorship over it. Hannegan v. Esquire, Inc. 327 U. S. 146, 66 S. Ct. 456, 90 L. Ed. 586, nor encumber its flow by setting administrative officials astride the flow of mail to inspect it, appraise it, write the addressee about it, and await a response before dispatching the mail to him." Lamont v. Postmaster General, 381 U. S. 301, 306, 85 S. Ct. 1493, 1496, 14 L. Ed. 2d 398. Yet even first class mail is not beyond the reach of all inspection; and the sole question becomes whether its detention and inspection were appropriate and unreasonable. United States v. Van Leeuwen, 3907 U. S. 219 96 S. Ct. 1029 (1970)

    In the present case the exact nature of the USPI Agents information prior to the parcels detention has yet to be fully fleshed out in an evidentiary hearing. The source of the information and the manner in which it made its way to Agent Bailey is similarly murky. The defendant claims the Government bears the burden of establishing its entitlement to make the warrantless seizure and searches complained of here.

    In that regard the Government must produce a predicate factual basis to justify a series of actions it took with respect to the parcel here which the defendant claims violated his constitutional rights.

    Although the case law counsel's the Government must be accorded flexibility to engage in a graduated response, the constitutionality of that response will always be dependent upon the

4

circumstances of the case and the frontiers of reasonableness.  See United States v. Place, 462 U.S. 696 109 S. Ct. 2637 (1983).

Here the Government has proffered no claim of exigent circumstances or pressing law enforcement need nor was there any suggestion the normal delay attendant upon securing a warrant would expose anyone to grave danger or physical harm, nor was there any suggestion evidence of a crime would be lost or destroyed.    Illinois v. McArthur, 531 U. S. 326 121 S. Ct. 946 (2001).

## THE SEARCH WARRANTS OF June 14, 2005 and June 23, 2005

A search warrant must particularly describe the items to be seized and the place to be searched.    The purpose of this requirement is to render general searches impossible and prevent the seizure of one thing under a warrant describing another.

The degree of specificity required when describing the object to be seized may necessarily vary according to the circumstances and types of items required. The particularity requirement of the Fourth Amendment "prevent a general exploration of rummaging in a person's belongings." Coolidge v. New Hampshire, 403 U.S. 443 (1971). This makes general searches impossible and prevents the seizure of one thing under a warrant describing another.  As to what is being taken nothing is left to the discretion of the officer executing the warrant.  It insures that search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.

The affidavit utilized here to support probable cause to issue the warrants to search the parcel and residence failed to establish that particular items of evidence described in the warrant would likely be located at the place specified in the warrants.

In lieu of a specific description which was easily ascertainable, the agents applying for the June 23rd warrant opted to include a boiler plate, generic laundry list permitting the seizure of numerous items for which neither probable cause existed, nor any probability that such items would be found at the location searched.  The June 14th warrant described the things to be seized but failed to particularly describe the locus of the search.

5

In any event, the officer executing the warrant exceeded even the broad grant provided by both warrants and seized a number of items which were clearly not described in the warrant at all. (See officer's return on search warrant dated June 14th and 24, 2004.

As part of the probable cause doctrine what is required is that evidence of the crime can be found at the described locus at the time of the search. United States v. Arguirre, 839 F.2d 854 (1st Cir. 1987)(emphasis supplied).

Although discussed in the context of an anticipatory search warrant, the First circuit Court of Appeals had held that magistrates who are asked to issue warrants should draft them narrowly enough to insure that opportunities for exercising unfettered discretion are eliminated and that the conditions set for governing the agent service of them should be explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation. United States v. Ricciardelli, 998 F.2d 8, 12 (1st Cir. 1993).

In addition to general probable cause requirements, search warrants require two additional conclusions necessary to their issuance supported by substantial evidence that the items sought are in fact seizable by virtue of being connected to criminal activity and that the items will be found in the place searched. United States v. Diaz, 841 F.1d 1, 3 (1st Cir. 1988).

