UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
            v.           )        Criminal No. 04-30034-MAP
                         )
MICHAEL CROOKER,         )
        Defendant.       )

Government's Opposition to Motion to Suppress

The United States of America, by Michael J. Sullivan, United

States Attorney for the District of Massachusetts, submits this

memorandum in opposition to defendant Michael Crooker's motion to

suppress.  The defendant's motion should be denied because

Postal Inspector Bryon Dailey properly detained Mr. Crooker's

insured mail parcel on June 7, 2004, after he reasonably

suspected that Mr. Crooker might be sending hazardous materials

through the mail.  Thereafter, using a series of graduated

responses to suspected illegal activity, law enforcement officers

x-rayed the parcel, obtained a search warrant for it and then

obtained a search warrant for Mr. Crooker's residence.

Factual Background

On June 1, 2004, Postal Inspector Dailey received a referral

from the Milwaukee Field Office of the United States Postal

Inspection Service.  The referral was in reference to a customer

complaint regarding an eBay advertisement which identified

Michael Crooker at 1162 Springfield St., Feeding Hills, MA 01030,

as selling chemicals that would be mailed by the United States

Postal Service if purchased.  The list of chemicals included

hydrochloric acid, which was considered to be a hazardous material, and therefore, was not mailable.  When the prospective customer read the advertisement, the customer asked the seller (identified as Crooker) whether the chemicals provided on the list were mailable.  Crooker replied that he had no concerns for the regulations and usually mailed all items that he sold by parcel post, including nitric acid.  The customer then forwarded his e-mail correspondence regarding the sale of chemicals to the Postal Inspection Service.

Thereafter, on June 2, 2004, Inspector Dailey contacted the Postmaster at the Feeding Hills Post Office regarding Crooker. Inspector Dailey learned from the Postmaster that Crooker mailed parcels on a frequent basis from that post office.  Inspector Dailey asked the Postmaster to notify him with respect to future parcels being mailed by Michael Crooker.

Based on his concerns regarding hazardous materials being placed in the mail delivery stream, Inspector Dailey contacted the Postal Inspection Service's Legal Department on June 2nd and June 7th, 2004, for guidance in detaining and identifying any suspected hazardous mailings by Crooker.  Inspector Dailey learned that Postal Service regulations provide for the screening of mail by x-ray or other appropriate means when there is a credible threat that the mail at issue "may contain a bomb,

explosives, or other material that would endanger life or property."  See Administrative Support Manual Sections 274.31 and 274.41.

On June 7, 2004, Inspector Dailey was notified that a bulk mail parcel was mailed by Crooker at the Feeding Hills Post Office on that day.  The package was insured parcel no. VE 169 385 056 US, addressed to Mike Paulus, 1145 Shimp Dr., Celina, OH 45822; with a return address to M. Crooker, Apt. 29, 1162 Springfield St., Feeding Hills, MA 01030.  The parcel had a postage meter stamp from the Feeding Hills Post Office in the amount of $16.72.  It measured 27 inches in length, 12 inches in width, and was 14 inches deep.  The Postmaster told Inspector Dailey that in accord with Postal Service practice, Crooker was asked whether the parcel contained any hazardous materials.  According to the Postmaster, Crooker responded that the item contained metal parts.

Between June 7th and 9th Inspector Dailey consulted with legal counsel for the Postal Inspection Service and attempted unsuccessfully to have the parcel inspected by a canine trained to detect explosives and hazardous substances.

On June 10, 2004, Inspector Dailey had the parcel examined with x-ray equipment in the possession of the Postal Inspection Service.  Based on his review of the x-ray, Inspector Dailey

believed that the parcel contained some type of firearm.  A

trigger, barrel and stock were visible in the x-ray examination.

On the same day, Inspector Dailey contacted the Bureau of

Alcohol, Tobacco & Firearms in order to determine if either the

sender, Crooker, or the addressee, Mike Paulus, were authorized

to mail or receive firearms.  ATF Special Agent Patrick Burns

told Inspector Dailey that neither Crooker nor Paulus were so

authorized.  In addition, Inspector Dailey reviewed Crooker's

criminal history and determined that he was a convicted felon and

therefore, was prohibited from possessing firearms.

On June 14, 2004, law enforcement officers executed a search

warrant issued by this Court for the parcel and seized what

appeared to be a firearm silencer from inside of a package mailed

by the defendant, a convicted felon, to a person in Ohio.

