Michael Crocker #156919
Essex County Corr. Facility
20 Manning Ave.
Middleton, MA 01849
Sept. 2, 2005

Clerk For Judge Ponsor
U.S. District Court
1550 Main St.
Springfield, MA 01103

Dear Sir/Madam:

Enclosed is my motion that is in support of my
request for a renewed detention hearing that Judge Ponsor
allowed and set for Sept. 19, 2005. Would you please
copy this to Attorneys O'Regan and Bongiorni since
the jail won't give me access to the typewriter or
photocopier anymore. Thank you.

Sincerely yours,
Michael Alan Crocker

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| V. | ) | CR-04-30034-MAP |
| | ) | |
| | ) | |
| MICHAEL CROOKER | ) | |

### DEFENDANT MICHAEL CROOKER'S PRO SE MOTION
### FOR PRETRIAL RELEASE ON CONDITIONS

The defendant, now having been detained in this case for 1 year and 3 months, requests his release on conditions. Defendant has been held for dangerousness and the Court has found that he was not a flight risk. Rather than use up all of the Court's allotted 45 minutes on this, Defendant chooses to submit his arguments in writing.

### PROBLEMS CAUSED BY UNNECESSARY PROLONGED DETENTION

As the Court has been made aware, Defendant has been held far distant from the court and his attorney. He cannot effectively confer with his attorney to defend this case. He went a whole 10 months without even seeing his lawyer and spoke to him only once in those 10 months. Defendant is in solitary confinement. He cannot even call his lawyer.

Further, he is not receiving medical treatment for chronic Hepatits-C and has been specifically refused such treatment. And jailers under contract to the U.S. Marshals Service have by force seized all of his legal papers, including all of the papers in this case.

-2-

## STRENGTH OF THE PRESENT SILENCER CASE

In this first-in-the-nation prosecution of an airgun silencer the Government has the immense hurdle to clear of a one-week-plus warrantless parcel detention. No reported case has ever upheld a 7 1/2 day warrantless package detention. Moreover, this is not the first time the USPIS has gotten into trouble seizing Defendant's mail without a warrant.  In 1986 Judge Freedman ruled a Fourth Amendment violation had occurred when USPIS Inspector LaPlante seized Defendant's mail in United States v. Mail Addressed to Post Office Box 4371, CR-85-1601-MP.  The mail was ordered suppressed and returned.  (It was a state criminal case.) The First Circuit in the LaFrance case cautions judges that the use of a stopwatch is not the sole criterion of a package detention case-----with the USPIS and the Defendant a stopwatch wouldn't do;  calendars are needed.

But even if the Government somehow managed to slide on the parcel detention and the case was tried on the merits, they then have two further problems, to wit, proving that the airgun accessory constitutes a "firearm-silencer" under 18 U.S.C. §921(a)(24) and proving that Defendant knew that it constituted such. Defendant has documentary evidence in the form of saved e-mail printouts from correspondence with the device's manufacturer in 2001 which demonstrate that the airgunsmith told Defendant the device "was designed for AIR only and cannot handle the (heat) flash of a firearm."

The Government knows it is not a firearm-silencer.  At the Initial Appearance Defendant spoke with AUSA O'Regan and demanded a gunshot residue test be done (before performance testing contaminated the device).  O'Regan replied, "We are not alleging that it was actually used on a firearm."  It has been ATF protocol for at least the last 30 years to always do gunshot residue tests on suspected firearm-silencers prior to performance testing.

-3-

## THE "LETHAL BOMBS"

The "lethal bombs" are nothing but a trumped up fireworks case. The devices

were simply large pyrotechnic ground salutes. It was Fourth of July Season

(June 23, 2004), the device casings were paper (not metal pipe), the composition

was aluminum flashpowder, a substance used exclusively in fireworks that has no

uses in the commercial explosives industry and almost none in the military, and

Defendant has a long history of bootleg fireworks manufacture. If the Court will

recall some 20 years ago it was involved in a similar "chemical arsenal" case

(as the media so sensationally put it) when it awarded Defendant summary judgment

on five counts against the police, enabling a $10,500 settlement. Crooker v.

Van Higgins, 682 F.Supp. 1274 (D. MA 1988). In that case stemming from a

warrantless raid at Defendant's residence on Central Street there were multiple

"bomb," "explosive," and "infernal machine" charges, not a single one of which

ever resulted in a conviction. Here it may be technically possible to be

convicted on explosive manufacturing charges for making fireworks when it can be

proven that one was "engaged in the business," however any sentence for doing so

would certainly fall "outside the heartland" of the now discretionary U.S.S.G.

