UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
        v.               )    Criminal No. 04-30034-MAP
                         )
MICHAEL CROOKER,         )
        Defendant.       )

Government's Memorandum in Response to
Motion to Clarify and Motion to Suppress

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, submits this memorandum: (1) in response to defendant Michael Crooker's motion for clarification of this Court's denial of his motion to dismiss the indictment and (2) in further support of its opposition to Mr. Crooker's motion to suppress the evidence obtained on June 14, 2004, from the execution of a search warrant for the package mailed by the defendant.[1]

**Motion to Clarify**

18 U.S.C., Sections 922(g) and 921(a)(24) prohibit the interstate transportation of a firearm silencer by a convicted felon. A firearm silencer is defined as "any device for silencing, muffling, or diminishing the report of a portable firearm." Id., 921(a)(24). In this case, the evidence is largely undisputed that Mr. Crooker, a convicted felon, mailed in

---

[1] The government continues to rely on its prior memoranda on these issues and will not repeat unnecessarily the facts or law set forth therein. The government also relies on the evidence admitted during the suppression hearing conducted by the Court.

interstate commerce a device that was capable of silencing, muffling, or diminishing the report of a portable firearm. The primary issue for trial, therefore, will be the extent of Mr. Crooker's knowledge and criminal intent concerning the silencer.

In Staples v. United States, 511 U.S. 600 (1994), the Supreme Court held that the government was required to prove that the defendant knew that the weapon he possessed had characteristics that brought it within the statutory definition of a machine gun. 511 U.S. at 619. Applying the Staples rationale to this case, the issue at trial should be whether the government has proved that Mr. Crooker knew that the device he mailed had the characteristics that brought it within the statutory definition of a firearm silencer. In other words, did Mr. Crooker know that the device was capable of silencing, muffling, or diminishing the report of a portable firearm?

Following Staples, this approach has been adopted by the Courts of Appeals for the Second, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits. See United States v. Kavoukian, 354 F.3d 117, 120 (2nd Cir. 2003)(jury properly instructed that government was required to prove "that the device possessed the characteristics that make it a silencer, and that [the defendant] knew that the device had those characteristics"), United States v. Ruiz, 253 F.3d 634, 638 (11th Cir. 2001)("Under Staples, the defendant only need be aware of the features that bring the

weapon withing the scope of the Act: the fact that it is a silencer."), United States v. Sanders, 240 F.3rd 1279, 1281 (10th Cir. 2001)(defendant needs to know that "the 'weapon he possessed had the characteristics that brought it within the statutory definition' of a silencer"), United States v. Jones, 222 F.3rd 349, 352 (7th Cir. 2000)(in a case involving a firearm, but not a silencer, "the government must prove that the defendant knew of the particular characteristics that brought his weapon within the scope of the Act"), United States v. Hall, 171 F.3rd 1133, 1151 (8th Cir. 1999)(government must prove that "defendant knew that the relevant item could in fact function to diminish the sound of a gun"), United States v. Thompson, 82 F.3rd 849, (9th Cir. 1996)(adopting Staples mens rea requirement). The government has not found a Circuit Court of Appeals that has not followed the Supreme Court's ruling in Staples in setting forth the knowledge element of a federal silencer offense.

United States v. Syverson, 90 F.3d 233 (7th Cir. 1996), which is the primary case relied upon by the defendant, supports the government's position. In Syverson, the defendant argued that the government was required to prove that he knew that the silencer in question "actually reduced the report of a gun." Id. at 231-32. The Seventh Circuit began by explaining the basic rule:

> Under <u>Staples</u>, the government can prove that a defendant knowingly possessed a silencer by proving that the defendant knowingly possessed an item and that he knew that the item had the features of a silencer.

<u>Id</u>. At 232.

The Court of Appeals went on to say however, that to meet the mens rea requirement the government need not prove that the device in question actually worked.

> "[A] device can be a silencer for the purposes of Section 921(a)(24) even if it does not actually silence.

<u>Id</u>. It was in this context that the Court stated that the government had to prove that the device in question was made for the purpose of silencing a firearm. Since the defendant had designed and manufactured the device, "his intentions determine[d] whether it purported to be a silencer." <u>Id</u>. at 232.

In this case, the government will prove that the silencer actually diminishes the report of a firearm. As a result, the only issue will be whether the defendant knew that the silencer had this characteristic which brings it within the scope of the statute. The jury should be so instructed.

