UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) NO.   04-30034-MAP |
| | ) |
| MICHAEL CROOKER | ) |

**AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS OR FOR APPROPRIATE RELIEF**

Now comes the defendant in the above entitled motion and being duly sworn, hereby deposes and states as follows:

I was brought before the United States District Court on June 23, 2004. I was not represented by counsel. The Government was represented by Assistant United States Attorney Kevin O' Regan. I was aware of A.T.F.'s laboratory protocol reflecting the procedures employed in the process necessary to establish whether an item has been used on a portable firearm. (See additional affidavit of Michael Crooker) I specifically informed the prosecutor in this case the fact that this device had never been used on such a device and was designed for the non-firearm air gun. A.U.S.A. O'Regan acknowledged to me the Government was aware I had not used the weapon on a portable firearm. I assert I owned this device for an extended period of time and an examination of this device would have demonstrated that the device had never had a firearm which utilized gunpowder to expel a projectile fired through it and that the failure of the ATF laboratory to examine the device before firing a conventional weapon through it has caused a contamination of the item for further testing which can not be reversed and for which there is no evidentiary cure.

In May 2001, I purchased a Korean made Sam Yang Bigbore 909 44- caliber air rifle from a mid west airgun dealer for $550.00. This rifle came with a factory threaded muzzle.

In July 2001, I purchased an air rifle sound moderator from an airgun-smith for $150.00 to be used with the Sam Yang rifle. This device was specially made for the Sam Yang and I had to send a photograph and measurements of the muzzle end of the Sam Yang to aid the airgun-

smith in his design and manufacture of the device.

The photograph and measurements were necessary because the air rifle sound moderator being designed would have to have female metric threads that mated to the air rifle's male metric muzzle threads in order for the two to screw together. Also, the device would have to be able to clear the unsual 3 barrel configuration of the air rifle's muzzle end in order to be able to be attached.

I still have a hard copy of the e-mails of the photograph and measurements that I sent to the manufacturer.

I possessed the Sam Yang sound moderator for approximately 3 years during that time it was never out of my possession. I usually kept it inside my tool box which was inside my residence.

The device came to me with instructions that it was "made for Air only and cannot handle the flash of a firearm" the device was never used with a firearm and no firearm ever shot through it while I owned it.

One time I unscrewed counterclockwise by hand the knurled end cap of the device in order to see inside. I have always been curious as to how things work, and have been disassembling things out of curiosity since I was a child. I could see inside that there were white fabric discs which had no burn marks or "tattooing" which is distinctive of gunshot residue. I am aware of what "tattooing" is because of my legal training . My former employer, Attorney Martin Leppo, once made me read a book on forensic gunshot wounds because we were handling several murder defenses. I know that closeup gunshots send unburned and partially burned powder particles into the tissue and other substances.

I also know from reading A.T.F. Administrative staff manuals that gunshot residue is easily detected in firearm silencers. In 1978 and 1979 I used the Freedom of Information Act to request dozens of these manuals. Some were refused, in whole or part, and wound up in litigation that ended in published cases at 663 F.2d 140 and 670 F.2d 1051 (D.C. Circuit 1980). Others were not refused and I recall having a stack of them at F.C.I.-Ashland, KY in 1978 and I also recall an A.T.F. agent personally delivering to me another stack of them at F.C.I.-Danbury, CT in 1979.

While reading these staff manuals I distinctly recall one of them which advised A.T.F.

personnel that they must have done a gunshot residue test on a suspected silencer before the device is shot through with a firearm in testing to determine if it will muffle the report of a firearm. The instructions went on to say that if such a gunshot residue test was not done, valuable evidence against the defendant will forever be lost (the presumed gunshot residue test result that didn't get done).

I do not recall the name of this publication. However, I believe that records are kept at A.T.F. of each and every FOIA request along with copies of everything released.

Even without such protocol/policy/instructions, common sense dictates that a suspected firearms silencer needs to be gunshot residue tested before it is shot through with an A.T.F. firearm to determine functionality.

After owning the device for 3 years I sold it to a Mike Paulus in Ohio. Mr. Paulus called me on June 3, 2004 in response to an advertisement I had placed in the Fun Supply Airgun classifieds on the internet. He told me that he too owned a Sam Yang Bigbore 909 44 caliber air rifle and in fact had just killed a deer with his. He wanted to know if I would sell him the sound moderator alone. I told him ok for $100.00. He said he would send a money order the next day. I then amended my advertisement by deleting the sound moderator and reducing the price to $300.00. No sooner did I get that done and Mr. Paulus calls me again, this time stating that he wanted the Sam Yang rifle and the air pump too, all for the $400.00 as stated in the original advertisement.

The following Monday, June 7, 2004, I received his $400.00 money order and I mailed him his air rifle, pump, and sound moderator.

In my conversations with Mr. Paulus, it was clear that he intended to use the sound moderator on his Sam Yang Bigbore 909 air rifle and not on any firearm.

I was arrested on June 23, 2004. As the arrest report by USPIS Inspector Daily correctly states, I said " I got the device from an airgun supplier and it is totally legit."

On my way to the Federal building from the arrest site, I got into an argument with ATF Agent Burns about the legality of airgun silencers. When we got to the courtroom I got into an argument with A.U.S.A. O'Regan as well. I told O'Regan that I wanted a gunshot residue test done on the device before it got contaminated by sound level testing. His response was, "we do not allege that you ever actually used it on a firearm."

I now know from the laboratory report and the Suppression Hearing testimony that my request was not honored and the A.T.F. shot through the device on June 25, 2004 in sound level testing, using a Ruger 22 caliber firearm.

The laboratory report and Agent Burns' testimony that the device could not be disassembled is false. As stated above, I disassembled it myself by unscrewing counterclockwise the knurled end cap and I did so without tools. I observed female threads on the body of the device and male threads on the knurled end cap.

Also, the testimony of Agent Burns that A.T.F. has no policy or protocol regarding gunshot residue tests on suspected silencers is also false. As stated above, I myself have read about it in A.T.F. administrative staff manuals in 1978 and 1979.

I also know, from experience and legal training, that a gunshot residue test can be performed with a swab. It is not necessary to disassemble the suspected firearm silencer.

The refusal to perform the test that I requested has destroyed defense evidence, that is, the pristine condition of the airgun sound moderator uncontaminated with gunshot residue. I can no longer prove to a jury that my device was never shot through with a firearm before it fell into Government hands.

A.U.S.A. O'Regan, throughout these proceedings, continues to claim that my airgun device is a firearm silencer when he knows that I had it made for the Sam Yang air rifle , that I never used it on a firearm, and that 3 years later I sold it to another airgun owner of the same model Korean air rifle.

I am not satisfied with the remedy that the Government merely stipulate that the device was never used with a firearm and was only used with an airgun. In addition, to such stipulation, I want to introduce as evidence, by way of further stipulation or otherwise, the fact that I requested the gunshot residue test at my court arraignment and the fact that the Government refused to comply. Such evidence is probative of my innocence. No guilty man in a silencer case is going to make such a demand. Such evidence is also probative of the Government trying to frame me. The answer that A.U.S.A. O'Regan gave to me in response to my request clearly insinuates that they know this is an airgun device, but that they are going to convict me anyway on a technicality.

I believe, and therefore aver, the failure to do this gunpowder residue test is completely

unique in ATF annals. This process is always followed and has been part of their lab protocol for years. I believe the failure to perform this test is based upon the Government's efforts to undermine my ability to defend myself from what I believe is a baseless prosecution and my past history with ATF.

Signed under the pains and penalties of perjury this 5th day of December 2005.

/s/ Michael Crooker