FILED
J'S OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2005 DEC 20 P 7:58

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 04-30034-MAP
)
MICHAEL CROOKER, )
　　　Defendant. )

Government's Opposition to Motion to Dismiss

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, submits this memorandum and the accompanying affidavit of ATF Special Agent Patrick Burns ("Burns Affidavit") in opposition to defendant Michael Crooker's motion to dismiss the indictment. The defendant's motion to dismiss[1] should be denied because the government did not destroy exculpatory evidence. Nor did it act in bad faith.

Factual Background

On June 14, 2004, law enforcement officers executed a search warrant and seized what appeared to be a firearm silencer from the inside of a package mailed by the defendant, a convicted felon, to a person in Ohio.

On June 23, 2004, the defendant was arrested and appeared before Magistrate Judge Neiman. The government, which was represented on that day by Assistant U.S. Attorney Thomas

---

[1] It is unclear whether the defendant's motion should be a motion to dismiss the indictment or a motion to suppress evidence. Under either procedural vehicle, the defendant's motion is substantively meritless.

O'Connor, moved for the defendant's pretrial detention and for a two day continuance of the detention hearing. The court granted the government's motion for a two day continuance.

On June 25, 2004, the defendant appeared before Magistrate Judge Neiman without an attorney. After a long discussion about the defendant's medical treatment, a proffer by Assistant U.S. Attorney Kevin O'Regan concerning the defendant's continued pretrial detention, and the defendant's request for appointment of counsel, the court scheduled a detention hearing for June 29, 2004. June 25, 2004, would have been the first time the defendant would have been able to discuss with Assistant U.S. Attorney O'Regan his theory of defense relating to the silencer he had attempted to send in the mail to Ohio.

Coincidentally, on the same day, June 25, 2004, the ATF Firearms Technology Branch tested the silencer. ATF Firearms Enforcement Officer Richard D. Craze, who has worked for the ATF's Firearms Technology Branch for approximately 26 years, conducted the test. Mr. Craze has examined approximately 17,000 firearms and approximately 3,500 silencers and related devices. See Burns Affidavit, paragraph 4.

According to Mr. Craze, for the last eight years the ATF's protocol relating to suspected silencers has not included swabbing the barrels of the items being inspected. Mr. Craze stated, in substance, that swabbing the barrel is only relevant

to whether the silencer has been used with a firearm, as opposed to whether the silencer is capable of reducing the sound of a firearm. Id.

Mr. Craze's laboratory report explains that the defendant's silencer was attached to a Ruger .22 caliber semiautomatic pistol and the pistol was fired. According to the report, "The sound reduction obtained in the above test was very significant and noticeable and compares very favorably with known firearms silencers." Id., paragraph 5.

On June 29, 2004, the Magistrate Judge appointed current counsel to represent the defendant and held a detention hearing. Pretrial proceedings followed, eventually leading to this latest motion to dismiss.

### Argument

A defendant who seeks to benefit from the alleged destruction or loss of possibly exculpatory evidence faces a heavy burden of demonstrating bad faith by the government.

> A defendant who seeks to suppress evidence formerly in the government's possession . . . must show that the government, in failing to preserve the evidence, (1) acted in bad faith when it destroyed evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable. Thus in missing evidence cases, the presence or absence of good or bad faith by the government will be dispositive.

United States v. Femia, 9 F.3d 990, 993-94 (1st Cir. 1993)(discussing California v. Trombetta, 467 U.S. 479, 485 (1984) and Arizona v. Youngblood, 488 U.S. 51, 55 (1988)). See

3

Illinois v. Fisher, 540 U.S. 544, 547-48 (2004)("[F]ailure to preserve . . . 'potentially useful evidence' does not violate due process *unless a criminal defendant can show bad faith on the part of the police.'*")

In this case, there was no bad faith by the government. First, swabbing the barrel of the silencer was not part of the ATF examination protocol. Second, the defendant could not have discussed his theory related to the silencer with Assistant U.S. Attorney O'Regan until the same day that the ATF actually conducted the test.

Moreover, the swabbing test urged by the defendant would have limited evidentiary value because the device mailed by the defendant clearly had the characteristics and capabilities of a firearms silencer. The defendant's actual use of the silencer with a firearm is not an element of the crime.

### Conclusion

For the foregoing reasons the defendant's motion to dismiss should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

by: /s/ Kevin O'Regan
Kevin O'Regan
Assistant U.S. Attorney

Date: December 20, 2005

<u>Certificate of Service</u>

December 20, 2005

   I certify that on December 20, 2005, I caused the foregoing document to be served on counsel for the defendant, Vincent Bongiorni, Esq, 95 State Street, Springfield, MA 01103.

