UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) NO.   04-30034-MAP |
| | ) |
| MICHAEL CROOKER | ) |

**PRELIMINARY MEMORANDUM IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION TO SUPPRESS**

FACTS

In early June 2004 Postal Inspector Bryan Dailey acting on information received from a counterpart in Milwaukee caused postal employees to seize a parcel delivered to the Feeding Hills branch of the Post Office by Michael Crooker.  Dailey believed the parcel might contain hazardous materials, postal regulations prohibited from mailing. After an X-Ray of the parcel revealed what appeared to be a conventional firearm Agents sought a Search Warrant authorizing its seizure.  Upon opening the package Agents discovered the item believed to be a firearm was in fact an unregulated airgun. Searching further Agents opened a case for the item and discovered what appeared to be a " silencer". Unsure of whether the device was in fact a silencer and therefore a firearm under Title 18 U.S.C. section 922 ; Agents sent the device to BATF's Laboratory to  confirm their suspicions.

On June 23, 2004 armed with an arrest Warrant,  Agent's arrested Crooker while operating his motor vehicle.  An Inventory search of the trunk of Crookers' vehicle resulted in the seizure of a number of items of evidence.  On the same date Agents executed a search warrant at Crooker's residence at 1162 Springfield Street. Feeding Hills.   The Warrant for Crooker's residence identified five(5) classes of items subject to seizure; 1) physical evidence related to the mailing of parcels, 2) physical evidence relating to the mailing of the parcel seized during the June 14th search, 3) physical evidence related to offering firearms/hazardous materials for sale, 4) all evidence of the manufacture of firearms and 5) all computers which could hold electronic evidence relating to offering for sale firearms/hazardous materials and/or the manufacturing firearms.

On July 2, 2004 Agents applied for and obtained three additional Search Warrants permitting the search of Crookers Dodge automobile as well as a laptop computer and video camera seized during the execution of the June 23rd. Searches. The affidavit sworn in support of the Warrant Application was identical for all three Warrants. Each of the three Warrants issued on July 2nd carried an attachment "A" which purported to identify the items subject to seizure. This description was also identical. The Affidavit accompanying the Warrant Applications relied in large measure on the results of prior searches of the defendants residence ,vehicle, and parcel.

On July 14, 2004 Agents applied for and received two additional Search Warrants for the homes of the Defendant's parents and brother Steven. These Warrants were executed on July 15th. On the same date agents conducted a "Consent Search" of the Defendant's residence at 1162 Springfield Street. The Search Warrant Affidavits although not identical are substantially similar and rely on the exact same factual basis to establish Probable Cause. Each of the Warrants carried an identical attachment "A" which described the property subject to seizure. The Affidavits sworn in support of the Warrant's relied upon the fruits of the earlier searches in order to establish Probable Cause.

The Defendant had been ordered detained since his arrest on June 23rd. In early July the Defendant was transferred from the Hampden County House of Correction to The Donald J. Wyatt Facility in Central Falls, Rhode Island. Wyatt is a private for profit enterprise housing detained persons under a contract with the United States Marshals Service. During the period of time between July and August 2004 the Defendants oral and wire communications were intercepted by Wyatt staff and disclosed to Agents of the Government.

On January 19, 2005 the Government obtained a Rule 41 Search Warrant authorizing the seizure of the contents of the Defendants stored Electronic Communications from COMCAST, an internet service provider, with whom the Defendant maintained an account.

**ARGUMENT**

PROBABLE CAUSE AND THE FRUIT OF THE POISONOUS TREE

As can readily be seen each of the searches directed against the Defendant has as its basis the search or series of searches that antecedes the original parcel search. Included within every Affidavit sworn in support of the Warrant's which issued are the results of the search preceding it. The Defendant asserts that all of the searches flowing from the parcel search are tainted as a result. *See* Wong Sun v United States, 371 U.S. 486 (1963).

