UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs.        ) | NO.  04-30034-MAP |
| ) | |
| MICHAEL CROOKER     ) | |

## DECLARATION OF MICHAEL CROOKER IN SUPPORT OF MOTION TO DISMISS INDICTMENT DUE TO THE UNFORESEEABLY EXPANSIVE INTERPRETATION DOCTRINE

I, Michael Crooker, state as follows:

1. I have studied law since 1973. I have run law libraries, done contract work for attorneys, got people out of prison, been employed full-time in a law office, and was involved in at least 300 lawsuits. There are 20 to 30 published cases under my name in the Federal Reporter and Federal Supplement.

2. I have studied firearms' law since 1978. I have authored articles on federal firearms law that were published and copyrighted which are still being sold on the Internet, by mail order, and at gun shows.

3. I have been subject to numerous firearms prosecutions since 1972. In 1991 I became the defendant in a federal firearms prosecution that exposed me to a mandatory 15 years to life penalty under 18 U.S.C. §924(e). While I did not receive that penalty, due to a plea agreement to lesser charges, since that time I have taken extreme precautions to avoid becoming subject to another such prosecution.

4. These include acquiring and possessing only those guns that are exempted from Gun Control Act, specifically, airguns and antiques. Since the 1990's I have hunted and target-shooted only with antique firearms and airguns. I was licensed in Massachusetts to hunt with antique firearms in the 2000's.

5. The precautions also have been to thoroughly research the legality of whatever gun-related item I planned to possess. I did this by reading statues, court cases, administrative rulings and regulations, articles, periodicals, and by contact with State and Federal agencies, local police departments, and authors of firearm law publications.

6. In 2001 I began to collect and use airguns known as PC guns, or Precharged Pneumatics. They are notoriously loud.

7. Sometimes I would shoot them in my father's cellar where he has a shooting range. Also, I would shoot in his backyard and even in my own apartment.

8. I discovered that there were readily available sound moderators, A.K.A. silencers, made specifically for airguns. They are sold at websites and in Internet classifieds. My nephew has informed me that when he was a paintball gun enthusiast they sold paintball gun silencers over the counter at Point Blank Paint Ball, Inc. in West Springfield.

9. Before acquiring an airgun sound moderator I did thorough research to determine if they were legal to possess, that is, exempted from the term "firearm silencer" or not considered a firearm silencer.

10. I looked up the federal firearm silencer definition at 18 U.S.C. §921(a)(24) and discovered that the only silencers that were illegal were "firearm silencers" which were defined as "devices for silencing a firearm." I reasonably and logically determined that "for silencing" means the purpose with which one intends to use something. It was clear to me that "device for silencing a firearm" meant an object which one intended to use to diminish the sound of a firearm, and not a device for quieting airguns or paintball guns.

11. I used my Sony Laptop and did queries of search engines and airgun forums using the terms "silencer" and "airgun silencer." I looked up numerous articles and monitored several airgun forums.

12. I learned that the subject of airgun silencers was very controversial. Part of the controversy was in appearance. While silencers in general may be considered neighborly courtesy in parts of Europe, in this country they are immediately considered Mafia or terrorist tools. The other part of the controversy was in legality. About half of the people who posted to forums on the subject were of the opinion that airgun silencers were legal because they are built differently from firearm silencers and they are not designed or intended for silencing firearms. The other half of the people who posted were of the opinion that airgun silencers were in a "grey area" and possibly legal. These opinions were all traceable to the ATF who discovered the use of airgun silencers and opined that they were all illegal because the ones they had tested were capable of also being used on real firearms.

13. I know that in an effort to expand their jurisdiction over persons and articles beyond what has been delegated to them, th ATF has a history of advancing exaggerated interpretations regarding the plain English words of regulations and statutes, particularly with regard to their attempted use of the word "capable."

14. I have been involved in litigation with ATF in the 1990's in which they made classification decisions with respect to antique and obsolete ammunition that they have no jurisdiction over. They ruled that the term "designed for use" in Title 27, C.F.R.§178.11 really means "capable of being used" in order to assert jurisdiction over the nonregulated antique ammunition.

15. I know that "designed for use" does not mean "capable of being used" anymore that "device for silencing" means "device capable of silencing." I know from my legal training and my research that Congress has in fact used the term "capable" in the federal gun law definitions elsewhere and if they wanted that definer placed into these sections they would have inserted it.

16. I went to the WNEC Law Library and looked up every silencer case I could find. I could not find a single case where a Federal Court had ruled that "device for silencing a firearm" means "device capable of silencing a firearm." I found one case, the <u>Syverson</u> case, that said just the opposite, that is, that capability is not one of the salient features of firearm silencers.

17. I purchased a book on Massachusetts and Federal Gun Law. The author is the Lee, Massachusetts Police Chief. I searched the book for anything related to airguns and silencers.

18. I corresponded several times with the Lee, Massachusetts Police Chief author regarding antique firearms, ammunition for antique firearms, airguns, and airgun silencers. He opined that airgun silencers were legal.

19. I posted the attached Exhibit "A" to the Internet, titled "Federal Law Definition of a Silencer," sometime prior to July 27, 2001. I challenged all of the readers to prove me wrong or show me just one case where an airgun silencer was prosecuted as a firearm silencer. One of the other forum users was an attorney.

20. No one could demonstrate the existence of even one federal prosecution for an airgun silencer. Also, no one could dispute "Federal Law Definition of a Silencer" except to say that the Government can do whatever it wants and no one wants to volunteer to be a test case.

21. After all of the above research and consultations, I was of the opinion that it was legal for me to have an airgun silencer as long as it was not used or intended to be used with a firearm.

22. The airgun device that I possessed from 2001 to 2004, which is the subject of this case, was never hidden away or "stashed." I believed, and still believe, that it is legal and I freely showed it to my visitors at my residence. If I had thought it was illegal, I would not have owned it, or at the very least, stashed it away from my residence.

23. My possession of this airgun device was in reasonable reliance on the fact that no one had ever been prosecuted for an airgun silencer as a firearm silencer, and no reported court case had ever specifically held that the term "device for silencing a firearm" meant "device capable of silencing a firearm."

24. Therefore a decision by this court in this case that "device for silencing a firearm" really

means "device capable of silencing a firearm" is a complete break with prior precedent and a new and novel judicial construction that constitutes the unforeseeable and retroactive judicial expansion of narrow and precise statutory language.

Executed this 9th day of February 2006. 28 U.S.C. §1746. I declare that the foregoing is true and correct.

/s/ Michael Crooker