UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA** )
                             )
              v.             ) CR NO. 04-30034-MAP
                             )
**MICHAEL ALAN CROOKER**     )

MEMORANDUM RE: DEFENDANT'S
MOTION TO SUPPRESS
(Docket No. 47)

February 21, 2006

PONSOR, D.J.

I. INTRODUCTION

On January 20, 2006, the court issued a brevis ruling, denying Defendant's motion to suppress the fruits of a search conducted on June 14, 2004 of a mail parcel placed in the mail by Defendant. This memorandum will set forth the court's reasoning.

II. PROCEDURAL AND FACTUAL BACKGROUND

Defendant's Motion to Suppress was filed on July 12, 2005. The court took evidence on the motion on August 23, September 19, September 27, and October 25, 2005. Further motions and memoranda followed the hearings, and on January 20, 2006 the court denied the Motion to Suppress.

Based on the evidence offered at the four days of hearings, the court finds the following.

In April of 2004 Defendant was in the business of selling chemicals through the internet. A potential customer from Wisconsin sent him an e-mail asking for a complete list of chemicals, inquiring whether they came in the manufacturer's bottles or were re-packaged, and whether Defendant combined shipping costs on multiple orders. Defendant responded with an e-mail that stated:

> Most are repackaged. In fact, most come that way to me. Of course I combine shipping costs and I don't fart around with regulations either. I usually just send them Parcel Post (even things like nitrict (sic) acid that I just sold.)

Defendant's e-mail alarmed the customer so much that he reported it to the Milwaukee field office of the Postal Inspection Service. On April 21, 2004, the Wisconsin field office passed the message on to Postal Inspector Brian Dailey, working in Springfield, Massachusetts.

Because of the press of other work, Dailey did not examine the communication until June 1, 2004. Defendant's name immediately raised a red flag since Defendant was, in the words of Inspector Dailey, "well known" in Western

Massachusetts law enforcement circles. Inspector Dailey knew that Defendant had been involved in mailing firearms and that there was evidence that he might possess ricin, a highly toxic substance.

Restrictions govern mailing certain potentially dangerous chemicals, including nitric acid, as well as hydrochloric acid, another chemical listed by Defendant for sale. Both are considered non-mailable, hazardous substances.

On June 2, 2004, Inspector Dailey went to the Post Office in Feeding Hills, Massachusetts and spoke to the Postmaster, Maureen Price.

Price testified that Defendant had been visiting her Post Office approximately once per week, regularly mailing padded envelopes that weighed less than thirteen ounces. Dailey asked Price to hold any package that Defendant brought in for mailing and to notify him.

Five days later, on June 7, 2004, at approximately 1:00 p.m., Defendant arrived at the Feeding Hills Post Office with a package that was significantly different from the others he had mailed. It weighed seventeen to eighteen pounds and was twenty-seven inches in length, twelve inches in width, and

fourteen inches in depth. The parcel was being mailed to an individual named Mike Paulus in Celina, Ohio. When asked whether the package contained any hazardous materials, Defendant replied that it did not. It contained, he said, metal parts.

As part of the process for receiving the package for mailing, Ms. Price explained to Defendant his mailing options, including: Express Mail, which is guaranteed overnight; Priority Mail, which would require an estimated two to three days; and Parcel Post, which would carry an estimated delivery time of four to ten days.[1]

The evidence at the hearings established that First Class, Priority, and Express Mail packages are sealed under postal regulations and cannot be inspected without a warrant. Postal regulations state that Parcel Post packages, however, can be opened for any reason without a warrant.

After selecting Parcel Post, the slowest and least protected mode of mailing, and insuring the package, Defendant

---

[1] Defense counsel pointed out that the Post Office's web site referred to an estimated delivery time for Parcel Post of four days. Postmaster Price agreed that a four to five day time frame for delivery to Ohio would not be unreasonable, although not guaranteed.

paid and departed. In accordance with the prior request, Postmaster Price set the package aside and notified Dailey.

