UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR NO. 04-30034-MAP |
| | ) |
| MICHAEL ALAN CROOKER | ) |

MEMORANDUM RE: DEFENDANT'S
MOTION TO RECONSIDER/FOR CLARIFICATION
OF DEFENDANT'S MOTION TO DISMISS
(Docket No. 56)

February 23, 2006

PONSOR, D.J.

I. INTRODUCTION

Defendant has been indicted for knowingly causing a firearm to travel in interstate commerce after having been convicted of a felony, in violation of 18 U.S.C. § 922(g). The court denied a threshold motion to dismiss the indictment, and on September 21, 2005, Defendant filed a motion to reconsider this ruling or for clarification. In a Memorandum and Order dated January 20, 2006, the court denied the motion, explaining that it would issue a second memorandum setting forth its reasons in more detail. This memorandum is intended to do that.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The basic facts underlying Defendant's motion may be summarized as follows.[1] Federal agents intercepted a package mailed by Defendant that at first appeared to contain some sort of rifle or handgun. Defendant is a felon and is therefore disqualified from transporting or even possessing any such object. When the agents opened the parcel pursuant to a warrant, they discovered that it contained parts of a large caliber airgun, along with a cylindrical device threaded to screw on to the end of the airgun and muffle its report.

18 U.S.C. § 921(a)(3) defines "firearm" as "any weapon . . . which will . . . expel a projectile by the action of an explosive." By this definition, an air rifle, which does not employ an explosive, does not constitute a firearm.

Section 921(a)(3) also includes within its definition of a firearm, "any firearm muffler or firearm silencer." 18 U.S.C. § 921(a)(24), in turn, defines "firearm silencer" as

any device for silencing, muffling, or diminishing

---

[1] In the absence of any trial or other evidentiary hearing, it is a little unusual to refer to underlying "facts." However, much of the basic underpinning of the motion appears to be undisputed, so the court will use this term loosely.

2

the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

In performing their investigation of the contents of Defendant's parcel, law enforcement agents noted, as the court has observed, that the cylindrical device that screwed on to the end of the air rifle had the effect of muffling the sound of the air rifle. They extended their investigation, however, and also attached the cylindrical device to the barrel of an ordinary .22 caliber firearm. Again, the cylindrical device contained in the package had the effect of substantially reducing the sound of the firearm's discharge. Based upon this investigation, Defendant was charged with transporting a firearm.

Defendant initially moved for dismissal, arguing that as a matter of law and fact the cylindrical device found in the package sent by him was not a "firearm silencer" because it was only <u>intended</u> to silence the report of an air rifle (<u>i.e.</u>, a non-firearm). Since the indictment on its face charged a crime, and the factual record was yet to be developed, the court summarily denied this Motion to Dismiss on January 31,

2005.

Defendant has now asked the court to reconsider this ruling, or at least to clarify that at trial the court will instruct the jury that a firearm silencer "means a device that is designed or intended to be used with a portable, powder-burning firearm." (Dkt. No. 82. Pl.'s Proposed Jury Instructions on "Silencer.")

Ordinarily, the court would not at this stage provide a preview of its jury instructions. However, in view of the request for clarification, it is appropriate to note that it is highly unlikely that the court will instruct the jury in the manner Defendant requests. As the government's memorandum points out, every Circuit Court of Appeals that has faced the issue has approved an instruction regarding possession or transportation of a firearm silencer that contained two elements: (1) that the device that was possessed or transported by the felon had the characteristics that made it a silencer, and (2) that the defendant at the time he possessed or transported the device knew that it had those characteristics. See United States v. Kavoukian, 354 F.3d 117, 120 (2d Cir. 2003); United States v. Sanders, 240 F.3d

1279, 1281 (10th Cir. 2001); <u>United States v. Ruiz</u>, 253 F.3d 634, 638-39 (11th Cir. 2001); <u>United States v. Jones</u>, 222 F.3d 349, 352 (7th Cir. 2000) (involving a rifle, not a silencer, but requiring only that the defendant knew of the characteristics that brought the device he possessed within the scope of the statute); <u>United States v. Hall</u>, 171 F.3d 1133, 1151 (8th Cir. 1999); <u>United States v. Thompson</u>, 82 F.3d 849, 854 (9th Cir. 1996). All these cases are outgrowths of the Supreme Court's seminal case of <u>Staples v. United States</u>, 511 U.S. 600 (1994), in which the Court addressed the question of possession of a machine gun.

