UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs.                                                    ) | NO.   04-30034-MAP |
| ) | |
| MICHAEL CROOKER              ) | |

**MOTION TO RECONSIDER DECISION ON MOTION TO SUPPRESS AND REQUEST FOR ORAL ARGUMENT**

  While the defendant takes issue with several factual and legal conclusions in the Memorandum re: defendant's Motion to Suppress, dated February 21, 2006, he requests reconsideration and an opportunity for oral argument with respect to:

    1) The discrepancy between the testimony and the Court's decision of the estimated delivery time of Parcel Post, and its effect on the decision;

    2) The failure to judge reasonable diligence as applied to the pre-probable cause portion of the detention as opposed to the detention as a whole;

    3) The failure to address the defendant's claims that the search of the zippered pocket of the air rifle's guncase ans the seizure of the cylindrical device were outside the scope of the search warrant and occurred after the legal execution of the warrant.

ESTIMATED DELIVERY TIME

  Pages 4 and 9 of the Memorandum Decision incorrectly state that the delivery time for Parcel Post is 4 to 10 days and the package was "on its way within seven days." Maureen Price initially testified that Parcel Post <u>generally</u> takes 4 to10 days, but on cross-examination she <u>corrected</u> that testimony to 4 days with a policy of adding on 1 day so that the total is 4 to 5 days. She <u>clarified</u> that the 10 day mark, and Harold Steven's earlier testimony of a 14 day mark, referred to deliveries to the West Coast, Hawaii, and Alaska, not to Ohio. Then, after Maureen Price testified, the defendant took the stand and testified of sending Parcel Post packages to Ohio and Pennsylvania in 3 days. Therefore, the correct and undisputable calculation is 3 to 5 days, not 4 to 10, meaning the package was not "on its way" within the time of the " contract based right to

possess the package." (And it was not on its way within 7 days; it was 7 ½ days).

This discrepancy between the testimony and the Memorandum Decision should alter the final result, which as it stands now, is so borderline that the court remarked four times how the duration of detention approached the very outer limits of Constitutional legitimacy (that no other Court has ever allowed).

### DILIGENCE AND THE PRE-PROBABLE CAUSE PORTION OF THE DETENTION

Crooker also takes issue with the Court's judgement that "As in Gill, the Postal Inspector properly spent time pursuing various investigatory leads," thus reflecting his "steady, earnest, energetic, and attentive application and effort." (First Circuit definition of "diligence") Pursuance of leads was so lacking that Ebay wasn't even checked, which would have revealed the chemical sales business closed over a month earlier. An examination of Inspector Dailey's diary shows definitively that other than calling attorneys and superiors about the matter that he did exactly the following:

    Monday, June 7, 2004 - - - received call of parcel's detention and made one call seeking canine

    Tuesday, June 8, 2004 - - - picked up parcel

    Wednesday, June 9, 2004 - - - did nothing

    Thursday, June 10, 2004 - - - x-rayed parcel, called ATF

    Friday, June 11, 2004 - - - did nothing

    Saturday, June 12, 2004 - - - worked on search warrant application

    Sunday, June 13, 2004 - - - did nothing

    Monday, June 14, 2004 - - - executed search warrant

There is no comparison to the diligence exhibited in Gill. This was intermittent and lethargic for 7 ½ days, not "steady, earnest, and energetic."

Also, the first 3 days of the parcel detention were upon mere "reasonable suspicion" while the following 4 ½ days were upon "probable cause." For this reason these first 3 days must

be scrutinized more closely than the following 4 ½ days as United States v. LaFrance, 879 F. 2d 1, 6 (1st Cir. 1989) states, "We must ask whether the detention, taken as a whole, or any step therein, was unreasonable."

The Court has only looked to the detention as a whole and compared it to the detentions as a whole in other cases. If the Court looks at the "reasonable suspicion" portion of the detention, a different, more onerous, picture emerges. (The case of United States v. Aldaz, 921 F. 2d 227 (9th Cir. 1990) takes this step-by-step analysis.)

Some of these comparison cases have been miscited by the Government and the Court has adopted the miscitations without verification. United States v. Gill, 280 F. 3d 923 (9th Cir. 2002) had a total duration of detention of 5 ½ days, not 6 days (late Thursday afternoon to Wednesday morning). United States v. Ganser, 315 F. 3d 839 (7th Cir. 2003) was a total duration of 4 days, not 5 days, and 2 of those 4 days were attributable to the need to make a controlled mail delivery as part of the case. And in United States v. Aldaz, *supra*, the Government's claim of a total duration of 5 days may be technically correct, but they failed to reveal that 3 days of those 5 days were caused by the slowness of Alaskan "bush mail" from the remote interior that was considered not countable against the Government.

