UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
          v.             )     Criminal No. 04-30034-MAP
                         )
MICHAEL CROOKER,         )
          Defendant.     )

Government's Opposition to Additional Motions

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, submits this memorandum and the accompanying affidavit of Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Patrick Burns in opposition to Michael Crooker's additional motions.

I.    Omnibus Motion to Suppress

Mr. Crooker moves to suppress categories of evidence. All of the challenged evidence was obtained lawfully and therefore, the omnibus motion should be denied.

A.    Recorded Oral Telephone Communications
      from the Wyatt Detention Center

Mr. Crooker seeks to suppress recordings of conversations he had with third parties outside of the Wyatt Detention Center on the ground that the recordings were made in violation of the federal wiretap statute, 18 U.S.C. § 2510 et seq.

The government will prove at an evidentiary hearing that these conversations were recorded pursuant to the detention center's regular procedures and with Mr. Crooker's consent. Therefore, they did not violate the federal wiretap statute. See 18 U.S.C. § 2511(2)(c).

At the beginning of each relevant telephone call made by Mr. Crooker from the detention facility, a recording was played over the detention facility's phone system, which stated:

> This call may be recorded or monitored.  I have a collect call from: [Mike], an inmate at Donald W. Wyatt Detention Facility. . . . To accept dial zero and hold.  To refuse dial five and hang up.  Thank you.

Thereafter, approximately every six minutes a recording was played stating, "This call may be recorded or monitored."

In <u>United States v. Footman</u>, 215 F.3d 145, 154-55 (1st Cir. 2000), the First Circuit held that a prisoner's consent to having his phone calls recorded is sufficient to constitute consent under the federal wiretap statute.

> Prison inmates have few expectations of privacy in their communications. . . .  There is no reason to think that Congress would not have included within the meaning of consent a prison inmate's express acceptance of having his calls recorded as a condition of using the telephone.  This is particularly so given the "deference and flexibility" federal courts afford state officials in managing prisons. . . .
>
> Other circuits have reached the same conclusion – that prison inmates in Footman's position have given their consent for the purposes of Title III.  <u>See</u> <u>United States v. Workman</u>, 80 F.3d 688, 692-94 (2d Cir. 1996); <u>United States v. Van Poyck</u>, 77 F.3d 285, 292 (9th Cir. 1996); <u>United States v. Horr</u>, 963 F.2d 1124, 1126 (8th Cir. 1992).  <u>But see</u>, <u>United States v. Daniels</u>, 902 F.2d 1238, 1244-45 (7th Cir. 1990) (expressing reservations about finding Title III's consent requirement satisfied in this context).

<u>Id.</u> at 155.  (Footnotes and some citations omitted).

Since Mr. Crooker consented to having his prison calls recorded, the federal wiretap statute was not violated and this part of the omnibus motion to suppress should be denied.

B.    Comcast E-Mail

Mr. Crooker seeks to suppress the government's seizure, pursuant to a search warrant, of an e-mail from his Comcast internet service provider account.  Mr. Crooker claims that the use of a search warrant to obtain copies of his e-mail is a violation of the federal wiretap statute.[1]

As explained in the affidavits in support of the search warrants that were issued for Mr. Crooker's e-mails, the warrants were issued pursuant to the Stored Wire and Electronic Communications and Transactional Records Access Act ("Stored Communications Act"), 18 U.S.C. §§ 2701 - 2711.  See Steve Jackson Games v. United States Secret Service, 36 F.3d 457, 463 (5th Cir. 1994)(recognizing 18 U.S.C. § 2703's warrant requirement).  Mr. Crooker cites no cases holding that search warrants issued pursuant to Section 2703 are defective.

In essence, Mr. Crooker is asking the Court to make new law and strike down Section 2703 as it applies to his Comcast e-

---

[1]  Mr. Crooker relies upon United States v. Councilman, 418 F.3d 67 (1st Cir. 2005), in which the First Circuit held that the defendant's interception and copying of e-mail messages that were in transit could violate the federal Wiretap Act.  Id. at 79-80. Councilman, does not apply to the search warrants in this case, which were properly obtained under the Stored Communications Act.

3

mails.  Since there is no authority to support such a result, this part of his omnibus motion to suppress should be denied.

    C.   Evidence Seized Pursuant to Police Inventory Policy, Judicially Issued Search Warrants and Consent

       1.   Inventory Search of Mr. Crooker's Automobile

As explained in the accompanying affidavit of ATF Special Agent Patrick Burns (the "Burns Affidavit"), on June 23, 2004, Mr. Crooker was arrested and his automobile was searched by Agawam Police Department Officer Eric Camerlin, pursuant to the Agawam Police Department's "Automobile Custody Inventory Search Procedure."  A copy of the procedure is annexed to the Burns Affidavit as Exhibit A.

According to Officer Camerlin, who will be available to testify at an evidentiary hearing, he was assigned to conduct an inventory of Mr. Crooker's car.  Officer Camerlin's report, which is annexed to the Burns Affidavit as Exhibit B, explains that he suspended the inventory search after he discovered what appeared to be an explosive device in the trunk.

