UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
)
V. ) CR-04-30034-MAP
)
)
MICHAEL CROOKER )

COUNTERAFFIDAVIT OF MICHAEL CROOKER
REGARDING GUNSHOT RESIDUE TESTING ISSUE

I, Michael Crooker, state as follows:

(1) I have read the Government's Opposition to Motion to Dismiss (regarding refusal to do gunshot residue test) and the Burns Affidavit.

(2) I recall that on the day of my arrest, June 23, 2004, while in the U.S. Marshal's holding cells I inquired as to who would be the AUSA at my arraignment. I was told that it would be Kevin O'Regan.

(3) I was familiar with O'Regan because he had been involved in litigation with me regarding my Motion for Early Termination of Supervised Release. I didn't know what he looked like however.

(4) It is my recollection that the AUSA was the same person at both the June 23, 2004 and June 25, 2004 court appearances. The Docket Entries in this case show three government attorneys being involved, AUSA's O'Regan, Vuono and Auerhahn, but no O'Conner.

(5) Despite the above Docket Entries, if an AUSA O'Conner was there then I have made an honest mistake. In any event, it was most definitely AUSA O'Regan who I argued with about silencers and requested of him that a gunshot residue test be performed.

(6) As related in my prior affidavit filed in connection with this motion, my conversation with AUSA O'Regan occurred in the Magistrate's Courtroom but before the judge and his entourage appeared.

(7) Several times in these proceedings, including in open court on September 19, 2005, I have made the accusation that I demanded of AUSA O'Regan that a gunshot residue test be performed on the airgun device on June 23, 2004, the date of my arraignment. I even pointed my finger at him while making the accusation. Never has he denied it until now, in his unsworn memorandum of law.

(8) Even if it did occur on June 25, 2004 as opposed to June 23, 2004, the government has failed to state what <u>time of day</u> the evidence was destroyed with government gunshot residue contamination. The request could have been at Noon and the destruction at 4 P.M.

(9) The hearsay allegation made by ATF Agent Burns that gunshot residue tests on suspected firearm silencers required to be done at least as far back as 28 years ago were not required as of 8 years ago is incredible and is not supported

by any attached or cited directive, policy statement, administrative staff manual, or even by a non-hearsay affidavit.

(10) Also my accusation in my affidavit that Burns and Examiner Craze lied or committed perjury from the witness stand by falsly claiming that the device could not be disassembled and that the inability to disassemble was the reason for not doing the gunshot residue test was ignored and not dealt with in the Burns Affidavit or Government Memorandum. This makes the noncredible claim that a 28 year old protocol was changed 8 years ago sound even more improbable.

(11) It is true that gunshot residue testing of a suspected firearm silencer would be relevant only to whether the "silencer" has ever been used with a firearm as opposed to whether the "silencer" is capable of reducing the report of a firearm. It becomes very relevant however when a criminal defendant at his arrest and at his arraignment claims that the device is not a firearms silencer but instead is something innocent such as an airtool silencer, lawnmower muffler, or an airgun device. In such a case the presence or absence of gunshot residue almost single-handedly proves or disproves that the device is or is not a firearm silencer. It is also highly relevant to the essential element of the offense that the defendant "knew" that the device that he possessed or transported was capable of reducing the report

-4-

of a firearm. It is common sense that the presence of gunshot residue indicates guilt and the absence of it indicates innocence. It is also common sense that if a device has never been shot through with a firearm before, no defendant can "know" for sure whether that device would be capable of reducing the report of a firearm -- that is why manufacturers and ATF Examiners try them out to "test" them.

(12) No matter how this motion turns out, I still intend to call AUSA O'Regan as a witness at my trial to show that upon or shortly after my arrest I demanded in court that a gunshot residue test be performed to demonstrate my innocence and that my request was not complied with.

I declare that the foregoing is true and correct. Executed this 21st day of March, 2006.

s/ *Michael Alan Crooker*
Michael Alan Crooker
CCI-MacDougall
1153 East Street South
Suffield, CT  06080