```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

UNITED STATES OF AMERICA )
                         )
         v.              )    Criminal No. 04-30034-MAP
                         )
MICHAEL CROOKER,         )
         Defendant.      )

Government's Opposition<br>
<u>to Further Additional Motions</u>

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, submits this memorandum and the attached declarations of Deputy U.S. Marshal Daniel Spellacy, Jr., and Assistant U.S. Attorney Kevin O'Regan in opposition to Michael Crooker's further additional motions.

1.  <u>Motion for Return of Property</u>

    This motion should be denied.

    Mr. Crooker seeks return of his computer pursuant to Fed. R. Crim. P. 41(e), which relates to the issuance of search warrants. Rule 41(e) does not authorize the return of items seized pursuant to search warrants.

    If Mr. Crooker's motion seeks to suppress the seizure of the computer pursuant to Rule 41(h), the government will prove at the suppression hearing this week that the seizure was authorized by the warrant being executed.

    If Mr. Crooker's motion seeks the return of his computer pursuant to Rule 41(g), he is not entitled to seek its return until the need for its use as evidence is over. <u>See</u> <u>United States v. Kaczynski</u>, 416 F.3d 971, 974 (9th Cir. 2005); <u>United</u>

States v. Martinson, 809 F.2d 1364, 1369 (9th Cir. 1987).  In this case, the government will introduce evidence from Mr. Crooker's computer at his trial.

As will be explained at the suppression hearing this week, the government has provided Mr. Crooker with a copy of the files seized from his computer.  The government also agrees to provide Mr. Crooker with a copy of the imaged hard drive taken from his computer.  This should give Mr. Crooker additional access to his computer files.

2. <u>Motion for a Hearing on a Weekly Basis</u>

An earlier version of this this motion was previously denied by the Court.

The Court has held and scheduled hearings and the trial of this case in an appropriate and timely manner.  There is no factual or legal basis for holding hearings other than those scheduled to address relevant matters that are brought before the Court.

3. Motion to Dismiss due to Deprivation
   <u>of Speedy Trial and Violation of 18 U.S.C. § 3164</u>

Other than reciting the Speedy Trial Act's basic 70 and 90 day provisions (related to detained defendants), Mr. Crooker has failed to specify how the Act has been violated.  Very few cases, if any, go to trial within 70 or 90 days in the District of Massachusetts.  In almost every case, including this one, significant amounts of time are excluded from the 70 or 90 day provisions.  <u>See</u> 18 U.S.C. §§ 3161(h) and 3164(b).

Mr. Crooker was indicted on July 14, 2004. Orders of excludable delay were entered by Magistrate Judge Neiman or this Court for the periods July 15, 2004, to January 20, 2005(Docket No. 27), January 20, 2005, to Feburary 23, 2005 (Docket No. 37), February 23, 2005, to March 25, 2005 (Electronic Order dated February 28, 2005), March 25, 2005, to May 6, 2005 (Docket No. 42), May 16, 2005 to August 23, 2005 (Electronic Order dated May 23, 2005). Most of these exclusions were agreed to by Mr. Crooker's counsel and none were opposed. Therefore, as of August 23, 2005, approximately ten days had elapsed from the Speedy Trial clock.

Since August 23, 2005, a plethora of successive and overlapping pretrial defense motions have been pending before the Court, including motions to dismiss the indictment, motions to suppress evidence, motions for reconsideration, a motion for Mr. Crooker to proceed pro se, a motion for release and motions related to his conditions of pretrial detention. During this time, the Court has held hearings related to these motions and has scheduled additional evidentiary hearings for May, 2006, and the trial of the case for June 12, 2006. All of this time is automatically excluded from the Speedy Trial clock. See 18 U.S.C. § 3161(h)(1)(F).

Nor should Mr. Crooker be transferred to a half-way house. His trial is scheduled for June 12, 2006, at which time his case

will be adjudicated by a jury. There is no reason to change his pretrial detention status.

4.  Motion to Dismiss due to Deprivation
    of Speedy Trial and Prosecutorial Misconduct

Mr. Crooker's motion is based on a variety of summary complaints related to the pretrial process. The gravamen of his prosecutorial misconduct complaint is that the government unfairly delayed his trial through discovery. In addition, he complains that the government may cause him to be charged with other crimes if he is not convicted on the charge in the pending indictment.

