UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs.                                       ) | NO.   04-30034-MAP |
| ) | |
| MICHAEL CROOKER                 ) | |

**DEFENDANT'S SECOND MOTION IN LIMINE AND OBJECTION TO GOVERNMENT'S RULE 404(b) LIST**

Defendant renews his first Motion in Limine and once again points out that the court has ruled on pages 8 an d 9 of its Memorandum re: Defendant's Motion to Reconsider/For Clarification of Defendant's Motion to Dismiss:

> The question before the jury when this case goes to trial will be whether the defendant knew the this particular device had the capacity to muffle the report of a firearm when he transported it. (emphasis in original)

Therefore the defendant moves to prevent any and all testimony or evidence that relates to any firearm or firearm device other than the particular device charged in this case, or any testimony or evidence concerning defendant's generalized knowledge of firearms or firearm devices other than the particular device charged in this case.

Such testimony or evidence would not be relevant and would be prejudicial. It would not be relevant unless it related directly to the actual device in this case allegedly transported by Crooker. It would be prejudicial because Crooker is a former felon. Former felon status is an element of the present offense and defendant has stipulated that he is such a prohibited person. Further, most persons know that such status makes it unlawful to buy, sell, possess or use firearms or ammunition in general.

Defendant objects to the Government's very large list of Rule 404(b) evidence with which they intend to offer to prove that Crooker knew that the .44 caliber air rifle silencer he allegedly transported would work to muffle a .22 caliber Ruger firearm. If even a portion of this list were allowed admitted, this trial would last months while hundreds upon hundreds of items would be argued about one by one.

1. Pictures from the search of his residence

While it is not known exactly which of the many pictures they would seek to admit, some or most of the pictures show highly irrelevant and prejudicial material such as the illegal manufacture of fireworks, laboratory equipment and glassware, chemicals, and drug paraphernalia, among other things. None of the pictures would offer proof that Crooker's .44 caliber air rifle silencer would be capable of working on a firearm.

2. Book seized from his residence pursuant to the search warrant titled "Guerilla Warfare Weapons"

This book is not listed on the search warrant return (inventory) nor was it particularly described as subject to seizure under the warrant. Further, it is highly inflammatory, depicts gangster weapons, and weapons of war, and proves nothing except that Crooker perhaps may have looked or read the book at some time and he therefore has a generalized interest in weapons. While the Government proffers that this book contains a photograph of a MAC 10 machine-gun with attached silencer, Crooker is not alleged to have been in possession of a MAC 10 machine gun with a silencer. He is alleged to have been in possession of an air rifle silencer that upon testing, turned out to be able to muffle the report of a Ruger .22 caliber pistol. It is not alleged that Crooker ever used his air rifle silencer on any MAC 10 or on any firearm at all; to the contrary, the Government has conceded that it never was so used. Agent Burns testified that the thought "didn't even cross his mind" and Examiner Craze testified that an optical tool examination showed no gunshot residue. The only possible motive to introduce this book is to taint the jury with unnecessary prejudice.

3. Computer seized from his residence pursuant to the search warrant and all files contained on the computer related to firearms ans Mr. Crooker's knowledge of firearms and the firearms laws, including, among others:

All files related to firearms

Crooker has no objection to those files concerning his sale of the air rifle silencer to Mr. Paulus in Ohio. Any other files would be prejudicial and unrelated to whether Crooker had knowledge that his air rifle silencer could work on a firearm.

<u>All files related to knowledge of firearms</u>

Unless the files pertained to air rifle silencers being put to use of firearms, they would be prejudicial and not relevant to Crooker's knowledge of a .44 caliber air rifle silencer being capable of being put to use on a Ruger .22 caliber firearm.

<u>Knowledge of Firearms Laws</u>

Crooker's knowledge of firearms' law neither proves nor disproves whether he knew that the air rifle silencer was capable of also working on a .22 caliber Ruger firearm. Further, introduction of legal knowledge would open the door to law being argued to the jury by the parties; Crooker would want to prove that no court, prior to this court, had ever specifically ruled that "device for silencing" in the statute meant "device capable of silencing."

