```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA  )
                          )
         v.               )    Criminal No. 04-30034-MAP
                          )
MICHAEL CROOKER,          )
         Defendant.       )
```

Government's Opposition to Motions In Limine

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, submits this memorandum in opposition to Michael Crooker's motions in limine.

1. Motion to Preclude Expert Testimony

The government opposes this motion.

Mr. Crooker seeks to preclude the testimony of Richard Craze, the former ATF employee who examined and tested Mr. Crooker's silencer. Mr. Craze testified during the suppression hearing that the device he examined reduced the report of a firearm and that it was a silencer within the meaning of the federal firearms statutes. Mr. Craze also testified about his background and experience,[1] as well as how he examined and tested the silencer.

---

[1] Mr. Craze has testified as an expert firearms examiner in other cases. See e.g. United States v. Moore, 253 F.3d 607, 611 (11th Cir. 2001)(examination of silencer); United States v. Poulos, 895 F.2d 1113, 1120-21 (6th Cir. 1990)(examination of silencer); United States v. Lowe, 860 F.2d 1370, 1372 (7th Cir. 1988)(interstate nexus of firearm); United States v. Harper, 802 F.2d 115, 121 (5th Cir. 1986)(firearms identification and interstate nexus).

Mr. Craze's testimony was and will be straightforward and uncomplicated. He worked for the ATF Firearms Technology Branch for over 26 years. 5/9/06 Tr. 11. During that time his primary responsibility was to examine, identify and testfire firearms and related devices in the context of criminal investigations. Id. 12. As part of his responsibilities, Mr. Craze examined devices to determine if they were physically or functionally firearm silencers within the meaning of the federal firearms laws. Id. Over the course of his career, Mr. Craze examined over 2,500 silencers. Id. 12-14.

In this case, Mr. Craze physically examined Mr. Crooker's device both externally and internally. Id. 15-22. He then attached the device to a firearm, test fired it and measured the sound produced by the firearm. He compared the sound measurement with the sound measured when he fired the firearm without the device attached to it and concluded that the device reduced the report of the firearm significantly. Id. 29-31. As a result, he concluded that it was a silencer within the meaning of the federal firearms statutes. Id. 31.

Mr. Crooker's objection to Mr. Craze's testimony must fail, in part, because he has failed to raise any specific objections as to the reliability of Mr. Craze's testimony. He has not explained how Mr. Craze was unqualified to examine the silencer or how the testing of the silencer was flawed or unreliable. In

light of Mr. Craze's significant experience and training and the straightforward nature of his examination and analysis, his testimony should be permitted.  See United States v. Hicks, 389 F.3d 514, 524-25 (5th Cir. 2004)(upholding the district court's broad latitude in determining the qualifications of a firearms expert and the methodology used); United States v. Garcia-Morales, 382 F.3d 12, 18-19 (1st Cir. 2004)(upholding district court's broad discretion in admitting expert testimony related to drug conspiracies).

2.  Motion in Limine - Rule 404(b) Evidence

The government opposes this general motion attacking all Fed. R. Crim. P. 404(b) evidence.

In this motion, Docket No. 153, Mr. Crooker seeks to exclude all evidence of other acts pursuant to Fed. R. Crim. P. 404(b). He argues that the physical evidence of firearms and ammunition is dated and that there is no nexus between the Rule 404(b) evidence and the silencer Mr. Crooker sent in the mail.  Motion at 3.  He also argues that evidence of his knowledge of firearms "will exhibit to the jury an unflattering portrait of the Defendant as a career offender and cause the jury to use this as propensity evidence despite the best instruction to the contrary."  Id. at 4.

Mr. Crooker minimizes the relevance of the other act evidence and overstates its prejudicial effect.  The government

3

does not intend to paint Mr. Crooker as a career offender or a person of general bad character.[2] It will simply introduce evidence that will permit the jury to infer that Mr. Crooker was knowledgeable about firearms, firearms laws, devices used to reduce the report of air rifles and firearms, and the precise issue of intent and capability presented by this case. This evidence, when combined with evidence relating to the silencer, will permit the jury to draw the inference that Mr. Crooker knew that the silencer was capable of reducing the report of a firearm.

Furthermore, the evidence will not be stale because it will come primarily through Mr. Crooker's own writings and evidence seized from his apartment and his father's and brother's residences a few weeks after Mr. Crooker was arrested.

