UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
                              )
V.                            )        CR-04-30034-MAP
                              )
                              )
MICHAEL A. CROOKER            )

## RENEWED MOTION TO SUPPRESS SEALED LETTERS

Defendant again moves to suppress 115 sealed letters that he mailed from the Wyatt Detention Facility as a pretrial detainee.

## THE ISSUES

The correct issues are (1) Do pretrial detainees at the Wyatt Detention Facility have a legitimate expectation of privacy in their sealed, outgoing letters and (2) May the government, through the use of Grand Jury Subpoenas, enlist the Wyatt employees to unseal the outgoing letters and surreptitiously copy and disseminate them to promote a non-institutional, outside investigation?

## PROCEDURAL HISTORY

1.   The defense learned of the acquisition of defendant's letters on May 9, 2006 and was provided with more than 115 of them shortly thereafter.  On June 7, 2006 a Motion to Suppress Sealed Mail was filed.  (Docket Number 137.)

-2-

2.  Crooker testified on June 7, 2006 that he was allowed
to seal his outgoing letters and deposit them into locked letter
boxes, not only at Wyatt, but also at the other five detention
facilities in which he has been detained in this case.  That
testimony remains unrebutted.

3.  On June 15, 2006 the government filed a memorandum
in which they falsly claimed that Wyatt Investigator Ronald
Letourneau had previously testified that he was permitted by
Wyatt's internal regulations to read the detainees' sealed
outgoing letters.  (Docket Number 144).  They also cited
Rhode Island state prison regulations and Federal Bureau of
Prisons regulations that allow the reading of, and prohibit the
sealing of, mail of inmates in Rhode Island Department of
Corrections and Federal Bureau of Prisons facilities.

4.  The defense filed a memorandum on June 20, 2006
(Defendant's Closing Memorandum Regarding Outstanding Motions),
exposing the fabrication about Letourneau and citing the
Suppression Transcript of his actual testimony.  The defense
further claimed that Wyatt had its own regulations pertaining
to the mail and was not subject to the rules of the Rhode
Island Department of Corrections or of the Federal Bureau of
Prisons.  The defendant cited Huguenon v. Ponte, 29 F.Supp.2d
57, 67 (D.R.I. 1998) that specifically upheld this position.

5.  On June 22, 2006 the court ruled in its Memorandum
and Order Re:  Pending Pretrial Motions at 15 that Wyatt was

-3-

subject to the regulations of the Federal Bureau of Prisons which do not allow its pretrial detainees to seal their mail and do allow federal prison authorities to read it.  28 C.F.R. §540.14(b)(2005).  The court felt that the case of Correctional Services Corporation v. Malesko,  534 U.S. 61, 74 (2001) may have overruled Huguenin v. Ponte, supra. relating to mail regulations because it was noted in the opinion that the Federal Bureau of Prisons chose to extend access to its grievance procedure to Federal Bureau of Prison's inmates classified to contract community corrections centers and to former inmates.

6.  On June 30, 2006 the court and the parties were provided with the current mail regulations of the Wyatt Detention Facility.  This memorandum follows.

<u>ARGUMENT</u>

The Wyatt regulations known as Policy Number 551 entitled "Deatainee Correspondence, Mail, and Telephone Access and Use" states on Page 2 that:

> "Local, State and Federal Regulations
> are Not Applicable."

Also on Page 2 these rules are made secret for it states:

> "THIS POLICY WILL <u>NOT</u> BE ACCESSABLE TO
> DETAINEES AND/OR <u>VISITORS</u> AT ANY TIME."

-4-

On Page 6 the regulations state:

> "All outgoing mail <u>must</u> be <u>sealed</u> and
> placed in the unit mailbox by the
> detainee(s) prior to 9:55 p.m. lockdown."
> (emphasis added)

On Page 8 the rules provide:

> "The Warden may authorize the reading of
> non-privileged mail when in his/her
> opinion such action is necessary to
> maintain security or order in the
> Facility or to protect the physical
> safety of an individual."

> \* \* \*

> "No employee may read detainee mail unless
> authorized to do so by the Warden."

> \* \* \*

> "Items that may be considered sensitive
> in nature are forwarded to the Investigator
> for dissemination to include outside
> law enforcement and outside investigation
> for further intelligence purposes."

## PRIVACY INTEREST

As noted above, no state, local, or federal regulations
apply to Wyatt Detention Facility which is a private, corporate
entity.

Detainees <u>must</u> seal their letters and deposit them into
locked letter boxes, exactly as Crooker testified.

-5-

While the Warden is allowed to authorize the unsealing and
reading of mail in the limited circumstance relating to
institutional security or to protect the safety of an individual,
a detainee is kept in the dark as to this exception due to the
explicit secret nature of the Mail Policy.

Therefore a Wyatt detainee has a legitimate expectation
of privacy in the contents of his sealed letters mailed
out of Wyatt.

### USE OF GRAND JURY SUBPOENAS
### TO SEIZE COPIES OF ALL LETTERS
### UNRELATED TO INSTITUTIONAL SECURITY
### OR THE SAFETY OF AN INDIVIDUAL

The unsealing of the 115 mailed letters and their
surreptitious copying and dissemination was clearly contrary
to Wyatt's Mail Policy.

There has been no evidence presented that the Wyatt
Warden ever authorized the opening of one or more of the 115
letters that spanned 10-months.

Even if that were not the case, the Warden's actions
would be unlawful because he is only authorized by the Mail
Policy to approve mail openings for one of two narrow,
specific reasons, neither of which concern non-institutional
matters (except the protection of an individual).

It is clear that the government used the Grand Jury
subpoena process to circumvent Crooker's right to send sealed
mail out of Wyatt and to conduct a fishing expedition for

-6-

admissions Crooker may have made in his private correspondence to promote a non-institutional, non-protection of an individual prosecution.

### FEDERAL BUREAU OF PRISONS MAIL REGULATIONS ARE INAPPLICABLE TO WYATT DETENTION FACILITY

Wyatt Detention Facility has their own Mail Policy as noted above.  They do not operate pursuant to local, state, or federal regulations, as specifically stated on Page 2.  Wyatt is a private, for-profit, corporate entity not subject to governmental regulation.

The Federal Bureau of Prisons regulations do not apply to non-federal facilities, with the very limited exception of the grievance procedure, known as the Administrative Remedy Procedure (ARP).

As the court noted in Correctional Services Corporation v. Malesko, supra, the Bureau of Prisons has extended the ARP to contract halfway houses (and released inmates) for good reason.  Inmates assigned to these halfway houses are still in custody of the Bureau of Prisons and need the ARP to, for example, challenge the computation of their release date.

Just because the BOP has extended its grievance remedy to BOP inmates classified to halfway houses does not mean it applies its other regulations by implication to county, state, or private facilities who do not even contract with the BOP.

-7-

Wyatt Detention Facility contracts with the U.S. Marshals
Service, not the Federal Bureau of Prisons.

County, state, and private jail facilities are governed
by their own regulations and policies, not the federal
government's.

Respectfully submitted,
THE DEFENDANT

BY: _____
    Vincent A. Bongiorni, Esq.
    95 State Street, Suite 309
    Springfield, MA   01103
    (413) 732-0222
    BBO #049040

CERTIFICATE OF SERVICE

I, Vincent A. Bongiorni, Esquire, do hereby certify that
I have served a copy of the foregoing in hand to the Assistant
United States Attorney, Kevin O'Regan, United States District
Court, 1550 Main Street, Springfield, MA 01103 this 5th day
of July, 2006.

S/_____