Where an affidavit does not indicate any nexus between particular items and criminal behavior, seizure of those items is improper. Where a search warrant provides only generic description of items to be seized, the warrant becomes a general warrant.
In this case the June 14th warrant limited the seizure of items to a "firearm". Agents, however elected to seize the cardboard parcel and its labels, an air rifle, pump, and a device which they characterized as a "silencer". In short, the entire parcel and its contents without regard to the warrant's limitation. The seizures under the purported authority of the June 23rd warrant flagrantly disregarded the scope of the warrant as well. The defendant claims this resulted in part because the warrant failed to particularize the items to be seized and in lieu of a particular description set forth generic categories of items which lead the officers tasked with executing the warrant to substitute their judgment in lieu of the issuing Judge. As may be seen from the return the officers engaged in a prohibited fishing expedition which went far beyond where the warrant permitted.

6

# PROBABLE CAUSE

Probable cause is the product of probabilities, not absolutes. The principal issue in any probable cause analysis is whether the magistrate had a "substantial basis on which to conclude that the articles or activity described [was] probably present or occurring at the place to be searched.

The Fourth Amendment to the Federal Constitution requires a magistrate to determine that probable cause exists before issuing a search warrant. The requisite probable cause for the search of the dwelling must be contained within the four corners of the affidavit. Probable cause sufficient to support the issuance of a search warrant is "something more than mere suspicion, but something less than evidence sufficient to warrant a conviction." The issuing magistrate and reviewing court may rely only upon information expressly recited within the affidavit and inferences which may reasonably drawn from the affidavit.

For evidence to avert suppression, normally the warrant application must demonstrate probable cause to believe that a particular person has committed a crime–"the commission element"–*and* that enumerated evidence relevant to the probable criminality likely is located at the place to be searched–"the nexus element". United States v. Fuccillo, 808 F.2d 173, 175 (lst Cir.) (cert. denied). The issuing magistrate ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application. See, e.g., Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 565, 91 S.Ct. 1031, 1035, 28 L.Ed.2d 306 (1971). Under the "probable cause" standard, the "totality of the circumstances" disclosed in the supporting affidavits must demonstrate "a *fair probability* that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 232, 76 L.Ed.2d 527 (1983).

Among others, the factors that may contribute to a "probable cause" determination include whether an affidavit supports the probable "'veracity' or 'basis of knowledge' of persons supplying hearsay information," *and* whether informant statements are self-authenticating.

Reviewing courts, including both the district court and the court of appeals, must accord

7

"considerable deference" to the "probable cause" determination made by the issuing magistrate. [T]he duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for. . .conclud[ing]' that probable cause existed."). The reviewing court must examine "the affidavit in 'a practical, "common sense" fashion, and [] accord considerable deference to reasonable inferences the [issuing magistrate] may have drawn from the attested facts." Moreover, given the strong preference for warrants under our Fourth Amendment jurisprudence, normally a reviewing court will defer to an issuing magistrate's "probable cause" determination in a doubtful or marginal case. See United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); United States v. Craig, 861 F.2d 818, 823 (5th Cir. 1988).

In each case the basic question for the magistrate is whether he has a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched. While the principle facts that supporting probable cause must be "closely related to the time of the issue of the warrant [so] as to justify a finding of probable cause at that time", the timeliness must be "determined by the circumstances of each case."

In order to establish probable cause, an affidavit must "contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched."

It is, moreover, imperative that the warrant establish not only this kind of tri-cornered nexus between the criminal act, the evidence to be seized and the place to be searched, but also that the nexus incorporate a temporal dimension. The important privacy interests protected by the Fourth Amendment make it incumbent upon the magistrate to craft the warrant with explicit, clear, and narrowly drawn conditions governing its execution to ensure that the anticipated nexus will actually exist if and when the warrant is executed. The "commission" and "nexus" elements in the "probable cause" analysis each include a temporal component. The issuing magistrate must not only consider the accuracy and reliability of the historical facts related in the affidavits, but must determine, *inter alia*, whether the facts reasonably inferable from the affidavits demonstrate a "fair probability" that evidence material to the "commission" of the probable crime will be disclosed at the searched premises at the time the search warrant would issue,

8

rather than at some remote or future time.