The silencing device was tested at ATF's Laboratory by

screwing the device, which had threads at one end, onto a

threaded .22 caliber handgun.  The handgun was then fired and the

sound measured.  The device reduced the sound of the .22 caliber

hand gun by over 20 decibels.  According to the ATF laboratory,

the device comes within the definition of the words firearm

silencer in the federal firearms law.  The laboratory technician

described the silencer as very effective.

On June 23, 2004, the Court issued a search warrant for

Michael Crooker's residence and a warrant for Mr. Crooker's

arrest.  On June 23, 2004, Mr. Crooker was arrested in his automobile.  Mr. Crooker's automobile is a 2002 Dodge Stratus. After Mr. Crooker's arrest, an inventory search was conducted of the Stratus.  During the course of the inventory search, a suspected explosive device was found in the trunk.  The explosive device was taken apart by an explosives expert and the substance in the device was detonated.  Subsequent testing revealed that the device contained a mixture of potassium perchlorate and aluminum powder, which is an explosive mixture.

On June 23, 2004, the search warrant for Mr. Crooker's residence was executed.  During the search, components for explosive devices were discovered and seized as well as various chemicals and other substances.  The components of explosive devices included several four and twelve inch tubes with fuses glued in place.  These tubes were empty, but were similar to the tube used to manufacture the explosive device found in Mr. Crooker's automobile.  One of the four inch tubes in the apartment also had one end packed with crumpled newsprint and was sealed with melted glue.  Cups, bowls and other instruments that appeared to have explosive mixture residue on them and were used to fill the tubes with explosive mixture also were found and seized.

Among the chemicals seized during the search of Mr. Crooker's apartment were a jar of what appeared to be castor

beans, which are used to make the deadly toxin ricin.  A large
can of acetone and jar labeled "lye" were also found in Mr.
Crooker's apartment.  Acetone and lye are used with castor beans
to produce ricin.  A jar of rosary peas also was seized from Mr.
Crooker's residence.  Rosary peas are used to make abrin, which
the Centers for Disease Control and Prevention ("CDC") states "is
much more poisonous than ricin."  CDC Fact Sheet, July 2, 2003.

A small Sony video camera, model DCR IP5 and three small
video tapes, one of which was marked "full," were found in the
same cabinet as several of the bottles and jars of suspected
chemical substances including the castor beans.  A small tripod
was also found with the video camera.

On July 2, 2004, the Court issued a search warrant for the
Sony video camera and the three video tapes, as well as Mr.
Crooker's car and computer.  One of video tapes depicted a home
made laboratory set up next to a gray chest of drawers.  The
laboratory included a bunsen burner, tubing, beakers, stoppers
and connecting devices.

On July 13, 2004, a federal grand jury indicted Michael
Crooker for shipping a firearm (the firearm silencer) in
interstate commerce in violation of 18 U.S.C. § 922(g).

Argument

Mr. Crooker's motion should be denied because federal law enforcement officers acted appropriately in examining the bulk mail parcel via x-ray on June 10, 2004, obtaining a search warrant for the parcel on June 14, 2004, and obtaining a search warrant for Mr. Crooker's residence on June 23, 2004.

In United States v. LaFrance, 879 F.2d 1, (1st. Cir. 1989), the First Circuit explained that reasonableness is the touchstone when analyzing whether a defendant's Fourth Amendment rights in a mailed parcel have been violated. In this case, Inspector Dailey acted diligently but not overly intrusively to determine whether the parcel contained a hazardous substance that would be dangerous to send in the mail. He consulted counsel, sought the help of a canine and eventually used an x-ray machine to examine the package.

All of this was done within a few days. Since it was a bulk mail package, there was no guarantee or even expectation of expedited delivery. As a result, the delay in sending the package through the mail stream was not significant.

Once the x-ray revealed what appeared to be a firearm inside, Inspector Dailey determined that Mr. Crooker was not authorized to mail firearms. As a result, he obtained a search warrant for the parcel and subsequently, a search warrant for Mr. Crooker's residence.

In light of Inspector Dailey's reasonable and graduated response to his reasonable suspicion that the parcel contained a hazardous substance, Mr. Crooker's Fourth Amendment rights were not violated.

Conclusion

For the foregoing reasons the defendant's motion to suppress should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


by:    /s/ Kevin O'Regan
       Kevin O'Regan
       Assistant U.S. Attorney

Date: August 22, 2005


Certificate of Service

August 22, 2005

I certify that on August 22, 2005, I caused the foregoing document to be faxed to counsel for the defendant, Vincent Bongiorni, Esq, 95 State Street, Springfield, MA 01103.


/s/ Kevin O'Regan
Kevin O'Regan
Assistant U.S. Attorney