§2K1.3 relating to explosives.

## THE ALLEGED RICIN

Defendant has been in jail since June 23, 2004. On July 15, 2004 a massive

raid occurred at the home of Harold Crooker involving perhaps 50 police, agents

and military as well as roadblocks and evacuations of neighbors. The backyard,

backyard shed, and basement, as well as the rest of the house and property were

thoroughly searched, probed, dug in, fingerprinted, swabbed, sampled and

photographed. They even had heavy construction equipment including a bucket

-4-

loader.  No alleged ricin was found.

One month later, on or about August 15, 2004, Harold Crooker, at the urging
of Steven Crooker who tells Harold that "Michael may have hid something in the
back yard," allegedly finds a container of a substance the Government character-
izes as ricin.  This promptly gets blamed on Defendant, even though Steven Crooker
who has a known history of surrendering "ricin" to appease federal authorities,
had 20 firearms seized from his house on July 15, 2004 and he was in contact
with the FBI to "take the heat and surveillance off him."

Not only that, but it turns out that the alleged ricin is not even ricin.
Ricin cannot be "made."  It is a plant toxin that has to be extracted from the
plant.  What Steven Crooker "makes" is certainly dangerous, but it is not a
biological weapon as defined in 18 U.S.C. §178(2).  He merely removes the oil
from castor seeds.  The so-called ricin is nothing but powdered castor seeds
without the oil.  He never extracts the ricin.  Possessing powdered castor seeds
may be suspect, but it is not against the law;  possessing ricin extracted from
those powdered castor seeds is.  Likewise rattlesnake venom can be a biological
toxin but not a rattlesnake head, or a whole rattlesnake.

In summary, Defendant is not responsible for anything found at his parent's
home after federal agents gave it a clean bill of health on July 15, 2004.
In fact, he has not even been there since May, 2004.

## POSSESSING CASTOR SEEDS AND ROSARY PEAS

The Government claims Defendant is dangerous because toxic castor seeds and
rosary peas were found in his residence along with chemicals.  It has already
been established in the ongoing Suppression Hearing that Defendant in April, 2004
was operating a chemical sales business on eBay, the shipping of one chemical
which might have violated a postal misdemeanor law, 18 U.S.C. §1716.  What the

-5-

Government has failed to reveal however, is that Defendant also imported and sold castor seeds and rosary peas. In fact the Postal Service and the DEA were involved in an investigation in early June, 2004 regarding Defendant's receipt of an International Registered Mail parcel containing rosary peas that he imported from Suriname, South America for resale here. At that time the DEA Resident Agent/ Duty Officer told Defendant that it was legal for him to import and resell same, and that if it were discovered not to be the case, he would be so notified. In 2004 and probably even today, a search on eBay for castor seeds on any given day would produce at least half a dozen sellers, with pictures of the flowering varieties of hybrids and subspecies. It is not unlawful to possess plants and plant seeds, even toxic ones.

## THE 300 ROUNDS OF AMMUNITION

Also weighted against Defendant's Conditional Release was 300 rounds of ammunition found in his parent's backyard shed. Also some of Defendant's personal belongings were found there. When Harold Crooker was questioned he allegedly stated that nothing in there was his "except a gas can" leading to the inference that Defendant owned everything else. Harold Crooker tried to correct this misstatement after Defendant's August 24, 2004 Final Detention Hearing but Defendant's attorney told him that it was too late. Knowing that his parents were being called to the Grand Jury, Defendant wrote AUSA O'Regan asking that the issue of property in the shed be clarified. To his credit it was. Harold Crooker testified that the 300 rounds of ammunition was his, some of which fitted guns that he currently owned, that in the shed besides his gas cans were his tires, a plow, and cinder blocks, and that the belongings of Defendant were placed in there by him, not by the Defendant.

-6-

## MISBEHAVIOR AT WYATT DETENTION CENTER
## (BROWN & ROOT SUBSIDIARY OF HALLIBURTON)

Weighted against Defendant was his having received disciplinary reports for making weapons. Defendant admits this. He would make weapons, call a guard over, show it to him and say, "Look here--see what I got." He did this many times. Alltogether he received over 40 disciplinary reports. He was purposely trying to get tossed out of there and eventually he was.