### Motion to Suppress

<u>Factual Background</u>

The facts underlying the defendant's motion to suppress are largely undisputed. On June 1, 2004, Postal Inspector Dailey read a referral from the Milwaukee Field Office of the United

4

States Postal Inspection Service. The referral was in reference to a customer complaint regarding an eBay advertisement which identified Michael Crooker at 1162 Springfield St., Feeding Hills, MA 01030, as selling chemicals that would be mailed by the United States Postal Service if purchased. The list of chemicals included hydrochloric acid, which was considered to be a hazardous material, and therefore, was not mailable. When the prospective customer read the advertisement, the customer asked the seller (identified as the defendant) whether the chemicals provided on the list were mailable. The defendant replied that he had no concerns for the regulations and usually mailed all items that he sold by parcel post, including nitric acid. The customer then forwarded his e-mail correspondence regarding the sale of chemicals to the Postal Inspection Service. See Exhibits 5 and 6.

Thereafter, on June 2, 2004, Inspector Dailey contacted the Postmaster at the Feeding Hills Post Office regarding the defendant. Inspector Dailey learned from the Postmaster that the defendant mailed parcels on a frequent basis from that post office. Inspector Dailey asked the Postmaster to notify him with respect to future parcels being mailed by the defendant.

Based on his concerns regarding hazardous materials being placed in the mail delivery stream, Inspector Dailey contacted the Postal Inspection Service's Legal Department on June 2nd and

June 7th, 2004, for guidance in detaining and identifying any suspected hazardous mailings by the defendant.  Inspector Dailey learned that Postal Service regulations provide for the screening of mail by x-ray or other appropriate means when there is a credible threat that the mail at issue "may contain a bomb, explosives, or other material that would endanger life or property."  See Administrative Support Manual Sections 274.31 and 274.41.

On the afternoon of Monday June 7, 2004, Inspector Dailey was notified that a bulk mail parcel was mailed by the defendant at the Feeding Hills Post Office on that day.  When the defendant presented the package for delivery at the Post Office counter, it did not have postage already affixed to it.  The defendant was aware of the delivery options available to him, including guaranteed next day delivery via Express Mail, non-guaranteed but expedited delivery via Priorty Mail, non-guaranteed air delivery via First Class mail and non-guaranteed truck delivery via parcel post.  Parcel post was the cheapest and slowest delivery option, with a non-guaranteed expected delivery time of anywhere between 4 days and two weeks.  The defendant chose parcel post.

The package was insured parcel no. VE 169 385 056 US, addressed to Mike Paulus, 1145 Shimp Dr., Celina, OH 45822; with a return address to M. Crooker, Apt. 29, 1162 Springfield St., Feeding Hills, MA 01030.  The parcel had a postage meter stamp

from the Feeding Hills Post Office in the amount of $16.72. It measured 27 inches in length, 12 inches in width, and was 14 inches deep. The Postmaster told Inspector Dailey that in accord with Postal Service practice, the defendant was asked whether the parcel contained any hazardous materials. According to the Postmaster, the defendant responded that the item contained metal parts.

On Tuesday June 8th, Inspector Dailey picked up the parcel from the Feeding Hills Post Office. Between June 7th and 9th Inspector Dailey consulted with legal counsel for the Postal Inspection Service and attempted unsuccessfully to have the parcel inspected by a canine trained to detect explosives and hazardous substances.

On Thursday, June 10, 2004, three days after the defendant had mailed the package, Inspector Dailey had the parcel examined with x-ray equipment in the possession of the Postal Inspection Service in Hartford, CT. Based on his review of the x-ray, Inspector Dailey believed that the parcel contained some type of firearm. A trigger, barrel and stock were visible in the x-ray examination. See Exhibit 8.

On the same day, Inspector Dailey contacted the Bureau of Alcohol, Tobacco & Firearms in order to determine if either the sender, the defendant, or the addressee, Mike Paulus, were authorized to mail or receive firearms. ATF Special Agent

Patrick Burns told Inspector Dailey that neither the defendant nor Paulus were so authorized. In addition, Inspector Dailey reviewed the defendant's criminal history and determined that he was a convicted felon and therefore, was prohibited from possessing firearms.

Friday June 11th was a national holiday honoring former President Reagan. Postal Inspector Dailey worked on an affidavit in support of a search warrant for the parcel post package on Saturday the 12th and applied for and obtained a search warrant from this Court on Monday the 14th. Postal Inspector Dailey executed the warrant the same day and discovered what appeared to be a silencer. See Exhibit 20. This observation was confirmed by tests conducted by the ATF laboratory.