_____
Kevin O'Regan
Assistant U.S. Attorney

**AFFIDAVIT**

I, Patrick Burns, being duly sworn, state as follows:

1. I am employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since April, 2000. During the course of my law enforcement career, I have investigated over fifty cases involving felons possessing firearms illegally. I have also attended ATF training courses pertaining to firearms violations, including thirteen weeks of training at the Federal Law Enforcement Training Center. I am currently assigned to ATF's Springfield, Massachusetts, office. As a Special Agent, I am responsible for investigations involving illegal activity related to firearms and explosives, including the manufacture and shipment of firearms and explosives by convicted felons.

2. I am working on this case with other ATF Special Agents, a United States Postal Inspector and agents of the Federal Bureau of Investigation.

3. I am making this affidavit in support of the government's response to Michael Crooker's motion to dismiss the indictment.

4. I have discussed the ATF protocol concerning the examination of suspected firearms silencers with ATF Firearms Enforcement Officer Richard D. Craze. Mr. Craze has worked for the ATF's Firearms Technology Branch for approximately 26 years. Mr. Craze has examined approximately 17,000 firearms and approximately 3,500 silencers and related devices. According to Mr. Craze, for the last eight years the ATF's protocol relating

to suspected silencers has not included swabbing the barrels of the items being inspected. Mr. Craze stated, in substance, that swabbing the barrel is only relevant to whether the silencer has been used with a firearm, as opposed to whether the silencer is capable of reducing the sound of a firearm.

    5. Mr. Craze's laboratory report related to the silencer in this case is attached as Exhibit A. Mr. Crooker's silencer is Exhibit 1. According to Mr. Craze, the silencer was attached to a Ruger .22 caliber semiautomatic pistol and the pistol was fired. Mr. Craze's report states, "The sound reduction obtained in the above test was very significant and noticeable and compares very favorably with known firearms silencers."

 

_____
Special Agent Patrick Burns
Bureau of Alcohol, Tobacco,
Firearms & Explosives

Sworn to before me
on December 20, 2005

_____
Notary Public

LAUREEN M. COTE
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires July 12, 2007

2



| DEPARTMENT OF THE TREASURY<br>BUREAU OF ALCOHOL, TOBACCO AND FIREARMS<br>**Firearms Technology Branch**<br>**Report of Technical Examination** | Firearms Programs<br>Division<br>Washington, D.C. 20226<br>Phone: (202) 927-7910 |
|---|---|

| TO:<br><br>Special Agent Larry Ward<br>Bureau of Alcohol, Tobacco and Firearms<br>433 N. Summit Street, Suite 701<br>Toledo, OH 43604 | DATE: JUL 1 3 2004<br>YOUR: 773060-04-0068<br>RE: Paulus, Michael<br>OUR: 2004-575-RDC |
|---|---|

| DATE EXHIBITS RECEIVED: 6/25/04 | TYPE OF EXAMINATION REQUESTED: |
|---|---|
| DELIVERED BY: Fed Ex 791873362199 | Test, Examination, Classification |

EXHIBITS:

1. Cylindrical device, manufacturer unknown, no serial number, approximately 11-5/8 inches by 1-1/2 inches.

2. Cylindrical device, manufacturer unknown, no serial number, approximately 9-7/16 inches by 1-1/8 inches.

3. Cylindrical device, manufacturer unknown, no serial number, approximately 9-5/8 inches by 1-1/8 inches.

4. Cylindrical device, manufacturer unknown, no serial number, approximately 10-1/2 inches by 1-1/4 inches.

**FINDINGS:**

Exhibit 1 is a cylindrical device of unknown origin. It consists of an outer cylinder having an integral front and rear end cap, internally threaded rear end cap extension, intermittently spaced discs of felt-like material, and felt-like material placed between the discs. The interior was inspected with an optical probe since the device could not be disassembled. The inside diameter of the front end cap is approximately 5/8 of an inch. The exterior of the device is coated with a black paint-like material. This covering is chipped in numerous locations. The physical characteristics of this device are consistent with those of rudimentary firearm silencers.

A Ruger .22 caliber semiautomatic pistol from our reference collection was test fired in the presence of a calibrated Bruel & Kjaer Type 2231 sound level meter. Exhibit 1 was attached to the pistol and the weapon test fired once again. This test was conducted on June 25, 2004, at the ATF Firearms Technology Branch test firing facility in Martinsburg, West Virginia. Below are the recorded results of this test:



A

S/A Larry Ward

773060-04-0068
2004-575-RDC
Page 2

| | |
|---|---|
| Ruger pistol | 149.7 decibels |
| With Exhibit 1 | 127.1 decibels |
| Sound Reduction | 22.6 decibels |

The sound reduction obtained in the above test was very significant and noticeable and compares very favorably with other known firearm silencers.