A determination of Probable Cause involves assessing the information provided in the four corners of the affidavit supporting the warrant application, *see* United States v. Khounsavanh, 113 F.3d 279, 283 & n. 1 (1st Cir.1997). The information provided must "warrant a man of reasonable caution in the belief that an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949) "Probability is the touchstone." Khounsavanh, 113 F.3d at 283. "Probable cause exists when the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed..." United States v. Schaefer, 87 F.3d 562, 565 (1st Cir.1996). Mere suspicion, rumor, or strong reason to suspect [wrongdoing]" are not sufficient. United States v. Han, 74 F.3d 537, 541 (4th Cir.1996) (citation omitted).

The contents of the Affidavit sworn in support of the June 23, 2004 Search Warrant did not provide probable cause to support the authorization granted. This warrant permitted the seizure of physical evidence relating to the offering of hazardous materials for sale or delivery without regard to whether they were in fact evidence of Federal Crimes. The mere possession of hazardous materials in the generic sense is not prohibited. Although there are arguably Postal Regulation which regulate how and under what circumstances they might be shipped this affidavit provided no factual basis to conclude evidence of such violations were Federal Crimes the warrant did not particularly describe any Hazardous Material by name other than Hydrochloric Acid. The Affidavit provided some evidence that Crooker had offered Nitric Acid for sale in the unspecified past, however, the Affidavit provided no evidence that this was a violation of Federal Law. The face of the warrant referenced only violations of Federal Firearms Statutes . In short, the Agents, not the issuing Judge, determined what was hazardous and whether it was evidence of crime.

The Affidavit fares no better as to evidence of the firearms violation. The sole and exclusive basis for the warrants issuance is the fifth paragraph of S/A Burns Affidavit recited here

as follows "On June 14, 2004 the search warrant was executed found inside were an air rifle and what appears to be a homemade silencer".... "It appears that the silencer could be used to muffle the sound of both an air rifle as well as an actual firearm". The Defendant claims this language was insufficient as a matter of law to establish the probability of a violation of Federal Law. The Affidavit is completely silent as to an opinion that in fact the item was a firearm. The device had not been determined to be one by BATF lab technicians until well after the warrant issued. More importantly, the Defendant claims the affiant's assertion the mere appearance of capability to silence is insufficient to establish probable cause to believe a crime had been committed. This Court has taken under advisement the Defendants Motion to Reconsider his Motion to Dismiss which squarely raises the legitimacy of The Governments "capability" argument vis a vis the appropriate legal standard to apply to determine what constitutes a silencer under §921, and the Defendant incorporates herein all of the arguments previously advanced in that regard.

## THE LACK OF PARTICULARITY

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." (Emphasis added). U.S. Const. Amend. IV. In requiring a particular description of articles to be seized, the Fourth Amendment " 'makes general searches... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' " United States v. Fuccillo, 808 F.2d 173, 175 (1st Cir.1987) (quoting Stanford v. Texas, 379 U.S. 476, 485, 85 S. . 506, 512, 13 L. Ed.2d 431 (1965)). Unfettered discretion by the executing officer is one of the principal evils against which the Fourth Amendment provides protection, and thus warrants which lack particularity are prohibited.

The Defendant claims each of the warrants here to varying degrees suffer this same lack of particularity The three warrants issued July 2, 2004 , for example, contained a paragraph 7. (a) and (b) permitting the seizure of All computer evidence relating to the above items including: a. Text documents of any variety, including e-mail, web-sights, records of chat sessions,

correspondence or shipping records; and  b. digital images of any variety, including still images and videos.  The January 19, 2005 warrant was even more broadly drafted permitting  the wholesale seizure of all records without limitations of any sort.