Postal Inspector Dailey retrieved Defendant's parcel from the Feeding Hills Post Office on Tuesday, June 8, 2004 and brought it back to his office. On June 9, 2004 Dailey had conversations with the U. S. Attorney's office and the Postal Service legal department. He also attempted unsuccessfully to locate a trained canine that might detect the presence of hazardous substances within the package.

On June 10, 2004, Inspector Dailey x-rayed the package and concluded that it contained some type of firearm. The x-ray revealed a trigger, barrel, and stock. Also on June 10, 2004, Dailey inquired with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") whether either Defendant or the addressee, Paulus, waw authorized to mail or receive firearms. ATF Special Agent Patrick Burns confirmed that neither party was authorized to do this. After reviewing Defendant's criminal history, Dailey determined that Defendant was a convicted felon and, as such, was not permitted to possess or transport firearms.

On Friday, June 11, Dailey did no work on this case; the

day was set aside as a holiday honoring former President Ronald Reagan. On Saturday, June 12, Dailey drafted an affidavit in support of a search warrant, which was submitted to the court on Monday, June 14. The search warrant was approved that day, and the package was opened.

Inspection of the contents revealed that it contained parts of a large caliber air rifle, as well as a silencer capable of muffling both the sound of an air rifle and of an ordinary .22 caliber firearm. Based upon this seizure, Defendant stands charged with transporting a firearm after being convicted of a felony.[2]

### III. DISCUSSION

In <u>United States v. Van Leeuwen</u>, 397 U.S. 249 (1970), the court held that the Fourth Amendment does not prohibit law enforcement officers who possess reasonable suspicion that a

---

[2] 18 U.S.C. § 921(a)(3) includes within the definition of firearm "any firearm, muffler or firearm silencer." The same section defines firearm as "any weapon . . . which will . . . expel a projectile by the action of an explosive . . . ." An air rifle, by this definition, does not constitute a firearm. Thus, Defendant has only been charged with transporting a firearm silencer. Defendant's argument that he cannot be found guilty on the government's theory because, even though the silencer will operate to muffle the sound of a firearm, it was only <u>designed</u> to muffle the sound of an air rifle has been addressed in a separate memorandum.

piece of First class mail contains contraband from holding the mail for a reasonable period of time (in that case, twenty-nine hours) to permit investigation and submission of an application for a warrant. Significantly, the Van Leeuwen decision emphasized that the "type of mailing" involved was First Class, making it "not subject to discretionary inspection." Id. at 250.

It might be argued in this case that Plaintiff's Motion to Suppress stumbles at this preliminary stage of analysis. The uncontroverted testimony during the suppression hearing was that Parcel Post, the humblest mode of postal delivery, explicitly permits discretionary opening and inspection by postal employees. Given this, it is doubtful that Defendant retained any expectation of privacy in the mailing; Fourth Amendment interests would not come into play.

It is not necessary for the court to rest its ruling denying the Motion to Suppress on this perhaps over-technical approach. Even if the mailing had been First Class or Federal Express, the Postal Inspector's conduct, though at the outer limits, did not exceed the Constitutional boundary. The following considerations make this clear.

As a threshold matter, reasonable suspicion, mainly from Defendant's own mouth, provided support for preliminary detention of Defendant's package. Evidence strongly suggested that Defendant was in the business of transmitting through the mails non-mailable hazardous substances. His own product listings and e-mail identified hydrochloric and nitric acids. Moreover, his own internet communication confirmed that he did not "fart around" with applicable regulations. The package detained by the Feeding Hills Postmaster was large and heavy. It would have been irresponsible for any Postal Inspector to ignore such an obvious potential hazard.

Defendant's strongest argument attacks the length of time, seven days, during which the package was detained before a warrant issued. The seminal case in the First Circuit addressing the reasonableness of delay is <u>United States v. LaFrance</u>, 879 F.2d 1 (1st Cir. 1989). In <u>LaFrance</u>, the Court of Appeals reversed a District Court judge for suppressing evidence obtained from a package that had been held approximately 135 minutes after the deadline had passed for its delivery via overnight Federal Express service. In weighing the propriety of the District Judge's ruling, Judge

Selya emphasized that "reasonableness remains the focus of judicial inquiry." Id. at 6.