Based on these authorities, the issue for the jury will not be what the design or intent behind the device was, but whether Defendant knew that the device had the capacity to muffle the sound of a firearm. It is worth noting that, given the facts of the case -- <u>i.e.</u> that the device was being mailed along with a non-firearm -- this evidentiary burden may not be a light one.

Defendant offers essentially two arguments in support of his claim that the focus of the jury's attention should be on what the device was designed or intended to do, rather than on

what it could do.

First, he cites <u>United States v. Syverson</u>, 90 F.3d 227 (7th Cir. 1996), in which the Court of Appeals stated that "the government had to prove that the [alleged silencer] was made for the purpose of silencing a firearm." <u>Id.</u> at 232.

The problem with this argument is that the quoted passage must be seen within the context of the particular issue being addressed. In <u>Syverson</u>, the defendant was found with a homemade cylinder that the investigators testified could be used to reduce the report of a pistol very slightly, from 151 decibels to 144.5 decibels, a degree of sound diminution almost imperceptible to a person with average hearing. <u>Id.</u> at 229. The defendant argued that the government had the obligation, not only to show that he possessed a device that had the features of a firearm silencer, but that he himself actually knew that the cylinder did in fact reduce the report of a firearm. In response to this argument, the Seventh Circuit held that "the statute does not limit the definition of a silencer to 'a device <u>that</u> silences, muffles, or diminishes.'" <u>Id.</u> at 232 (emphasis in original). The court concluded that Congress also intended to regulate "all devices

purporting to serve as silencers, not just those devices that actually work to silence firearms. Therefore, a device can be a silencer for the purposes of § 921(a)(24) even if it does not actually silence." Id.

Nothing in Syverson would place upon the government the burden of proving in a prosecution for possession or transportation of a silencer that the device charged not only had the capacity to reduce the report of a firearm, but also was intended or designed to reduce the report of a firearm and that Defendant knew this. All that the government must prove, as the court has already said, is that the device possessed the characteristics of a silencer -- that is, it could muffle the sound of a firearm -- and that Defendant knew this fact when he possessed or transported the device.

It is not hard to imagine the chaos that would result if the court placed upon the government the obligation to prove design or intent. The question of whose "intent" was relevant would bedevil any criminal proceeding. Moreover, in this circumstance, a felon transporting a device that he knew would muffle the sound of a firearm might escape liability simply by pointing to the fact that the original designer, manufacturer,

distributor or seller of the device never intended it actually to be used with a firearm. Congress could hardly have intended this result.

Second, Defendant argues that if the court requires the government only to show that Defendant possessed the device knowing that it had the capacity to muffle the report of a firearm, then a felon might be prosecuted for possessing a sack of potatoes or a pillow, both of which have that capacity. But this kind of <u>reductio ad absurdum</u> could be used in many contexts where the law presumes a modicum of good sense. This court, for example, regularly prohibits persons on supervised release from possessing any dangerous weapon. In the wrong hands, and in certain contexts, a ballpoint pen or even a paperclip can be a dangerous weapon. The device in question here was a cylindrical piece of metal that screwed on to the end of a firearm and, according to the government, had the effect of muffling that firearm. Just as no reported case reveals that a person on supervised release has been violated for possessing a ballpoint pen, no felon need be concerned about being prosecuted for possessing a pillow or a bag of potatoes. The question before the jury when this case goes to

trial will be whether the defendant knew that <u>this</u> <u>particular</u> <u>device</u> had the capacity to muffle the report of a firearm when he transported it. If he had this knowledge, the fact that the particular device may have been intended by some party -- its designer, manufacturer distributor or seller -- to be used primarily or solely with an airgun will be irrelevant.

### III. CONCLUSION

For the foregoing reasons, the court has DENIED Defendant's Motion to Reconsider or for Clarification.

*/s/ Michael A. Ponsor*
MICHAEL A. PONSOR
United States District Judge