The "reasonable suspicion" portion of the detention in Ganser was 1 day; in Aldaz it was more than 1 day, but less than 2 days after the 3 days of noncountable "bush mail" is deducted; and in Gill, it is unclear from the decision when the probable cause barrier was breached. In United States v. Van Leeuwen, 90 S. Ct. 1029, 397 U.S. 249 (1970) case, the reasonable suspicion portion is said to be 1 ½ hours. In LaFrance it was 5 ½ hours.

Applying the diligence test to the 3 days of "reasonable suspicion" detention in this case reveals conduct woefully short of "steady, earnest, and energetic." The Postal Inspector, besides consulting with superiors and lawyers, did exactly the following: received a call about and picked up the parcel, and made one phone call seeking a canine sniff. The call about the canine sniff was on Monday, June 7, 2004 (not June 9, 2004 as the Court's decision mistakenly states). Tuesday, June 8, 2004 he picked up the parcel and Wednesday, June 9, 2004 did nothing. The defendant fails to see the "various investigative leads" that were being pursued in this 3 day period in the Court's Gill comparison. In Gill they:

    1) Tracked down various unspecified leads;

      2) Confirmed motor vehicle records;

      3) Confirmed utility records;

      4) Checked criminal records;

      5) Verified addresses;

      6) Verified telephone numbers;

      7) Contacted the addressee's letter carrier.

In the present case they made a single phone call in a three-business day period to determine the feasibility of a canine sniff. While a telephone call to a canine handler may be "steady, earnest, and energetic" in the time it takes to make that call, it is quite an unreasonable stretch to say that it constitutes "steady, earnest, and energetic" behavior over a 3 day period, when personal property is being detained on less than probable cause.

It is simply not reasonable to detain a person's property on mere suspicion, short of probable cause, for days on end. Does the owner not have a right to question why the Government did not seek x-ray equipment on Monday, June 7, 2004, Tuesday, June 8, 2004, or Wednesday, June 9, 2004? There was no justification, excuse, or explanation given in this case why the x-ray did not occur until the fourth day.

Therefore, whatever may be said of the 7 ½ days detention as a whole and whether it is "reasonable" or "steady, earnest, and energetic" when a law enforcement officer takes federal holidays and Sundays off while detaining property, the same cannot also be said of the 3 business days pre-probable cause detention. Under the LaFrance decision, the defendant has the right to seek judgement as to each portion of the detention as well as to the detention as a whole. This has not been done and the defendant asserts that once it is judged in such manner, the pre-probable cause detention period will not pass Constitutional muster or satisfy the diligence test of "steady, earnest, and energetic" law enforcement behavior.

Respecting the Court's reservations about Fourth Amendment privacy interests on page 7 and page 12, n. 3, the defendant again reminds the Court that independent of privacy interests, he retains a possessory interest protected by the Fourth Amendment and even the Postal Regulations admitted into evidence require search warrants for seizures.

SEARCH OF ZIPPERED POCKET AND SEIZURE OF CYLINDRICAL DEVICE

The search of the zippered pocket and seizure of the cylinder has not been addressed though it was argued in defendant's Supplemental Memorandum on pages 7 and 8 ( Docket Item 63). Also, the issue as to whether these occurred after the legal conclusion of the execution of the search warrant was orally argued thoroughly by counsel on November 7, 2005.

Besides these arguments that have not been addressed, the seizure of the unknown, and then untested cylindrical device, is now further compounded by recent ATF Ruling 2005-4 that approves and clarifies that certain airgun silencers are not considered to be "firearm silencers" even though being capable of such.

REQUEST FOR ORAL ARGUMENT

Defendant requests the opportunity to orally argue these important matters in this very close case.

Respectfully submitted,

DEFENDANT

BY: /s/ Vincent A. Bongiorni
Vincent A. Bongiorni
95 State Street- Suite #309
Springfield, MA 01103
(413) 732-0222
BBO #049040

CERTIFICATE OF SERVICE

I, Vincent A. Bongiorni, Esq., do hereby certify that I have served a copy of the foregoing to Assistant United States Attorney, United States District Court, 1550 Main Street, Springfield, MA 01103, this 7 day of March 2006.

/s/ Vincent A. Bongiorni