> While checking the contents of the trunk, I came across a white plastic bag which contained a single cardboard tube approx 1ft in length, 3" diameter with what appeared to be a fuse sticking out of the middle. The ends of the tube were sealed with what appeared to be wax.  I informed Lt. Draghetti what I had found and ATF was notified and arranged for removal and disposal of the explosive device.  The inventory of the vehicle was suspended at that time and the area was sealed off.

A copy of Officer Camerlin's "Police Tow Form" listing the contents of Mr. Crooker's car that he inventoried prior to ending

the inventory search is attached to the Burns Affidavit as
Exhibit C.

Special Agent Burns was the ATF agent who was notified by
Lt. Draghetti after Officer Camerlin discovered what appeared to
be an improvised explosive device ("IED") in the trunk of Mr.
Crooker's car.  Special Agent Burns notified ATF Explosives
Enforcement Officer Roy House, who is specially trained in the
handling of explosives, about the IED.  On the same day, Officer
House took custody of the IED and rendered it safe.

Since the inventory search of Mr. Crooker's automobile was
conducted pursuant to the Agawam Police Department's standardized
inventory procedures, the warrantless search was lawful.  See
Colorado v. Bertine, 479 U.S. 367, 371-74 (1987); United States
v. Scott, 270 F.3d 30, 40 (1st Cir. 2001).

2.    Search Warrants for Mr. Crooker's Automobile,
Computer, Video Camera, and Parents' Residence

The issuance and execution of search warrants for Mr.
Crooker's automobile, computer, video camera and his parent's
residence all followed Mr. Crooker's arrest, the inventory search
of his car and the execution of the search warrant on his
apartment.

Mr. Crooker has failed to meet his burden of demonstrating
that: (1) the warrants were defective on their face, (2) the
affidavits in support of the warrants were misleading, (3) the
warrants were overly broad, and (4) the agents allegedly seized

5

more evidence than was authorized by the warrants. In addition, Mr. Crooker has failed to demonstrate that he had a privacy interest in his parents' residence.

The government will prove at an evidentiary hearing that the agents properly applied for and executed the search warrants and that they relied upon the warrants in good faith.

### 3. Consent Search of Mr. Crooker's Abandoned Apartment

Similarly, at an evidentiary hearing the government will prove that the search of Mr. Crooker's former apartment on July 15, 2004, was valid based on the consent of the building owner, Donna Beumier, and the building manager, Marck Nicoli. As of July 15, 2004, Mr. Crooker had been evicted from his former apartment and the locks had been changed by the building management.

## II. Motion for Return of Property

Mr. Crooker's motion for return of property is based largely on his motions to suppress. The motion should be held in abeyance pending resolution of his motions to suppress.

## III. Motion to Dismiss for Selective Prosecution

Mr. Crooker seeks to dismiss the indictment on the grounds of selective prosecution. This motion should be dismissed because he has failed to demonstrate that others similarly situated have not been prosecuted or that the government is prosecuting him based on an improper motive.

6

In United States v. Serafino, 282 F.3d 327, 331 (1st Cir. 2002), the First Circuit explained that the government is presumed to have exercised its prosecutorial responsibilities in good faith.  Id.  As a result, defendants are not even entitled to an evidentiary hearing on a selective prosecution claim unless:

> they first identify facts tending to demonstrate (i) that the government refrained from prosecuting others who were "similarly situated," and (ii) that the reasons for any such discrimination were illegitimate.

Id.  See United States v. Graham, 146 F.3d 6, 8-9 (1st Cir. 1998)(same).

In this case, Mr. Crooker has failed on both fronts.  First, Mr. Crooker has failed to demonstrate that there are others similarly situated to him that have not been prosecuted by the government.  As a general matter, there have been many cases over many years in which the United States has prosecuted individuals for the illegal possession of silencers in violation of 18 U.S.C. § 922(g), the statute with which Mr. Crooker is charged.  See e.g. United States v. Merritt, 361 F.3d 1005 (7th Cir. 2004); United States v. Sacko, 247 F.3rd 21 (1st Cir. 2001); United States v. Rivera, 58 F.3d 600 (11th Cir. 1995); United States v. Bakhtiari, 913 F.2d 1053 (2nd Cir. 1990).

Mr. Crooker's tries to separate himself from these cases by claiming that his particular silencer was to be used only with an

airgun.  But that fact, assuming it to be true, does not take him

out of the general class of defendants who have been prosecuted

under Section 922(g) for the illegal possession of silencers.

Rather, Mr. Crooker's airgun argument merely goes to his defense

that he did not have the requisite guilty knowledge to be

convicted of the charged crime.

Nor has Mr. Crooker identified other specific similarly

situated felons who have possessed airgun silencers that were

capable of silencing firearms who were not prosecuted by the

government.[2]  As a result, his motion and request for an

evidentiary hearing must fail.