There has been no substantial discovery violation in this case. In its automatic discovery letter dated July 26, 2004, twelve days after Mr. Crooker's indictment, the government invited Mr. Crooker and his counsel to inspect the physical evidence in this case. Since that time, the government has made that evidence available when requested and even made the unusual arrangement to have Mr. Crooker inspect some of the evidence himself with his counsel.

Nor was it inappropriate for the government to discuss with Mr. Crooker's counsel the probable next step it would take if Mr. Crooker was not convicted on the pending charge. There have been numerous discussions with counsel about possible additional charges in this case involving explosives, other firearms and the chemical ricin. Those additional charges remain viable and well within the statute of limitations.

In the event that such additional charges are brought by complaint or in an indictment returned by a grand jury, it will be appropriate for the government to seek Mr. Crooker's detention or significant conditions of release based upon the federal bail statute. His counsel will be able to oppose any such request and raise with the Court Mr. Crooker's prior detention in this case. Ultimately, it will be the Court that will make the independent decision about Mr. Crooker's future detention or release.

There has been no prosecutorial misconduct in this case and Mr. Crooker's motion should be denied.

5.  <u>Motion in Limine</u>

Mr. Crooker seeks to exclude all evidence relating "to any firearm or firearm device" other than the silencer in this case and any evidence concerning his "knowledge of firearms or firearms devices" other than the silencer.

In light of Mr. Crooker's defense, lack of knowledge, such an evidentiary ruling would be too restrictive and unfairly prejudicial to the government. It appears that the primary issue at trial will be whether Mr. Crooker knew that the silencer he sent in the mail had the capacity to reduce the report of a firearm. Mr. Crooker's knowledge of firearms, firearms related devices and silencers generally all are relevant to whether Mr. Crooker knew that the silencer would work with a firearm. Mr. Crooker has written prolifically about firearms, ammunition,

silencers and firearms laws. As part of his writings, he has offered his opinion and counseled others about firearms, firearms devices and silencers. In addition, he has made videos demonstrating explosions and firearms being fired. He has information on his computer related to firearms and silencers.

All of this information is relevant to the question of Mr. Crooker's knowledge related to the silencer in this case. As a result, his motion in limine should be denied.

6. Motion for Contempt

This motion should be denied. In addition, the government respectfully requests that the Court reconsider its earlier ruling granting without opposition Mr. Crooker's "Motion for an Order Requiring the U.S. Marshal's Service to Restore Detainee Crooker's Commissary Account Funds."

a. Procedural History

On November 10, 2005, Mr. Crooker filed a motion to require the Marshal's Service ("USMS") to restore his commissary account at Wyatt Detention Facility. On November 30, 2005, the Court granted Mr. Crooker's motion without opposition. Although the Court's granting of the motion effectively ordered the USMS to restore Mr. Crooker's commissary account, it was legally and practically unable to do so because the USMS does not have any control over the commissary accounts at Wyatt, which is an independent contractor that provides a service to the USMS.

As explained in the accompanying Declaration of Supervisory Deputy U.S. Marshal Daniel W. Spellacy, Jr., Mr. Crooker was housed at the Wyatt Detention Facility ("Wyatt") from July 16, 2004, to May 23, 2005, pursuant to an agreement between the USMS and Wyatt to house federal detainees pending federal judicial proceedings. According to Deputy Marshal Spellacy, Wyatt is an independent contractor. The USMS does not supervise Wyatt's day-to-day operations.

After the Court ordered the USMS to restore Mr. Crooker's commissary funds at Wyatt, Deputy Marshal Spellacy was informed that Wyatt had frozen Mr. Crooker's commissary account for damages to the jail caused by Mr. Crooker. The USMS did not have any role in the decision to freeze Mr. Crooker's commissary account at Wyatt. Nor does the USMS have any control over the commissary accounts at the Wyatt. See Spellacy Declaration.

Since Wyatt is not a party to this criminal case, it was not individually subject to the Court's order. Thus, the USMS was ordered to do something it could not do and Wyatt, which controlled the disputed funds, was not the subject of the Court's order.

As explained in the accompanying declaration of Assistant U.S. Attorney Kevin O'Regan ("O'Regan Declaration"), in the time following the Court's order, there were several communications between the U.S. Attorney's Office, the USMS and Wyatt, but in

the end no action was taken. The government initially should have opposed Mr. Crooker's motion for the reasons stated below. Then it should have moved on behalf of the USMS to vacate the Court's November 30, 2005, order and leave the civil dispute concerning Mr. Crooker's commissary funds to be resolved between him and Wyatt.