(a) <u>Video of a person shooting a firearm titled "Silenced MAC 10."</u>

Besides the fact that the person shooting is unidentified, no actual gun can be seen, and the sound from the unseen gun is clearly unsilenced , there can be no reason to introduce such an inflammatory video than to unnecessarily cause prejudice. There is no MAC 10 firearm in this case, and certainly no MAC 10 silenced firearm. What there is, is an air rifle silencer that might be able to be put to use on a Ruger .22 caliber firearm and the issue is did Mr. Crooker know that his air rifle silencer was capable of that? The video only shows that Crooker might be a "gun nut" or have an interest in firearms. Unless the Government is going to allege that the unheard and unseen silencer on the unseen MAC 10 being shot by the unseen individual is really an air rifle silencer being put to use on a firearm, it is irrelevant and prejudicial.

(b) <u>Pictures of firearms, including a MAC 10/Cobray</u>

For the reasons cited above, pictures of firearms are simply irrelevant and prejudicial when a former felon is the person who has the pictures. Unless the pictures are of air rifle silencers being put to use on firearms, they should not come in. There is no such gun as a "MAC 10/Cobray." they are two different firearms. Crooker does have pictures on his computer, downloaded from a website called "machineguns.com" or something similar, of MAC 10 machine guns that are properly registered under the Nation Firearms Act by licensed individuals. But such pictures do not relate to whether Crooker had knowledge that his .44 caliber air rifle

silencer would also work on a .22 caliber Ruger firearm. Even if Crooker had possessed the actual MAC 10 machine guns, and not just the photos thereof, and even if the air rifle silencer had gunshot residue, which we know that it did not, the threads of a MAC 10 are domestic and Crooker's air rifle silencer threads metric - - <u>they would not mate</u>. Introduction of such irrelevancy will only open the door to Crooker having to call the web-site owner to prove these guns are legitimate.

(c) <u>Emails related to firearms and the purchase of a silencer</u>

The emails related to the particular air rifle silencer in this case would be admissible but not the emails related to a previous air rifle silencer not seized or a part of this case, and which was made for a different air gun than the air rifle in the present case. Those two sets of emails are intertwined, but could easily be redacted of the irrelevant ones.

Any emails related to firearms, other than the <u>particular</u> alleged firearm (silencer) in this case, would not be relevant and would be prejudicial for the reasons stated above.

(d) <u>Documents related to firearms and air guns</u>

With respect to documents related to firearms, Crooker makes the same objection as he did with the pictures of firearms. Unless there was some direct connection between some particular firearm and the air rifle silencer charged in this case as a "firearm silencer," it would simply not be relevant to whether Crooker knew that his air rifle silencer could also work on a Ruger firearm. With respect to documents related to airguns, there is simply no legitimate reason to admit them, other than to cause prejudice. These documents deal with high-powered airguns that even most law enforcement personnel are not aware, much less ordinary citizens. The fact that Crooker had airguns that could shoot through steel, or kill large game, or was of large caliber is simply irrelevant to whether he knew if his air rifle silencer could work on a .22 caliber Ruger firearm. The Government's attempt to introduce this data has no probative value whatsoever; it would only be introduced to demonstrate that very dangerous weapons are in the hands of former felons through what might be termed a "legal loophole."

4. <u>Green notebook seized from his residence pursuant to the consent to search</u>

It is unknown what in this notebook the Government intends to introduce, since the

notebook nor its contents have ever been disclosed in pretrial discovery. However, unless something in the notebook directly relates to air rifle silencers being put to use on firearms, it would simply be prejudicial and irrelevant to the question of whether Crooker knew that his air rifle silencer would work to silence a Ruger .22 caliber firearm.

### 5. Firearms seized from Steven Crooker's residence

Some 20 firearms were seized from the home of Steven, Pamela, Jake, Nicholas and Casey Crooker. Jake and Pamela held gun licenses. With respect to several of these firearms, between 1981 and 1992, defendant Michael Crooker orchestrated their sale from the household he shared with his second wife, Lorraine LeBarron, a gun license, and his third wife, Susan Bartnicki, also a gun license, to the Steven Crooker household. Since those transfers between 1981 and 1992 the defendant, Michael Crooker, has had no further contact with those firearms. In addition, some of those firearms wee involved in Michael Crooker's 1991 ATF gun case for which he was convicted and sent to prison on October 1994. And some of them are alleged to be machine guns. None, however, involve silencers.

Firearms transferred by Michael Crooker to the Steven Crooker household 14 to 25 years ago are not relevant to an air rifle silencer made for Crooker 5 years ago. The time periods are decades apart.