The main factual issue in this trial will be whether Mr. Crooker knew that the device he sent in the mail to Mike Paulus was capable of reducing the report of a firearm. Mr. Crooker's explanation for the device is that it was intended to be used with a legal air rifle. Presumably, he will argue that although he knew that the device would reduce the report of an air rifle, the government cannot prove that he knew that it would reduce the report of a firearm. In this context, Mr. Crooker's extensive knowledge of firearms is very important.

---

[2] Nor does the government intend to introduce in its direct case evidence that Mr. Crooker manufactured improvised explosive devices or poisons.

4

Proof of knowledge through other act evidence is explicitly authorized by Rule 404(b). The First Circuit uses a two part test to decide the admissibility of other act evidence:

> We use a two-part test to evaluate the admissibility of evidence under Rule 404(b). First, we must determine whether the evidence in question has any "special relevance" exclusive of defendant's character or propensity. See United States v. Sebaggala, 256 F.3d 59, 67 (1st Cir.2001) (the proffered evidence "must not merely show a defendant's reprehensible character or predisposition toward knavery····"). Second, even if some "special relevance" is found, the evidence must nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. "Rule 404(b) incorporates sub silentio the prophylaxis of Federal Rule of Evidence 403." Id.

United States v. DeCicco, 439 F.3d 36, 50 (1st Cir. 2006). See United States v. Landrau-Lopez, 444 F.3d 19, 23 (1st Cir. 2006)("The other bad act need not be identical to the crime charged so long as it is sufficiently similar to allow a juror to draw a reasonable inference probative of knowledge or intent."); United States v. Tavares, 427 F.3d 122, 125-26 (1st Cir. 2005)(upheld introduction of defendant's prior conversation about unrelated firearms deal pursuant to Rule 404(b) to prove knowledge of how to conduct a weapons transaction); United States v. Houle, 237 F.3d 71, 77-78 (1st Cir. 2001)(upholding this Court's admission of Rule 404(b) evidence and limiting instruction).

In this case each of the items of other act evidence, which will be discussed in more detail below, are relevant to the issue of knowledge and in large part are character neutral. Nor are

they unfairly prejudicial.³  As a result, Mr. Crooker's general motion to preclude all Rule 404(b) evidence should be denied.

3. Second Motion In Limine and Objection to Government's Rule 404(b) List

The government opposes this motion, which seeks to prohibit the introduction of specific items of evidence.

    a.    Pictures from the Search of Mr. Crooker's Residence

The evidentiary value of the photographs of Mr. Crooker's apartment is to show where various items were located when they were seized, including Mr. Crooker's computer, books related to weapons and gun parts, an order sheet for gun parts, a green notebook and documents related to Mr. Crooker's self-authored "Legal Guns for Prohibited Persons" and "A Felon's Guide to Legal Firearms Ownership." In addition, the government intends to use a photograph of a jar of beans seized from his residence that are similar to beans found in Harold Crooker's shed.

    b.    "Guerrilla Warfare Weapons" Book Seized from Mr. Crooker's Residence

This book is well used and contains many photographs of firearms. The book's binding is broken on page 97, which has a photograph of a firearm with a silencer attached entitled, "What can be done: an Ingram M-11 sub-machine gun fitted with a

---

³ United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989)("[A]ll evidence is meant to be prejudicial; it is only unfair prejudice which must be avoided.").

silencer." The silencer on page 97 is a cylindrical device that appears to be similar, although not identical to, the silencer seized from Mr. Crooker's parcel in this case. This book is circumstantial evidence of Mr. Crooker's knowledge of firearms and their use with silencers.

    c.   <u>Computer Seized from Mr. Crooker's Residence</u>

        i.   <u>Files Related to Firearms</u>

        ii.  <u>Files Related to Knowledge of Firearms</u>

        iii. <u>Knowledge of Firearms Laws</u>

The particular files and documents from Mr. Crooker's computer that the government intends to introduce into evidence related to items i-iii in Mr. Crooker's motion have been provided to Mr. Crooker and will be discussed below.

        iv.  <u>Video of Person Shooting a Firearm Titled Silenced MAC 10</u>

This video is of a person using a firearm in semi-automatic and automatic mode and is titled "Silenced MAC-10." The video reflects Mr. Crooker's interest in firearms and how they are fired. The title of the video reflects his interest in silencers and firearms, including the MAC-10 style firearm. In addition, the MAC-10 video tends to tie together and reinforce the evidentiary value of the book discussed above and other evidence discussed below. In the end, they demonstrate that Mr. Crooker is knowledgeable about firearms and silencers.