There are several aspects of the information provided which do affect the existence of probable cause.

The initial decision to seize the parcels was premised upon the Agents belief some form of illegal mailing of "hazardous material". As subsequent events unfolded the USPIS Agents were aware as they handled the parcel, how unlikely this scenario was. Indeed the Agents had no information the recipient was likely to be receiving "hazardous material" from Crooker. The information they described as a "customer complaint" was the result of an advertisement appearing on E-Bay and an intercepted E-mail connected with it.

As set forth in the Agents affidavit it is a quantum leap to link the E-bay customer complaint with the parcel addressed to Paulus whom the Government has not demonstrated any connection to hazardous materials. Indeed the affidavit is completely silent as to the size, shape, or amounts of material, the customer complaint dealt with, neither is there any information about the nature of the E-Bay advertisement which would give some indication of the date it was placed and whether the June 1, 2004 complaint was in some way associated with a current ongoing occurrence or related to something which had occurred in the past. The defendant claims the Agent purposefully omitted information which would have undercut any suspicion Paulus was connected to unlawful activity in an effort to justify seizing the parcel.

## REASONABLENESS OF THE SEARCH

In order for a search or seizure to be reasonable, the facts available to the officers at the moment of search or seizure must be such as to warrant a person of reasonable caution in the belief that the action taken was appropriate. Terry v. Ohio, 392 U.S. 1, 21-22 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). No formula exists for determination of the reasonableness of a search; the reasonableness of each search must be decided on its own facts and circumstances.

Both the method of entry and the manner of execution will be considered in the reasonableness determination. Wilson v. Arkansas, 514 U. S. 927, 934, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995); Dalia v. United States, 441 U. S. 238, 258, 99 S. Ct. 1682, 60 L. Ed. 2d 177

9

(1979).

An unreasonable execution of a warrant may violate the Fourth Amendment.

An analysis of Federal case law suggests the use of excessive force by law enforcement officers "in the course of an arrest, investigatory stop, or other seizure of a free citizen" should be analyzed under the Fourth Amendment and its reasonableness standard. Tennessee v. Garner, 471 U. S. 1 (1985); Graham v. Connor, 490 U. S. 386 (1989).

The Supreme Court claimed "we doubt that the mode of the execution of a search warrant does not fall under the reasonableness standard." In Wilson v. Arkansas, 514 U. S. 927, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995), a unanimous Supreme Court held that the failure to knock and announce might cause an otherwise valid search to violate the Fourth Amendment's requirement of reasonableness.

The Fourth Amendment places very stringent limits on officers invading an individual's privacy. "The proceeding by search warrant is a drastic one, and must be carefully circumscribed so as to prevent unauthorized invasions of the sanctity of a man's home and the privacies of life." Berger v. New York, 388 U. S. 41, 58, 87, S.Ct. 1873, 1883, 18 L. Ed. 2d 1040 (1967).

Law enforcement officers should not be the ones, absent exigent circumstances, that engage in the sensitive balancing required to weigh the merits of the reasonableness of a given case because they are not neutral parties to the determination of that crucial inquiry.

It is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant subject of course to the general Fourth Amendment protection "against unreasonable searches and seizures." Similarly, officers executing search warrants on occasion must damage property in order to perform their duty. See e. g. United States v. Gervato, 474 F. 2d 40, 41 (CA3) cert. denied, 414 U. S. 864, 94 S. Ct. 39, 38 L. Ed. 2d 84 (1973). These discretionary functions are permitted only because the manner in which a warrant is executed is subject to later judicial review as to its reasonableness. See Zurcher v. Stanford Daily, 436 U.S. 547, 5590560, 98 S. Ct. 1970, 1978-1979, 56 L. Ed. 2d 525 (1978).