Initially the Defendant was held at Ludlow. Then, because he had filed a grievance over the nonavailability of adequate legal postage, they tossed him out on July 16, 2004. Defendant's transfer to Wyatt was viewed as an interstate kidnapping by privateers who are not peace officers. Defendant has no use for the private sector getting involved in his imprisonment. Defendant does not recognize any such authority, despite their being U.S. Marshal Service "contract-ors." These Wyatt thugs attacked Defendant and seized by force all of his legal papers which caused a lot of trouble with Defendant and his attorney and the Motion to Suppress. They come into Massachusetts from Rhode Island every day with detainees while carrying firearms when they are not even registered as a foreign corporation with the Secreatry of State to do business in the Commonwealth.

Defendant admits that he resisted them and was defiant.
All he wanted was to be thrown out and be detained closer to
his lawyer. His actions were manipulative but not "dangerous"
And he has received no disciplinary reports at all at the Ludlow,
Walpole, or Essex facilities

## Defendant's AntiGovernment Views

The Government argued at the August 24, 2004 Detention
Hearing that Defendant called Timothy McVeigh and Usama Bin
Laden "heroes and martyrs" Defendant may have, in anger
at being framed on the airgun silencer charge, called McVeigh
a hero or martyr. He does not really believe that however.
Once he was supportive of McVeigh but over the years has come
to realise that the majority of victims were ordinary folks
in line at Social Security and not the plotters of the Branch
Davidian church massacre, McVeigh's deed was truly
catastrophic. As for Usama Bin Laden, Defendant never
made any such comment. In fact after 9-11-2001 Defendant
had posted to his front door an American flag and a
picture of the Statue of Liberty with upraised middle
finger and the caption, "We're coming M---------er's."
Defendant showed this to his US Probation Officer, Mr. McEwan,
on one of his visits to collect a urine sample.
    It is true that Defendant played handball with
a WTC Bomber, Mohammed Salemah, at the U.S. Pen.
in Lompoc, CA, but so did former Dean of District

ATTORNEYS, Matthew Ryan, play racquetball with the local
mob boss. It means nothing.

## Potential Witness Intimidation

There are no codefendants or informers in this
case. It is all federal agents or postal workers. The
possession of the "silencer" is not even contested; what
is contested is the device being called a firearm-silencer
when it is not. One named informant from Wisconsin
was involved in the 7½-day warrantless parcel detention,
but he is irrelevant to the silencer case on the merits.

## Prior Criminal History

When the nonconviction data and duplicative entries
are culled out, Defendant's offenses since the 1980's have been
essentially fraud and weapons, again and again. In the
1970's when he was a youngster, Defendant had a couple
more serious offenses such as drug charges, threats and armed
robbery. But throughout the entire 24-year history (1970-1994)
there has never been any real violence as in assaulting,
striking, wounding, shooting, stabbing. No one can point
to anyone who was ever physically hurt by the Defendant.
As a partial counterbalance to this lengthy record,
Defendant has done his share of good deeds. He was employed
for nearly 4-years ending October 30, 2003 driving a

– 9 –

National/Alamo bus at the airport and helping elderly travellers with their luggage. He was also employed for a couple years in the law office of criminal defense attorney Martin K. Leppo. In an incident in Agawam he saved the life of a man who had ceased breathing by performing mouth-to-mouth resusitation for 20-minutes until the rescue unit could get there to put a breathing tube into his lungs. (Any other drug addict would have let the victim die, rifled his pockets, and dumped him on the roadside). And defendant took his elderly mother to church on Mother's Day, 2004.

## Conditional Release Supervision

Defendant has no problem with being ordered to the Halfway House until such time as he can secure an automobile, housing and employment. He has enough money to do so from lawsuit settlements with the news media in the last year. Logistically, it may take him a week or two to get organized, but no longer than that.

Once situated, Defendant has no objection to being supervised by Pretrial Services. He just completed 3-years of Supervised Release on 01/30/2003 and doesn't have a problem with it. It keeps him out of trouble.

— 10 —

WHEREFORE, Defendant's Request For Release on Conditions Should Be Allowed,

Respectfully Submitted,
Michael Alan Crooker
Essex County Corr. Facility
20 Manning Ave.
Middleton, MA  01949


## Request For Copies

IT is Requested That The Court make copies of This And provide Same To AUSA Kevin O'Regan And Defense Attorney Vincent Bongiorni Since Defendant No Longer Can Access The Jail's Typewriter And Photocopy machine.

Dated: September 2, 2005    s/ Michael Alan Crooker