## Argument

As explained in the government's earlier memorandum, the defendant's motion should be denied because Postal Inspector Dailey acted appropriately in detaining the defendant's bulk mail parcel on June 7, 2004, examining the parcel three days later via x-ray on June 10th, and obtaining a search warrant for the parcel on the next business day, June 14th.

United States v. LaFrance, 879 F.2d 1, 6 (1st. Cir. 1989), established that reasonableness is the touchstone when analyzing whether the defendant's Fourth Amendment rights in his mailed parcel were violated. As relevant to this case, the LaFrance

Court stated that both diligence and timeliness were important factors in determining reasonableness. Id. at 8-9. Diligence includes consideration of other time constraints on law enforcement and timeliness includes consideration of the delivery time contracted for by the parties. Id.

In this case, Inspector Dailey acted reasonably in taking limited steps to determine whether the parcel, which was mailed via the Post Office's slowest and non-guaranteed delivery option, contained a hazardous substance that would be dangerous to send in the mail. Thereafter, he timely sought the Court's authority to search the parcel via a search warrant.

Prior to June 7th, Inspector Dailey learned that the defendant was sending hazardous substances through the mail and that he had no regard for postal regulations. As a result, when the defendant mailed the parcel on June 7th, Inspector Dailey had reasonable and articulable suspicion to conduct a limited inspection of the parcel.[2] See United States v. Van Leeuwen, 397 U.S. 249 (1970). Thereafter, he consulted counsel, unsuccessfully sought the help of a canine and eventually used an x-ray machine to examine the package. All of this was done

---

[2] As explained during the suppression hearing, under post office regulations parcel post packages can be opened and their contents inspected without a warrant. This was not done in this case.

9

within three days and while Inspector Dailey was working on other Postal Inspection Service business.

Since the package was sent parcel post, there was no guarantee or even expectation of expedited delivery. Based on information provided by the Postal Service on its website, the earliest that the defendant could have reasonably anticipated possible delivery was four days. As a result, the original three day delay in sending the package through the mail stream was not significant.

Once the x-ray revealed what appeared to be a firearm inside, Inspector Dailey had probable cause to believe that the defendant, a convicted felon, unlawfully possessed a firearm. On the next business day[3] Inspector Dailey applied to the Court for a search warrant to inspect the parcel.

In United States v. Gill, 280 F.3d 923, 928-29 (9th Cir. 2002), the Ninth Circuit found that a six day delay in obtaining a search warrant for an Express Mail package was reasonable. In Gill, the Court of Appeals observed that during the six day delay, which included a weekend and a day in which the Magistrate Judge was unavailable, the postal officials worked diligently. Id. at 929. Similarly, in this case Inspector Dailey was

---

[3] The intervening federal holiday and weekend further support the conclusion that Inspector Dailey's application for a search warrant on Monday, June 14th was reasonable. See United Stastes v. Gill, 280 F.3d 923, 929 (9th Cir. 2002) (intervening weekend was significant factor in determining timeliness).

attentive to the legal and practical issues related to the defendant's parcel. He consulted with counsel and attempted to arrange for a dog sniff before x-raying the package on Thursday, June 10th. See United States v. Ganser, 315 F.3rd 839, 842-44 (7th Cir. 2003)(one day delay in subjecting first class letter to dog sniff and 4 day delay in obtaining warrant not unreasonable), United States v. Aldaz, 921 F.2d 227, 229-31 (9th Cir. 1990)(five day delay not unreasonable), cited in Gill, 280 F.3d 929, United States v. Mayomi, 873 F.2d 1049, 1054 (7th Cir. 1989)(two day delay in subjecting letters from overseas to dog sniff was reasonable).

In light of Inspector Dailey's reasonable and graduated response to his reasonable suspicion that the parcel contained a hazardous substance and then his probable cause to believe that the defendant unlawfully possessed a firearm, the defendant's Fourth Amendment rights were not violated.

### Conclusion

For the foregoing reasons the Court should clarify its denial of the defendant's motion to dismiss by adopting the rule announced by the Supreme Court in Staples and deny the defendant's motion to suppress.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

by: _____
Kevin O'Regan
Assistant U.S. Attorney

Date: November 4, 2005

11

<u>Certificate of Service</u>

November 4, 2005

I certify that on November 4, 2005, I caused the foregoing document to be faxed and mailed to counsel for the defendant, Vincent Bongiorni, Esq, 95 State Street, Springfield, MA 01103.

_____
Kevin O'Regan
Assistant U.S. Attorney