Exhibit 2 is a cylindrical device of unknown origin. It consists of an outer cylinder having a front end cap, integral rear end cap having an internally threaded rear end cap extension, and tightly packed discs of felt-like material. The interior was inspected by removing the threaded front end cap. The inside diameter of the front end cap is approximately 3/8 of an inch. The exterior of the device is coated with a black paint-like material. The physical characteristics of this device are consistent with those of rudimentary firearm silencers.

A Ruger .22 caliber semiautomatic pistol from our reference collection was test fired in the presence of a calibrated Bruel & Kjaer Type 2231 sound lever meter. Exhibit 2 was attached to the pistol and the weapon test fired once again. This test was conducted on July 6, 2004, at the ATF Firearms Technology Branch test firing facility in Martinsburg, West Virginia. Below are the recorded results of this test:

| | |
|---|---|
| Ruger pistol | 150.8 decibels |
| With Exhibit 2 | 119.9 decibels |
| Sound Reduction | 30.9 decibels |

The sound reduction obtained in the above test was very significant and noticeable and compares very favorably with other known firearm silencers.

Exhibit 3 is a cylindrical device of unknown origin. It consists of an outer cylinder having an integral front and rear end cap, internally threaded rear end cap extension, intermittently spaced discs of felt-like material, and felt-like material placed between the discs. The interior was inspected with an optical probe since the device could not be disassembled. The inside diameter of the front end cap is approximately 5/16 of an inch. The exterior of the device is coated with a black paint-like material. The physical characteristics of this device are consistent with those of rudimentary firearm silencers.

A Ruger .22 caliber semiautomatic pistol from our reference collection was test fired in the presence of a calibrated Bruel & Kjaer Type 2231 sound lever meter. Exhibit 1 was attached to the pistol and the weapon test fired once again. This test was conducted on July 6, 2004, at the ATF Firearms Technology Branch test firing facility in Martinsburg, West Virginia. Below are the recorded results of this test:

| | |
|---|---|
| Ruger pistol | 150.8 decibels |
| With Exhibit 3 | 119.5 decibels |
| Sound Reduction | 31.3 decibels |

The sound reduction obtained in the above test was very significant and noticeable and compares very favorably with other known firearm silencers.

S/A Larry Ward

773060-04-0068
2004-575-RDC
Page 3

Exhibit 4 is a cylindrical device of unknown origin. It consists of an outer cylinder having an integral front and rear end cap, rear end cap extension, intermittently spaced sections of metal screen mesh and discs. The interior was inspected with an optical probe since the device could not be disassembled. The inside diameter of the front end cap is approximately 5/16 of an inch. The exterior of the device is coated with a black paint-like material. A marking of ".25" was found on the concave area of the tapere end of the outer cylinder. The physical characteristics of this device are consistent with those of rudimentary firearm silencers.

A Ruger .22 caliber semiautomatic pistol from our reference collection was test fired in the presence of a calibrated Bruel & Kjaer Type 2231 sound lever meter. Exhibit 1 was attached to the pistol and the weapon test fired once again. This test was conducted on July 6, 2004, at the ATF Firearms Technology Branch test firing facility in Martinsburg, West Virginia. Below are the recorded results of this test:

| | |
|---|---|
| Ruger pistol | 150.8 decibels |
| With Exhibit 4 | 119.2 decibels |
| Sound Reduction | 31.6 decibels |

The sound reduction obtained in the above test was very significant and noticeable and compares very favorably with other known firearm silencers.

## CONCLUSION:

Exhibits 1, 2, 3, and 4 have characteristics consistent with those of firearm silencers. Test results demonstrated that these devices are very capable of reducing the report of a portable firearm. Each is therefore a "firearm" as defined in 18 U.S.C. § 921(a)(3) and a "firearm silencer" as defined in 18 U.S.C. § 921(a)(24) of the Gun Control Act of 1968 (GCA). Each is also a "firearm" as defined in 26 U.S.C. § 5845(a)(7) of the National Firearms Act (NFA). Further, none of these silencers are identified as required in 26 U.S.C. § 5842 of the NFA.

Richard D. Craze
Firearms Enforcement Officer

Earl L. Griffith
Firearms Enforcement Officer

Sterling Nixon
Chief, Firearms Technology Branch