General descriptions in warrants, however, have been accepted when the surrounding circumstances render it reasonable. *See*, e.g., United States v. Cortellesso, 601 F.2d 28 (1st Cir.1979) (general description upheld due to practical impossibility of precise description); Vitali v. United States, 383 F.2d 121 (1st Cir.1967) (general description permissible due to common nature of items to be seized).  United States v. Klein, 565 F.2d 183 (1st Cir.1977),  set forth a two-part test which in particular circumstances helps to determine whether the warrant satisfies the requirements of the Fourth Amendment in this respect; first,  the degree to which the evidence presented to the magistrate establishes reason to believe that a large collection of similar contraband is present on the premises to be searched, and second, the extent to which, in view of the possibilities, the warrant distinguishes or provides the executing agents with criteria for distinguishing the contraband from the rest of an individual's possessions.

In Klein the warrant  failed to establish that there was a large collection of contraband in the store and failed to explain the methods by which the executing officers could differentiate any contraband from the rest of defendant's possessions. This information could have been easily made available to the magistrate without undue burden on enforcement personnel, but was not.

As previously discussed the Agents had a complete  menu of the substances Crooker had purportedly offered for sale over the internet on E-Bay.  Most, if not all, were not classifiable as contraband.   No more than one could arguably be classified as a Hazardous Material and then only if it met certain Department of Transportation Criteria. The ease with which a particular description could have been supplied cannot be denied  Rather than particularly describe the known items  the Warrant simply provided an open ended generic description . In this case the Warrant impermissibly failed to provide a way for the Agents charged with executing it to distinguish things properly seizable  from others which were not.

## THE COMPUTER SEARCH

Defendant argues the computer search extended for an unreasonable amount of time and violated Fed.R.Crim.P. 41(e)(2)(A),FN4 which states that a warrant must command an officer to "execute the warrant within a specified time no longer than 10 days."

This provision was formerly found in Rule 41(c)(1). The language of Rule 41 was amended as part of a general restyling through amendments effective December 1, 2002. See Advisory Committee Notes.

The Fourth Amendment itself "contains no requirements about when the search or seizure is to occur or the duration. " United States v. Gerber, 994 F.2d 1556, 1559-60 (11th Cir.1993). However, "unreasonable delay in the execution of a warrant that results in the lapse of probable cause will invalidate a warrant." United States v. Marin-Buitrago, 734 F.2d 889, 894 (2d Cir.1984).  The restrictions in Rule 41 "not only ensure that probable cause continues to exist, but also that it is the neutral magistrate, not the executing officers, who determines whether probable cause continues to exist." Id. The policy behind the ten-day time limitation in Rule 41 is to prevent the execution of a stale warrant. "A delay in executing a search warrant may render stale the probable cause finding." United States v. Gibson, 123 F.3d 1121, 1124 (8th Cir.1997).

A delay in execution of the warrant under Rule 41 does not render inadmissible evidence seized, absent a showing of prejudice to the defendants resulting from the delay. See United States v. Cafero, 473 F.2d 489, 499 (3d Cir.1973).  Courts have permitted some delay in the execution of search warrants involving computers because of the complexity of the search. See, e.g., United States v. Gorrell, 360 F. Supp.2d 48, 55 n. 5 (D.D.C.2004) (ten-month delay in processing of computer and camera seized, although "lengthy," "did not take the data outside the scope of the warrant such that it needs to be suppressed" ); United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 66 (D. Conn.2002)

Computer searches are not, and cannot be subject to any rigid time limit because they may involve much more information than an ordinary document search, more preparation and a greater degree of care in their execution, compare United States v. Syphers, 426 F3rd. 461 (1st  Cir. 2005)

upholding computer search one year after warrant issued but where Court granted extension in writing. At present, the Defendant is without information as to when or under what circumstances the computer was examined . The Defendant has requested The Government provide him with this information as the return filed by the Agents which the Government served upon the Defendant indicated no search had occurred at the time the return was required to be filed.

## THE INVENTORY SEARCH

Our cases clearly hold that an inventory search is reasonable under the Fourth Amendment only if it is done in accordance with standard procedures that limit the discretion of the police. See <u>South Dakota v. Opperman</u>, 428 U.S., 364 (976),(. In <u>Bertine v. Colorado,</u>479 U.S. 367 (1987), the Court held that the police may open closed containers found within an impounded vehicle only if the inventory policy mandates the opening of all such containers.