> We must ask whether the detention, taken as a whole, or any step therein, was unreasonable. In doing so we must be careful of the citizen's rights, and equally careful that we do not hold law enforcement to a standard akin to perfection.

Id.

A number of factors demonstrate compellingly that, in the circumstances of this case, the officer's conduct was within the outer limit of reasonableness.

First, the package was not held beyond the date that the recipient could fairly have expected to receive it. Parcel Post, according to postal notification, requires four to ten days for delivery. The package in this case was on its way within seven days. No evidence suggests that the recipient's "contract-based right to possess the package" was violated. Id. at 7.

Second, Postal Inspector Dailey moved with reasonable promptness. It was proper for him, and demonstrated scrupulousness with regard to the sender's rights, that he consulted with legal authorities at the Post Office and the U.S. Attorney's Office in determining what approach to take to

9

the package. In addition, he promptly attempted to obtain a canine to attempt to detect the presence of contraband. His efforts to assemble the affidavit in support of the search warrant were interrupted by a weekend and national holiday, circumstances which other cases have noted are relevant in making the reasonableness analysis. See, e.g., United States v. Gill, 280 F.3d 923, 929 (9th Cir. 2002) (noting the significance of an intervening weekend).

Defendant emphasizes the case of United States v. Dass, 849 F.2d 414 (9th Cir. 1980), which found delays of seven to twenty-three days in seeking warrants after removing packages from the mail to be excessive. The decision attracted a forceful dissent and has been undercut by subsequent Ninth Circuit decisional law. In Gill, for example, the Ninth Circuit found a six-day delay involving a package sent by Express Mail safely within the Constitutional boundary. The court noted that "it is difficult to objectively view this investigation as leisurely" since "[t]he postal officers tracked down various leads, confirmed motor vehicle, utility, and criminal records, verified addresses and phone numbers, and contacted the postal worker who delivered mail to the

address to which the package was being sent." 280 F.3d at 929. The court also found significant the fact that the Magistrate Judge was not available to issue the search warrant on the Monday after the weekend, but could only be accessed on the Tuesday.

As LaFrance teaches, the court's analysis must maintain its focus on reasonableness and not on what the law enforcement officer might conceivably have been able to do. (As in Gill, the Postal Inspector properly spent time pursuing various investigative leads.)

Taken as a whole, the court can find no lack of diligence on the part of the officers. As in LaFrance, this court can perceive, in hindsight, that Postal Inspector Dailey "may not have acted in the most expeditious manner." 879 F.2d at 8. Nevertheless, the record fairly reflects his "steady, earnest, energetic, and attentive application and effort." Id.

Having said all this, it should be noted that the length of detention of the package prior to issuance of the warrant probably approached the boundary of the Constitutional limit. No cases cited by the government approve delay extending as long as the one in this case, although some approach it. See

11

United States v. Ganser, 315 F.3d 839, 842-44 (7th Cir. 2003)(one-day delay for First Class letter prior to obtaining a canine sniff, plus four additional days in obtaining a warrant not unreasonable); United States v. Aldaz, 921 F.2d 227, 229-31 (9th Cir. 1990) (five days not unreasonable). The government is assisted in this case by the fact that Defendant chose to send his package Parcel Post, but it is admonished to take note that very little delay beyond what occurred here might be sufficient to trigger suppression.[3]

## IV. CONCLUSION

The reasonable suspicion generated by Defendant's own communications justified, and probably required, intervention by the Postal Inspector to detain the package. Thereafter, he proceeded with reasonable diligence to make an appropriate investigation, safeguarding the potential rights of the sender and recipient. The investigation promptly produced information generating probable cause for a search, and a warrant was obtained. All this was accomplished within the

---

[3] Of course, any ruling suppressing the evidence in this case would have to directly confront the question of whether a reasonable expectation of privacy exists in a package sent via Parcel Post.

four to ten-day period described by the Post Office as the average delivery time for a Parcel Post package. Although, as the court has now observed, the period of delay approached the outer limits of Constitutional legitimacy, it did not exceed them. For these reasons, Defendant's Motion to Suppress has been denied.

_____
MICHAEL A. PONSOR
United States District Judge