Even if Mr. Crooker had identified other similarly situated

individuals who were not prosecuted by the United States, he has

failed to demonstrate that he has been prosecuted for an improper

purpose.  In <u>United States v. Bassford</u>, 812 F.2d 16, (1st Cir.

1987), the First Circuit explained that a defendant must

demonstrate:

> "that the government's discriminatory
> selection of him for prosecution has been
> invidious or in bad faith, i.e., based upon

---

[2]  Because Mr. Crooker has not identified specific
individuals whom he claims were similarly situated to him, the
government is unable to distinguish Mr. Crooker's situation from
that of the other individuals.  The government does not know the
criminal histories, ongoing criminal activity and personal
circumstances of the individuals generally referred to by Mr.
Crooker in his affidavit.  Nor is the government aware of the
kinds of silencers involved in those cases.  All of these factors
and others would be relevant to a prosecution decision.

> such impermissible considerations as race,
> religion, or the desire to prevent his
> exercise of constitutional rights."

Id. at 19, quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974).

In this case, Mr. Crooker was prosecuted because of his extensive criminal record and history of engaging in activity that had the potential to be dangerous to others.  The information provided to the Court in the first affidavit for a search warrant reflected that Mr. Crooker continued to engage in dangerous behavior with a disregard for the safety of others. Mr. Crooker told a potential customer, in substance, that he sent dangerous items like nitric acid in the mail and that he had no concerns for postal regulations.  When he was asked by a postal employee what was contained in the package he was mailing that contained the silencer, Mr. Crooker did not reveal that the package contained an airgun and a silencer.  Instead, he deflected the postal employee's inquiry by indicating merely that they were "metal parts."

Mr. Crooker's litigation history with federal agencies had nothing to do with the decision to prosecute him in this case. To the contrary, Mr. Crooker's proclivity for filing lawsuits would tend to be a deterrent to prosecuting him without sufficient reason.  In this case the government decided that Mr. Crooker's significant criminal history and ongoing criminal behavior warranted his prosecution, in spite of what the government understands will be ongoing litigation for some time.

In light of the Executive Branch's broad discretion in deciding whom to prosecute and the presumption that a prosecution is pursued in good faith, see United States v. Bassford, 812 F.2d at 19, Mr. Crooker should be denied an evidentiary hearing and his motion to dismiss for selective prosecution should be denied.

IV.  Motion to Dismiss Due to the Unforeseeably
     Expansive Interpretation Doctrine

Mr. Crooker seeks dismissal of the indictment under the "unforeseeably expansive interpretation doctrine."  Mr. Crooker claims that he did not have fair warning that, as a convicted felon, his possession of the silencer that he mailed on June 8, 2004, was illegal.  This motion is really just another way to ask the Court to adopt Mr. Crooker's narrow interpretation of the federal silencer statute that suits his defense.

Mr. Crooker relies on the First Circuit's decision in Councilman relating to the unforeseeably expansive interpretation doctrine.  In Councilman, the Court of Appeals rejected the defendant's argument that the Court's interpretation of the statute in question should not apply to him because he did not have fair warning that his conduct was proscribed.  The Councilman court explained the doctrine in the following way.

> Finally, the third branch of the fair warning doctrine "bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." . . .  This doctrine principally "bars 'unforeseeable and

> retroactive judicial expansion of narrow and precise statutory language.'" [United States v.] Hussein, 351 F.3d [9,] 14 [(1st Cir. 2003)](citation omitted); accord [United States v.] Balint, 201 F.3d [928,] 935 [(1st Cir. 2000)](doctrine only applies if judicial interpretations "amount to an unpredictable shift in the law.")

418 F.3d at 84.

This Court's construction of the silencer statute in its earlier ruling is not novel, unforeseeable, expansive or unpredictable. As the Court noted in its February 23, 2006, order, the federal courts of appeals are unanimous in adopting

> an instruction regarding possession or transportation of a firearm silencer that contained two elements: (1) that the device that was possessed or transported by the felon had the characteristics that made it a silencer, and (2) that the defendant knew that it had those characteristics.

February 23, 2006 Order, p. 4. (Citations omitted).

Given that the Court's interpretation of the statute was not unforeseeably expansive, Mr. Crooker's motion to dismiss should be denied.

<u>Conclusion</u>

For the foregoing reasons the defendant's additional motions should be denied.

                    Respectfully submitted,
                    MICHAEL J. SULLIVAN
                    United States Attorney

          by:   /s/ Kevin O'Regan
                    Kevin O'Regan
                    Assistant U.S. Attorney

          Date: March 15, 2006

11

<u>Certificate of Service</u>

March 15, 2006

I certify that on March 15, I caused the foregoing document and the accompanying affidavit of Special Agent Patrick Burns to be electronically delivered to counsel for the defendant, Vincent Bongiorni, Esq, 95 State Street, Springfield, MA 01103.


/s/ Kevin O'Regan
Kevin O'Regan
Assistant U.S. Attorney