Despite the government's lack of action, which is explained in more detail in the O'Regan Declaration, it would be inappropriate to hold the USMS in contempt for not doing something that it could not do.

    b.   <u>Mr. Crooker's Substantive Claim</u>

Mr. Crooker's claim for $435 is between him and Wyatt. It is not between him and the USMS, which never had control over Mr. Crooker's commissary account. As a result, Mr. Crooker should resolve his civil dispute with Wyatt in a civil or administrative forum and not as part of this criminal case.

Mr. Crooker claimed the Court's jurisdiction over his civil dispute with Wyatt under the All Writs Act, 28 U.S.C. § 1651(a). Section 1651(a), states:

> (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

In this case, invocation of the All Writs Act to resolve Mr. Crooker's dispute with Wyatt, which is not a party to this case, would be be not be a "necessary or appropriate" use of the

Court's power in aid of its jurisdiction over this criminal case in which the issue solely is resolution of the indictment charging Mr. Crooker with a crime. The All Writs Act should be used only to facilitate the issues properly before the Court. See United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40 (1st Cir. 2004); United States v. Friedman, 143 F.3d 18 (1st Cir. 1998). Mr. Crooker has not cited and the government has not found a case where the All Writs Act has been used in the manner suggested by Mr. Crooker.

The dispute between Mr. Crooker and Wyatt is genuine. During his time at Wyatt, Mr. Crooker frequently engaged in conduct which caused him to receive over thirty disciplinary reports. In many instances he damaged or destroyed institution property. See O'Regan Declaration, Exhibit B.

The government respectfully requests that the Court deny Mr. Crooker's motion for contempt and vacate its November 30, 2005, order allowing Mr. Crooker's motion to have the USMS restore his commissary account at Wyatt.

7. Motion to Dismiss due to Scientific Impossibility of Conviction

Mr. Crooker's motion is based on his trial defense that he could not have known that the silencer was capable of reducing the sound of a firearm. This is not a basis for dismissing the indictment.

The government will introduce evidence that Mr. Crooker sent the silencer in the mail and that it, in fact, was capable of

9

reducing the sound of a firearm. The government will also introduce evidence tending to prove that Mr. Crooker knew that the silencer was capable of reducing the sound of a firearm. Mr. Crooker will attempt to introduce evidence tending to support the arguments he makes in his motion. The jury will decide if the government has met its burden of proof.

It would be inappropriate for the Court to dismiss the indictment based solely on Mr. Crooker's planned defense.

8.   <u>Motion to Dismiss due to Post-Indictment Agency Ruling</u>

This motion blends Mr. Crooker's previously unsuccessful effort to make intended use a part of the charged crime with ATF rulings related to paint ball guns. The ATF rulings are not related to this case.

The agency ruling referred to by Mr. Crooker relates to "integral devices" on paint ball guns. These are devices that are built into air guns used to discharge paint balls. Because they are built into the air guns, they are not capable of reducing the sound of a firearm. As noted in the ruling quoted by Mr. Crooker, removal of the device from a paint ball air gun would be circumstantial evidence that the device is to be used to reduce the sound of another device, presumably a firearm.

In this case, the silencer was not built into an air gun used to discharge paint balls. To the contrary, it was a separately manufactured silencer that was easily affixed to a

firearm and that reduced the sound of the firearm effectively.

The agency ruling referred to by Mr. Crooker is not relevant to this case. In any event, it can not be a basis for dismissing the indictment against him.

9. <u>Motion to Appoint Counsel</u>

Mr. Crooker is represented by competent court appointed counsel. There is no extraordinary need for the Court to appoint two attorneys to represent him.

10. <u>Motion for Transcripts at Government Expense</u>

The government does not oppose the Court authorizing Mr. Crooker's counsel to obtain transcripts paid for out of Criminal Justice Act funds.

<u>Conclusion</u>

For the foregoing reasons, except for the transcript motion, the defendant's further additional motions should be denied.

```
                              Respectfully submitted,
                              MICHAEL J. SULLIVAN
                              United States Attorney

                    by:   /s/ Kevin O'Regan
                          Kevin O'Regan
                          Assistant U.S. Attorney
```

Date: May 8, 2006

<u>Certificate of Service</u>

May 8, 2006

I certify that I caused the foregoing document to be electronically delivered to counsel for the defendant, Vincent Bongiorni, Esq, 95 State Street, Springfield, MA 01103.

```
                              /s/ Kevin O'Regan
                              Kevin O'Regan
                              Assistant U.S. Attorney
```