This is not a conspiracy case. Unless the Government can prove that Michael Crooker had actual or constructive possession of one or more of these firearms, at least within the statute of imitations, and that such was somehow connected to the air rifle silencer at the center of this case, then these guns are irrelevant, inflammatory and prejudicial. Some are assault weapons, others alleged to be machine guns. Many would be considered "gangster guns."

### 6. MAC 10/Cobray seized from Steven Crooker's residence

There is no such firearm as a MAC 10/Cobray. They are two different weapons. However, in 1991 Michael Crooker orchestrated the sale to Steven Crooker's household through his wife and Steven Crooker's wife a Cobray M11/Nine 9mm semi-automatic pistol that is alleged to have been converted to a machine gun. This gun is also known by the name "SWD" which means Sylvia Wayne Daniels, the manufacturing company's owner. The MAC 10's on the other hand, were made by Military Armaments Corporation, RPB Industries, and a couple of

other companies. Also, the MAC 10's are machine guns or are semi-automatic that fire from an open bolt, and do not have a hammer. The SWD/Cobray M11/Nine is manufactured as a semi-automatic, does not fire from an open bolt, and does have a hammer.

Regardless of this confusion surrounding Mac 10s and Cobrays, both are considered assault weapons and gangster weapons. For the same reason given in the preceding section, introduction of any gun from Steven Crooker's household would be irrelevant, inflammatory, prejudicial and would not relate in the slightest to whether Michael Crooker knew that his .44 caliber air rifle silencer would also work on a .22 caliber Ruger firearm.

7. Book titled "Full Auto" seized from Steven Crooker's residence

This is a "How To" book on converting semi-automatic firearms into machine guns. It doesn't deal with silencers, much less air rifle silencers being put to use on firearms.

Further, this is from the Steven Crooker residence, not from the Michael Crooker or Harold Crooker residences to which Michael Crooker had access. This is not a conspiracy case. Michael Crooker cannot be held responsible for what is found in the home of Steven, Pamela, Jake, Nicholas, or Casey Crooker.

But even of this book had been found in the pocket of Michael Crooker, it has no relevance to air rifle silencers being used to silence firearms. It is offered solely to cause prejudice.

8. Ammunition seized from a box in a shed on Harold Crooker's property in proximity to documents related to Michael Crooker

Harold Crooker testified to the Grand Jury in August 2005 that this ammunition belonged to him, and in fact, most of it fit firearms he then currently owned.

In any event, since the Government does not allege that the air rifle silencer in this case was ever shot through with a firearm, or was used with a firearm, the possession of ammunition, even if true, would not be relevant ans would be highly prejudicial. The fact that some of this ammunition is .22 rimfire caliber and the air rifle silencer was tested on a Ruger .22 rimfire caliber firearm is mere coincidence. Crooker had no knowledge what caliber or type of firearm his air rifle device was going to be tested with. As it turns out, the ATF Laboratory always uses a Ruger .22 rimfire caliber firearm even when the silencer is of another caliber.

9. Slugs for a .44 caliber air rifle seized from a box on a shed on Harold Crooker's property in proximity to documents related to Michael Crooker

Ammunition for the air rifle hasn't the slightest probative value regarding whether Crooker knew that his air rifle silencer would also work on a Ruger firearm. Showing the jury huge slugs that can kill a deer (or a person) will only inflame them when they consider that such was possessed by a former felon and there is a legal loophole to do so. When the air rifle and silencer were seized there was no air rifle ammunition found with it. There is no legitimate reason to introduce any from remote locations.

10. Various correspondence written by Mr. Crooker, including:

Email correspondence with Chief Ronald Glidden concerning silencers

The correspondence concerning silencers related to air gun silencers under state law, not Federal law. State law is not relevant to this case. Also the correspondence relating to air gun silencers and state law is intertwined with other correspondence regarding black powder firearms, antique firearms, antique ammunition, store illegally selling ammunition and other matters not related to silencers.

Letters between Mr. Crooker and the ATF Firearms Technology Branch

The letters relate to a host of firearm and ammunition related matters, but none of them involve silencers, thus irrelevant. Plus they contain prison address.