      v.    <u>Pictures of Firearms</u>

There are four pictures of firearms on Mr. Crooker's computer of MAC-10 style firearms. These firearms are similar to the MAC-10 style firearm with an attached silencer found in the Guerrilla Weapons Warfare book described above. They are also similar to an order form dated August 27, 1992, for a "M 11/9 Receiver Flat" seized from Mr. Crooker's apartment on June 23, 2004. The order form was inside a book entitled "The World Guide to Gun Parts" and specifically related to a Cobray style flat. The purpose of the flat was to make a MAC-10 style firearm. A Cobray MAC-10 style firearm was seized from Steven Crooker's residence, and was particularly discussed by Mr. Crooker in his letter to ATF in July, 2005.

In his July, 2005, letter to ATF, Mr. Crooker discussed in detail converting the MAC-10 into an automatic firearm. The firearm in the video "Silenced MAC-10" referred to above was fired in both semi-automatic and automatic mode.

All of these related pieces of evidence demonstrate Mr. Crooker's knowledge of firearms, including their manufacture, and their use with silencers.

      vi.    <u>Emails Related to Firearms and the Purchase of a Silencer</u>

The government intends to introduce a series of e-mails seized from Mr. Crooker's computer between Michael Crooker, Steven Crooker and Lee Police Chief Ronald Glidden related to

firearms laws. Among other things, on October 9, 2001, Chief Glidden advised Michael Crooker,

> If a person was found with a so-called silrcer [sic], it would be up to the MSP Ballsitics [sic] Unit to determine if something called a silernecer [sic] was actually a slercer [sic]. If it worked like a silcern [sic] on an actual gun (even if it was an oil filter) it could be classifed [sic] as a silercer [sic]. I'll check on it some more for my own curiosity and let you know, but I can't see a problem unless it is sepereate [sic] from the airgun and can be palced [sic] on a acutal [sic] gun."

This e-mail demonstrates that Mr. Crooker was advised that if a device, even an oil filter, worked on a firearm, it could be a silencer.

The government will also introduce from Mr. Crooker's computer a June 3, 2004, e-mail from Mr. Crooker to a reporter at the Springfield Republican explaining that he had an air rifle that shot "specially made lead bullets that otherwise look like real bullets," and bullets pulled from firarms ammunition. Lead bullets and a bullet puller were seized from Harold Crooker's shed. This e-mail also describes Mr. Crooker's use of an air rifle to shoot through objects like a barrel, ammunition cans and wooden boards.

  vii. <u>Documents Related to Firearms and Air Guns</u>

These items are described above.

 d. <u>Green Notebook Seized from Mr. Crooker's Residence</u>

The green notebook seized from Mr. Crooker's residence contains the phrase "921(a)(24)." 18 U.S.C. § 921(a)(24) states:

> The terms "firearm silencer" and "firearm muffler" mean any device for silencing, muffling, or diminishing the report of a portable firearm, . . .

This entry in the green notebook tends to prove that Mr. Crooker was aware of the statutory definition of a firearm silencer when he sent the silencer in the mail to Mike Paulus.

 e. <u>Firearms Seized from Steven Crooker's Residence</u>

Twenty firearms were seized from Steven Crooker's residence on July 15, 2004, as well as ammunition and two bullet proof vests. In July, 2005, Michael Crooker sent a letter to ATF in Springfield discussing nine firearms, eight of which were seized from Steven Crooker's residence. The government will introduce those eight firearms into evidence to explain what Michael Crooker's letter referred to. The letter describes in detail Mr. Crooker's knowledge of the history and operation of the firearms. This evidence tends to prove Mr. Crooker's expert knowledge with respect to firearms and makes it more likely that he knew that the silencer he sent to Mike Paulus could reduce the report of a firearm.

 f. <u>MAC 10/Cobray Seized from Steven Crooker's Residence</u>

This firearm is discussed in Mr. Crooker's letter to ATF and is similar to the photographs of MAC-10 style firarms on Mr. Crooker's computer.

g.  "Full Auto" Book Seized from Steven Crooker's Residence

This book shows the reader how to convert certain firearms, including a MAC-10 style firearm, into an automatic firearm. In his July, 2005, letter to ATF, Mr. Crooker discussed how he modified a MAC-10 style firearm to automatic. This tends to corroborate Mr. Crooker's knowledge about the firearms at Steven Crooker's residence and to prove Mr. Crooker's expertise with firearms.