The defendant claims several of the following actions establish the unreasonableness of

the search here:  1) the destruction of personal property out of proportion to that reasonably necessary to accomplish the objectives of the search;  2) the officers misused the warrant's authority in order to search and seize items and places not particularly described in the warrants; and 3) the officers permitted unauthorized civilians/military employees to participate in the search.

The defendant claims the series of searches and seizures directed against him were unreasonable for different reasons.  In particular the defendant believes the manner in which the search of his residence was conducted rendered the search under this warrant as unreasonable.

This claim is based upon two separate premises of fact; the wholesale seizure of items outside the scope of the warrant in flagrant disregard of its limitation coupled with the unnecessary presence of civilian/military authorities and their entry into Mr. Crooker's premises during the course of the warrant's execution without prior judicial authorization.

The defendant claims the Fourth Amendment protects the defendant from the unauthorized presence of third parties not associated with the particular objective of the search warrant to enter pursuant to its authority.  Wilson v. Layne, 526 U. S.603 119 S. Ct. 1692 (1999).

The Supreme Court has held the Fourth Amendment's prohibition of unreasonable searches and seizures extends not only to the limitation of the search but also the manner in which the searches are conducted.  See also Bellville v. Town of  Northboro, 375 F 3d 25 (1st Cir. 2004).

In the defendant's view these issues cannot be resolved without an evidentiary hearing. To the extent the Government did not have a search warrant authorizing the seizure of the parcel on June 8, 2004, a hearing will be necessary to resolve any contested issue of fact surrounding the defendant's motion.

## CONCLUSION

The defendant has demonstrated his entitlement to a Franks hearing by making a substantial preliminary showing thereto, the facts necessary to a finding of probable cause were either intentionally misleading or made with a reckless disregard for their accuracy.  In any

event, the defendant requests this Court conduct an evidentiary hearing in order to more fully explore those issues raised by the defendant's motion.

THE DEFENDANT

BY: _____
Vincent A. Bongiorni, Esq.
95 State Street, Suite 309
Springfield, MA. 01103
(413) 732-0222
BBO #049040

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | CASE NUMBER: 04 654 |
|---|---|---|
| 6-14-04 | 6-14-04 @ 5:05pm | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
| | | impounded, ongoing investigation |

INVENTORY MADE IN THE PRESENCE OF

ATF SA Patrick Burns and Officer Norman Shink, Spfld P.D. / ATF Task Force

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

Attached search warrant inventory, PS form 8164:

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_Bryond Dailey_

Subscribed, sworn to, and returned before me this date.

_Michael A. Ponsor_   7-22-04

U.S. Judge or Magistrate Judge         Date

# UNITED STATES DISTRICT COURT

DISTRICT OF  MASSACHUSETTS

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

Insured Parcel No. VE 169 385 056 US, addressed to
Mike Paulus, 1145 Shimp Dr., Celina, OH  45822; with a
return address to M. Crooker, Apt. 29, 1162 Springfield St.,
Feeding Hills, MA  01030

## SEARCH WARRANT

CASE NUMBER:  *04 654*

TO:    Bryon L. Dailey, U.S. Postal Inspector,    and any Authorized Officer of the United States

Affidavit(s) having been made before me by    Bryon L. Dailey    who has reason to
Affiant

believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

Insured Parcel No. VE 169 385 056 US, addressed to Mike Paulus, 1145 Shimp Dr., Celina, OH  45822; with a return address to
M. Crooker, Apt. 29, 1162 Springfield St., Feeding Hills, MA  01030

in the _____  District of _____ Massachusetts _____  there is now
concealed a certain person or property, namely (describe the person or property)

a firearm

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property
so described is now concealed on the person or premises above-described and establish grounds for the issuance of this
warrant.