Standardized criteria,., or established routine,, must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for if the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of crime," <u>Bertine</u>, 479 U.S., at 376  The Defendant claims he is entitled to an evidentiary hearing where, as here the Government claims an entitlement to an exception to the Warrant requirement.

## THE SCOPE OF THE SEARCHES

The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer

executing the warrant.

If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.

"The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.' The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S., at 84, 107 S. Ct., at 1016.

The purpose of the particularity requirement is not limited to the prevention of general searches. See Garrison, 480 U.S., at 84, 107 S. Ct. 1013. A particular warrant also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." United States v. Chadwick, 433 U.S. 1, 9, 97 S. Ct. 2476, 53 L. Ed.2d 538 (1977) (citing Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 532, 87 S. Ct. 1727 (1967)), abrogated on other grounds, California v. Acevedo, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed.2d 619 (1991). *See also* Illinois v. Gates, 462 U.S. 213, 236, 103 S. Ct. 2317 (1983)  Possession  of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct").

The Defendant alleges all of the searches by warrant in this case resulted in seizures of items outside the scope of the warrant.  This occurred in part because of a lack of particularity in the warrant. In large measure ,however the Agents tasked with executing the warrant simply exceeded the scope of the permitted search.  The defendant has yet to be provided with returns reflecting what was actually seized under the separate Warrants for the laptop computer and Comcast E-Mail account however a review of the documentary evidence provided to the defense in CD form indicates a substantial number of items.  Insofar as the Defendant has raised this same issue in his First Motion to Suppress regarding the search of his residence; The Defendant believes an Evidentiary Hearing is necessary to demonstrate the entirety of the seizures which

occurred outside the scope of the Warrants.

SEIZURE OF WIRE/ORAL COMMUNICATIONS

The Wyatt Detention Facility is located in Central Falls, Rhode Island. Cornell Corp. has managed and operated Wyatt since 1993 pursuant to a contract with the Central Falls Detention Facility Corporation ("CFDFC"). The CFDFC is a creature of Rhode Island statute. Chapter 54, title 45 of the General Laws of Rhode Island provided for the creation of a municipal detention facility corporation in each city and town of the state.FN3 See generally R.I.Gen.Laws §§ 45-54-1 to 45-54-28 (1991 Reenactment). The statute was intended to promote the construction of a detention facility in Rhode Island and to augment economic development within the state. See R.I.Gen.Laws § 45-54-2. The CFDFC created Wyatt in compliance with this statute. The CFDFC owns the facility. See Hugueinen v. Ponte 29 F. Supp.2d. 57 (D.R.I. 1998)

The Defendant was detained in this facility during the period from early July 2004 and the end of August when he was transferred. During this time period the defendants oral and wire communications were intercepted and recorded. These recordings were disclosed to The Government by Wyatt staff.  The Defendant claims Wyatt's civilian staff are not investigative or law enforcement officers as defined by Title III ,that he did not consent to such interceptions and the recordings at issue should not be used against him See Title 18 U.S.C. 2515.

A. Relevant Statutory Provisions

Section 2520 of the Act, 18 U.S.C. §§ 2510-2520 (1994 & Supp. II 1996), creates a federal cause of action in favor of any person whose oral communication is intercepted in violation of the Act. Section 2511(1)(b) provides that any person who intentionally uses any "electronic, mechanical, or other device" to intercept an oral, wire or electronic communication has violated the statute

Pursuant to § 2510(5)(a)(ii), the definition of "electronic, mechanical, or other device," as used in § 2511, does not include "any telephone or telegraph instrument, equipment or facility, or

any component thereof... being used ... by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2511(2) provides an exception from liability to one who intercepts a communication where one of the parties to that communication has consented to the interception.