June 3, 2004 email to pjohnson@repub.com

In June 2004 a suspected BB Gun or air rifle "sniper" was firing on vehicles on I-91 and the Republican reported a demonstration it did where it could not break a car window at 100 yards with an air rifle. Crooker then, for a fee, offered to demonstrate that his .44 caliber air rifle could not only break a car window at 100 yards, but also go through the car door. Such bragging about the air rifle he then possessed, and offering to demonstrate its power is prejudicial for the reasons previously stated and has no relevance to whether Crooker knew that his air rifle silencer could also work on a firearm.

### July 10, 2004 letter to Kevin O'Regan

Privileged under F.R. Evid. 410 (4) and F.R. Crim P. 11(e)(6)(D)as statements made in the course of plea discussions with an attorney for the Government which do not result in a plea of guilty. Crooker was acting *pro se* in unindicted matters.

Further, the correspondence is prejudicial, inflammatory, reveals Crooker is imprisoned, and doesn't relate to whether Crooker had knowledge that his air rifle silencer would also work to silence a Ruger firearm.

### Undated letter to Kevin O'Regan in July 2004

Same objections as above.

### August 11, 2004 letter to Steven Crooker from Wyatt

Involves alleged crimes other than that which is under indictment. Hence, is prejudicial and inflammatory. Doesn't relate to whether Crooker had knowledge that his air rifle silencer would also perform on a firearm. Shows that Crooker is imprisoned.

### August 12, 2004 letter to Harold and Jennie Crooker

Same objections as above.

### August 27, 2004 letter to Jennie Crooker from Wyatt

Same objections as above.

### September 7, 2004 letter to Jennie Crooker from Wyatt

Same objections as above.

### September 7, 2004 letter to Mike Paulus from Wyatt

Reveals imprisonment. Does not directly relate to the issue of whether Crooker had knowledge that the air rifle silencer that he sold Paulus would also work to silence a firearm.

### Undated letter to ATF postmarked June 9, 2005

Reveals imprisonment. Doesn't relate in the slightest ti whether Crooker had knowledge that his air rifle silencer could also muffle a Ruger .22 caliber firearm. Reveals numerous crimes

of the past such as illegal firearm transfers, illegal making of machine guns. Reveals heroin use in prison, selling machine gun over the phoned from Atlanta Federal Penitentiary in return for money for heroin. Reveals the hiding of a machine gun, tear gas grenades, smoke grenades, automatic sears, poison which has never been found and which Crooker could not even find himself.

### 11. Chief Ronald Glidden's Law Enforcement Guide to Firearms Laws

Not on search warrant return (inventory) and outside scope of residence search warrant. This is a law book. It is not relevant to whether Crooker knew that his air rifle silencer could also muffle the sound of a Ruger .22 caliber firearm. Introduction opens the door to parties arguing law to the jury.

### 12. Mr. Crooker's internet posting on Straight Shooter's Precision Airguns

No objection.

### 13. Audiotape recordings of Mr. Crooker speaking to Steven Crooker from Wyatt Detention Facility

None of them relate to whether Michael Crooker knew that his air rifle silencer would also work to muffle the report of a Ruger firearm. All of them relate to other criminal matters not under indictment, hence are prejudicial and inflammatory, reveal imprisonment, foul language, anti-Government rhetoric, and other negative matters.

## CONCLUSION

Nothing should be admitted unless it relates directly to the particular device involved in this case, that is, the .44 caliber air rifle silencer that was tested by the ATF Laboratory and allegedly found to be capable of silencing a Ruger .22 caliber firearm. Anything related to other firearms, firearms devices, or ammunition not connected to the particular .44 caliber device in this case, nor any generalized knowledge of such should be admissible since it would be prejudicial in any case involving a former felon such as the defendant Crooker.

If any of this irrelevant evidence is to be allowed, Crooker requests that it at least be limited to evidence related to air gun silencers only, or at the very least, to silencers only, and not other types of firearms, weapons, or ammunition.

                                  THE DEFENDANT

                                  BY: /s/ Vincent A. Bongiorni
                                  Vincent A. Bongiorni, Esq.
                                  95 State Street - Suite #309
                                  Springfield, MA 01103
                                  (413) 732-0222
                                  BBO #049040


## CERTIFICATE OF SERVICE

    I, Vincent A. Bongiorni, Esq., do hereby certify that I have served a copy of the foregoing to the Assistant United States Attorney, Kevin O'Regan, United States District Court, 1550 Main Street, Springfield, MA. 01103 this 23 day of June 2006.


                                  /s/ Vincent A. Bongiorni