h.  Ammunition and Michael Crooker Documents Seized from Shed on Harold Crooker's Property

i.  Ammunition for Air Rifle Seized from Shed on Harold Crooker's Property

The ammunition for firearms (h.) and ammunition for an air rifle (i.), as well as firearms paraphernalia, seized from the shed on Harold Crooker's property tend to prove Mr. Crooker's knowledge and expertise with respect to firearms. The documents (h.), the nature of the ammunition and beans similar to those found in Mr. Crooker's residence tie Mr. Crooker to the ammunition and paraphernalia in the shed.

j.  Michael Crooker's Writings

i.  E-Mail Correspondence with Ronald Glidden

This correspondence is addressed in "c.(vi)" above.

ii.  Correspondence with ATF Firearms Technology Branch

These documents do not relate to silencers, but they reflect Mr. Crooker's intense interest in what was legal and illegal with

respect to firearms.  They tend to demonstrate Mr. Crooker's knowledge with respect to firearms and the firearms laws.

   iii. <u>June 3, 2004, Email to pjohnson@repub.com</u>

 This correspondence is addressed in "c.(vi)" above.

   iv. <u>July 10, 2004, Letter to Kevin O'Regan</u>

 The government does not intend to use this letter at this time.

   v. <u>Undated Letter to Kevin O'Regan</u>

 The government does not intend to use this letter at this time.

   vi. <u>August 11, 2004, Letter to Steven Crooker</u>

 In this letter, Mr. Crooker writes:

> They knew she (or Pete) had bought a Cobray at the gun show . . . they seized a parcel from Shooter's Equipment Supply to me that [con]tained silencer parts and a full-auto-striker/firing pin for the Cobray.

 This tends to demonstrate Mr. Crooker's knowledge of firearms and silencers.

   vii. <u>August 12, 2004, Letter to Harold and Jennie Crooker</u>

 In this letter Mr. Crooker wrote to his parents,

> Everything I had kept in the shed was legal to possess and store.  The "firecrackers" on the list were just a few 50 cent boxes of store pull-string things you can buy anywhere.  There was a 1 lb can of Black Powder from when I had that []Caliber Thunderhawk but even that was legally stored because it was under lock & key in the shed.

This tends to prove that the ammunition and parphernalia in the shed was Mr. Crooker's.

  viii. <u>August 27, 2004, Letter to Jennie Crooker</u>

The government does not intend to use this letter in its case in chief.

  ix. <u>September 7, 2004 Letter to Jennie Crooker</u>

In this letter Mr. Crooker refers to two submachine guns his father found in his basement during the previous year. According to Mr. Crooker, his father called him and his brother Steven to get the submachine guns out of his basement.

This letter further demonstrates Mr. Crooker's familiarity with firearms.

  x. <u>September 7, 2004, Letter to Mike Paulus</u>

The government does not intend to use this letter in its case in chief.

  xi. <u>Undated Letter to ATF Postmaarked June 9, 2005</u>

In this letter Mr. Crooker discusses in detail his knowledge of 8 firearms seized from Steven Crooker's residence and a ninth firearm. The government has discussed the significance of this letter above.

  xii. <u>Chief Ronald Glidden's Law Enforcement Guide to Firearms</u>

This guide is referred to by Mr. Crooker in his e-mail correspondence with his brother Steven as useful. Chief Glidden is the person who advised Mr. Crooker that a device that could be attached to a firearm and reduce its report could be a silencer.

    xiii.    Internet Posting on Straight Shooter's <u>Precision Airguns</u>

Mr. Crooker does not oppose this.

    xiv. <u>Audiotapes from Wyatt with Steven Crooker</u>

The government only intends to play a very limited selection of these recordings concerning Mr. Crooker's knowledge of firearms.

## Conclusion

For the foregoing reasons, Mr. Crooker's pending pretrial motions should be denied.

                      Respectfully submitted,
                      MICHAEL J. SULLIVAN
                      United States Attorney

    by:   <u>/s/ Kevin O'Regan</u>
           Kevin O'Regan
           Assistant U.S. Attorney

    Date: June 27, 2006

## Certificate of Service

June 27, 2006

I certify that I caused the foregoing document to be electronically delivered to counsel for the defendant, Vincent Bongiorni, Esq, 95 State Street, Springfield, MA 01103.

                      <u>/s/ Kevin O'Regan</u>
                      Kevin O'Regan
                      Assistant U.S. Attorney