YOU ARE HEREBY COMMANDED to search on or before _____
Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and
making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause
has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and
receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly
return this warrant to    Michael A. Ponsor, United States District Judge
as required by law.    U.S. Judge or Magistrate Judge

June 14, 2004  *4:55 p.m.*    at   Springfield, Massachusetts
Date and Time Issued    City and State

Michael A. Ponsor, United States District Judge    *Michael A. Ponsor*
Name and Title of Judicial Officer    Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

# THE UNITED STATES POSTAL INSPECTION SERVICE

## SEARCH WARRANT INVENTORY

Position/Box.: _____ / ___ __

Subject Name: Michael Crooker                                    Date: 6-14-04

Subject Address: 1162 Springfield St.                            Floor/Room No. _____
                 Feeding Hills, MA 01030
Inspector(s): B.L.Dailey                                         Case No.0694-1406363-PMM(1)

Safe: _____  Cabinet: _____  Credenza: _____  Desk: _____  Drawer: _____

Shelf: _____  Table: _____  Wall: _____  Other: Insured Parcel

| QUANTITY | DESCRIPTION OF ITEMS |
|---|---|
| | Rifle, air powered, .44 caliber; hand pump for air rifle; adapter fittings; suspected rifle stand attachment; and suspected silencer attachment threaded to fit .44 caliber barrel that is threaded. |

DISTRIBUTION OF COPIES:  White-*U.S. Magistrate (Return with Warrant)*
                         Yellow-*Inspector (Attach to PS Form 714)*
                         Pink-*Subject Searched*
                         Green-*Evidence Control Officer (Attach to PS Form 714)*

PS Form 8164, October 1993                                        Page        of        pages

AO 106 (Rev. 7/87) Affidavit for Search Warrant



# United States District Court

_____ DISTRICT OF __MASSACHUSETTS_____

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Insured Parcel No. VE 169 385 056 US,
addressed to Mike Paulus, 1145 Shimp Dr., Celina, OH
45822; with a return address to M. Crooker, Apt. 29,
1162 Springfield St., Feeding Hills, MA 01030

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER: *04 654*

I _____ Bryon L. Dailey, U.S. Postal Inspector _____ being duly sworn depose and say:

I am a(n) _____ United States Postal Inspector _____ and have reason to believe
<br>Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)
Insured Parcel No. VE 169 385 056 US, addressed to Mike Paulus, 1145 Shimp Dr., Celina, OH 45822, with a return
address to M. Crooker, Apt. 29, 1162 Springfield St., Feeding Hills, MA 01030

in the _____ District of _____ Massachusetts _____
there is now concealed a certain person or property, namely (describe the person or property to be seized)
a firearm

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
believed to have been knowingly mailed by the U.S. Mail

concerning a violation of Title _____ 18 _____ United States code, Section(s) _____ 921 and 922 _____
The facts to support a finding of Probable Cause are as follows:

See Attached Affidavit

Continued on the attached sheet and made a part hereof.    ☒ Yes    ☐ No

Signature of Affiant

Sworn to before me, and subscribed in my presence

June 14, 2004
Date

at    Springfield, Massachusetts
City and State

Michael A. Ponsor, United States District Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

*A*

## Affidavit

I Bryon L. Dailey, being duly sworn, state as follows:

1.  I am a United States Postal Inspector and have been so employed for 15 years.  I am currently assigned to the Springfield, Massachusetts, office of the United States Postal Inspection Service (USPIS).  As a Postal Inspector, I am responsible for investigations involving the theft of United States mail, obstruction of the United States mail, mail fraud, and other criminal activities involving the use of the mail, including the investigation of non-mailable items, such as controlled substances and explosives, that are given over to the United States Postal Service (USPS) for delivery.

2.  I am making this affidavit in support of an application for a search warrant to search the contents of a parcel post parcel, insured parcel no. VE 169 385 056 US, addressed to Mike Paulus, 1145 Shimp Dr., Celina, OH 45822; with a return address to M. Crooker, Apt. 29, 1162 Springfield St., Feeding Hills, MA 01030.  A copy of a digitally taken photograph for the parcel is attached as Exhibit 1.  The parcel has a postage meter stamp from the Feeding Hills Post Office, in the amount of 16.72.  It measures 27 inches in length, 12 inches in width, and is 14 inches deep.