The Act defines "[i]nvestigative or law enforcement officer" to be "any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter." 18 U.S.C. § 2510(7) (emphasis added). Plaintiffs argue that Defendants do not meet the definition of investigative or law enforcement officers under the Act's definition of "[i]nvestigative or law enforcement officer" includes only those who are: (1) empowered by law; (2) to conduct investigations of or to make arrests for; (3) offenses enumerated in this chapter.

Before a federal, state, or local officer has satisfied the strictures of § 2510(7), that officer must also be "empowered by law to conduct investigations of or to make arrests for" the crimes that § 2516 prescribes. An officer who has no lawful authority to engage in one of these functions is not within the exception that § 2510(5)(a)(ii) creates.

The United States Court of Appeals for the First Circuit has recognized that the implied consent of one party to a communication may provide a defense to a claim that a person has intercepted a communication in violation of the Act. See <u>United States v. Lanoue</u>, 71 F.3d 966, 981 (1st Cir.1995) (noting that consent might properly be implied in the context of § 2511(2)(c) where an inmate received notice of the interception in accordance with the Federal Bureau of Prisons Regulations); <u>Campiti v. Walonis</u>, 611 F.2d 387, 393-94 (1st Cir.1979) (holding that consent not implied under § 2511(2)(c)). The appeals court has noted that implied consent is not constructive consent but rather " 'consent in fact.' " See <u>Lanoue</u>, 71 F.3d at 981 (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 116-17 (1st Cir.1990)). Moreover, while consent should not be casually inferred, it may be implied in some circumstances notwithstanding insufficient notice. See id.

Relevant to this case, Title III prohibits the interception of telephone conversations, subject to certain exceptions, without a court order. 18 U.S.C. §§ 2511, 2518. Wire or oral communications intercepted in violation of Title III are inadmissible as evidence in court. 18 U.S.C. § 2515.

The Defendant has by way of attached affidavit set forth his lack of consent to the interceptions referred to above. The Defendant believes the existing case law requires the Government to bear the burden of proof if it intends to rely on a consent exception to the requirements of Title III.. The Defendant believes an evidentiary hearing will be necessary to resolve disputed issues of fact in this regard.

THE INTERCEPTION OF STORED ELECTRONIC COMMUNICATIONS

At some time after January 19 2005  The Defendant claims the Government was able to obtain his stored electronic communications by serving a Search Warrant upon representatives of Comcast an internet service provider with whom the Defendant had an account.

At present two discrete sections of the Federal Criminal Code deal with Electronic Communications Chapter 119 Title 18U.S.C. 2510 et seq. The Wiretap Act and Chapter 121 Title 18 U.S.C. 2701 The Stored Communications Act.

The Defendant claims Title III applies to electronic communications and attempts to intercept or access them cannot be accomplished with a search warrant issued under Rule 41 notwithstanding the express provision for such warrants under Chapter 121 See Title 18 U.S.C. 2703.  At present there is no jurisprudence which directly answers this question and the various District and Circuit Courts which have analyzed the overlap between the two sections have produced a variety of opinions and interpretation.  See <u>United States v Councilman,</u> 245 F. Supp.2nd. 319 D. Mass. 2003 , <u>United States v Councilman,</u> 373 F.3rd. 197 1st Cir. 2004, <u>United States v. Councilman</u> 418 F.3rd. 67 1st. Cir 2005 en banc , .<u>Steve Jackson Garnes v. United States Secret Service</u> 36 F.3rd. 347 (5th. Cir. 1994) <u>Konop v Hawaiin Airlines ,Inc</u>. 302 F3rd. 868 (9th Cir. 2002).

A fair reading of the opinion in Councilman, reversing the Trial Courts dismissal of the indictment lends support to the Defendants claim the overlap in the chapters inures to his benefit and .  If Title III applies to "stored electronic communications " as Councilman suggests it does then their disclosure in violation of Title III's provisions should result in suppression.