3.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that the parcel contains

evidence, fruits or instrumentalities of the offense of unlawful transportation of a firearm, in violation of Title 18, United States Code, Sections 921 and 922(a)(3).

### Probable Cause

4.    On June 1, 2004, I reviewed a referral from the Milwaukee Field Office of the United States Postal Inspection Service.  The referral was in reference to a customer complaint regarding an eBay advertisement which identified Michael Crooker ("Crooker") at 1162 Springfield St., Feeding Hills, MA 01030, as selling chemicals that would be mailed by the United States Postal Service if purchased.  The list of chemicals included hydrochloric acid which is considered to be a hazardous material, and therefore, is not mailable.  When the prospective customer read the advertisement, the customer asked the seller (identified as Crooker) whether the chemicals provided on the list were mailable.  Crooker replied that he (Crooker) had no concerns for the regulations and usually mailed all items that he sold by parcel post, including nitric acid.  The customer then forwarded his/her e-mail correspondence regarding the sale of chemicals to the USPIS.

5.    Thereafter, on June 2, 2004, I contacted the Postmaster at the Feeding Hills Post Office regarding Crooker.  I learned from the Postmaster and other postal officials at the Feeding Hills Post Office that Crooker is known to them and mails parcels on a frequent basis from that post office.  I asked the Postmaster to notify me with respect to future parcels being mailed by Michael Crooker.

6.  Based on the concerns regarding hazardous materials being placed in the mail delivery stream, I contacted the USPIS Legal Department on June 2 and June 7, 2004 for appropriate guidance in detaining and identifying any future suspected hazardous mailings by Crooker.  I learned that USPS regulations provide for the screening of mail by x-ray or other appropriate means when there is a credible threat that the mail at issue "may contain a bomb, explosives, or other material that would endanger life or property."  See Administrative Support Manual Sections 274.31 and 274.41.

7.  On June 8, 2004, I was notified that the parcel described in paragraph no. 2 was mailed by Crooker at the Feeding Hills Post Office on that day.  The Postmaster related to me that Crooker was asked whether the parcel contained any hazardous materials[1].  According to the Postmaster, Crooker responded that the item contained metal parts.

8.  On June 10, 2004, the parcel was examined by x-ray equipment in the possession of the USPIS.  Based on my review of the x-ray and my training and experience, I believe that the parcel contains some type of firearm.  A trigger, barrel and stock are visible in the x-ray examination.  The x-ray photograph was captured by digital photography and is attached as Exhibit 2.

9.  On June 10, 2004, I contacted the Bureau of Alcohol, Tobacco & Firearms in order to determine if either the sender,

---

[1] This type of inquiry is common practice in any postal facility accepting mail from customers.  A notice alerting customers to the violations of mailing items that are considered hazardous is posted in every USPO mail facility.

3

Crooker, or the addressee, Mike Paulus, are authorized to mail or receive firearms. According to ATF Special Agent Patrick Burns, neither Crooker or Paulus are so authorized. In addition, I have reviewed Crooker's criminal history and know him to be a convicted felon. As a result, Crooker is prohibited from possessing firearms.

10. Based on the above, there is probable cause to believe that Michael Crooker is knowingly mailing a firearm by the U.S. Mail, in violation of Title 18, United States Code, Sections 921 and 922(a)(3).

### Conclusion

11. In consideration of the foregoing, I respectfully request that this Court issue a search warrant for the parcel described more fully above in paragraph no. 2, authorizing any U.S. Postal Inspector, with appropriate assistance from other law enforcement authorities, to search said parcel and to seize the parcel and any evidence of violations of Title 18, United States Code, Sections 921 and 9229(a)(3).

Bryon L. Dailey
United States Postal Inspector

Sworn to before me and subscribed in my presence this 14th day of June, 2004.

Michael A. Ponsor
United States District Judge

4