The Defendant has not been provided with a warrant return ,as required by Rule 41 as of

the filing of this motion and therefore anticipates filing a particularized argument upon receipt.

## THE CONSENT SEARCH

The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. Payton v. New York, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed.2d 639 (1980); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L. Ed. 436 (1948). The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, see Schneckloth v. Bustamonte, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed.2d 854 (1973), or from a third party who possesses common authority over the premises, see United States v. Matlock, supra, 415 U.S., at 171, 94 S.Ct., at 99. As we stated in Matlock, supra, at 171, n. 7, 94 S. Ct., at 993, n. 7, "[c]ommon authority" rests "on mutual use of the property by persons generally having joint access or control for most purposes…." The burden of establishing that common authority rests upon the State.

Schneckloth v. Bustamonte, 412 U.S., at 245-246, 93 S. Ct., at 2057 noted that prior recognition of the constitutional validity of 'third party consent' searches in cases like Coolidge v. New Hampshire, 403 U.S. 443, 487-490, 91 S. Ct. 2022, 2048, 29 L. Ed.2d 564 (1971), supported the view that a consent search is fundamentally different in nature from the waiver of a trial right. These cases make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. The issue is one of fact which requires an evidentiary hearing.

## THE LACK OF GOOD FAITH

In United States v. Leon, the Supreme Court held that even in the absence of probable cause, the exclusionary rule should apply only where excluding evidence would have a substantial deterrent effect on the police. See 468 U.S. 897, 906, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Thus, the police are not entitled to rely on a warrant where, inter alia, the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Id. at 924. The Court called for a case-by-case analysis of this inquiry.

"The usual remedy for seizures made without probable cause is to exclude the evidence wrongfully seized in order to deter future violations of the Fourth Amendment." Brunette, 256 F.3d at 19; see also United States v. Capozzi, 347 F.3d 327, 332 (1st Cir.2003) (stating that exclusion of evidence is appropriate "where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"). "This exclusionary rule does not obtain, however, where an objectively reasonable law enforcement officer relied in good faith on a defective warrant because suppression in that instance would serve no deterrent purpose." Brunette, 256 F.3d at 19 (citing Leon, 468 U.S. at 920-21, 104 S. Ct. 3405 (1984)); see also United States v. Robinson, 359 F.3d at 69.

The Supreme Court expressly stated that "[i]t is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." Leon, 468 U.S. at 923 n. 24. Thus, in Malley v. Briggs, the Court held that the relevant question was "whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." 475 U.S. 335, 345, 106 S. Ct. 1092, 89 L. Ed.2d 271 (1985). "If no officer of reasonable competence would have requested the warrant, i.e., his request is outside the range of professional competence expected of an officer," id. at 346 n. 9, then the fact that the magistrate approved the application is of no help to him. The applying officer "cannot excuse his own default by pointing to ⋯ the magistrate." Id.; see also United States v. Ricciardelli, 998 F.2d 8, 16 (1st Cir.1993). Utilizing the above described analysis the Agents cannot be said to be acting in good faith. The apparent lack of particularity, the widespread seizures of evidence out side the scope of the warrant, and the search of the computer well beyond the time permitted by Rule 41 without further Judicial authorization underscore this assertion. Exclusion remains the appropriate remedy in several circumstances, including (1) where the magistrate is misled by information in an

affidavit that the affiant knew was false or would have known was false except for a reckless disregard for the truth, or (2) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The Defendant has asserted by way of attached Affidavit a factual basis to support a conclusion the Affidavits sworn in support of the warrant application are all tainted by a variety of <u>Franks</u> violations

CONCLUSION

     For all of the above reasons The Defendant is entitled to the relief requested an to an evidentiary hearing to resolve all disputed issues of fact.

                          THE DEFENDANT

                          <u>BY:/s/ Vincent A. Bongiorni, Esq.</u>
                          95 State Street, Suite 309
                          Springfield, MA. 01103
                          (413) 737-1489
                          BBO#049040