UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSTTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| V. | ) | CR-04-30034-MAP |
| | ) | |
| | ) | |
| MICHAEL ALAN CROOKER | ) | |

**DEFENDANT'S PRO SE NOTICE OF APPEAL,
REQUEST FOR APPOINTMENT OF NEW APPELLATE COUNSEL,
AND REQUEST FOR LEAVE TO APPEAL IN FORMA PAUPERIS
(INCLUDING THE GROUNDS UPON WHICH DEFENDANT
WISHES TO APPEAL)**

Defendant above named hereby gives notice that he appeals to the United States Court of Appeals for the First Circuit from the Judgment of this court entered October 20, 2006.

Defendant requests the appointment of new appellate counsel since current counsel does not do appeals.

Defendant requests leave to proceed on appeal <u>in forma pauperis.</u> His financial status has not changed since current counsel was appointed on June 29, 2004 and the issues he wishes to raise on appeal are as follows:

**ISSUES ON APPEAL
<u>(Revised October 10, 2006)</u>**

**<u>FOURTH AMENDMENT ISSUES</u>**

**<u>7 ½ DAY WARRANTLESS PARCEL DETENTION</u>**

No court prior to this case has ever upheld a parcel detention of such length. The Ninth Circuit's Dass case ruled that 7 days was too long. The detention in this case violated the First Circuit's LaFrance decision on parcel detentions where law enforcement diligence is required and is defined as "steady, ernest, and energetic" behavior. Postal Inspector Dailey's actions, other than calling superiors and legal counsel, consisting of a single call inquiry about a bomb dog, is far short of "steady, ernest and energetic" over a period exceeding a week. All 12 of the search warrants, the automobile inventory search, and the multiple consent searches are poisoned fruit directly attributable to the 7 ½ day warrantless parcel detention. <u>See</u> Docket Item 47 and 48 Motion to Suppress; Item 52 Government Opposition; Item 63 Supplemental

Memorandum; Item 66 Government Opposition; Item 86 Memorandum Decision; Item 90 Motion to Reconsider; Item 104 Memorandum and Order (Summary denial on docket entries).

## SEIZURE OF THE ALLEGED SILENCER FROM PARCEL

The search warrant for the parcel authorized the seizure of only "a firearm." The "a firearm" referred to the depiction in the X-Ray of what appeared to be a shotgun, according to the testimony of Inspector Dailey. But the "shotgun" depicted in the X-Ray turned out to be a non-firearm air rifle. The seizure of the metal cylinder (suspected silencer) which could not be seen on the X-Ray was not authorized because it was not "immediately apparent" that it was contraband or was evidence of a crime. The cylinder was screwed onto the end of the air rifle and a photograph taken, therefore it was obvious that since it mated threadwise to the air rifle and was with the air rifle that it was a **part of the air rifle**. Assuming that the characteristic that makes an object a "silencer" is its "capability" to muffle the report of a portable firearm, which is hotly disputed (see below), Inspector Dailey had no way of knowing whether the obvious air rifle device could also function on a firearm. Both he and ATF Agent Burns testified that when they found it, they had to send it to the lab for testing because they themselves did not know. Neither of them testified that they had knowledge of any prior air rifle silencer they encountered or knew about also being able to function on a firearm. See Docket Items outlined above.

## SEIZURE OF SEALED LETTER FROM WYATT DETENTION FACILITY TO STEVEN CROOKER MENTIONING AIR SILENCER PARTS FROM 1992

This was a letter in 2004 that mentioned air "silencer parts" being ordered but intercepted by ATF and not received in 1992. It was used to enable the prosecutor to argue to the jury that the defendant "had at least 14 years of experience with silencers" (which was definitely not true) therefore must have had knowledge that the air rifle device would function on a firearm. This letter should have been suppressed. It was one of over 115 sealed letters that were surreptitiously opened, copied, and disclosed pursuant to 6 Grand Jury subpoenas spanning 10 months. Wyatt, a private, for profit, corporate jail facility, has its own mail policy that declares that they are not subject to local, state or federal regulations (because they are not a government entity like normal jails), that all detainee mail must be sealed and placed into locked letter boxes, and that only the Wyatt Warden may authorize mail openings in two specified circumstances that do not include the promotion of outside investigations not involving the facility. In this case there was no evidence presented that the Warden authorized any of the 115 openings. Nevertheless Judge Ponsor held that Federal Prison Regulations at 28 C.F.R. 540.14(b) that provide for pretrial detainees housed in federal prison facilities not to seal their mail while in those facilities somehow trumps local, state, or private jail regulations and/or that Wyatt detainees do not have a legitimate expectation of privacy in their sealed letters placed into locked letter boxes. See Docket Item 137 Motion to Suppress Sealed Mail; Item 144

Memorandum in Opposition; Item 148 Exhibit; Item 149 Defendant's Closing
Memorandum Regarding Outstanding Motions; Item 151 Memorandum and Order; Item
158 Renewed Motion to Suppress Sealed Letters.

## LAPTOP SEARCH

There were four successive search warrants for the Compaq laptop. The first
authorized a seizure of any computers, but not a search of the computer. The second
expired without execution. The third and fourth were issued in violation of Rule 41's
requirement that the property to be searched be located within the District at the time of
the application; here the laptop was in the District of Virginia at FBI Headquarters.
Further, the laptop was broken into and its hard drive imaged between the third and
fourth search warrants when no warrant at all was in effect, hence warrantless. Judge
Ponsor ruled that a computer's seizure is like a file cabinet's seizure; that agents can
search at their leisure many months later, that all could have been done under the first
search warrant and the subsequent three search warrants were not even necessary. See
Docket Item 47 and 48 Motion to Suppress; Item 52 Government Opposition; Item 63
Supplemental memorandum; Item 74 and 75 Omnibus Motion to Suppress; Item 86
Memorandum Decision; Item 92 Government Opposition; Item 104 Memorandum and
Order; Item 121 Government Opposition; Item 138 Motion to Suppress Compaq Laptop
Computer; Item 144 Government Opposition; Item 149 Defendant's Closing
Memorandum Regarding Outstanding Motions; Item 151 Memorandum and Order.

## RULE 29 ISSUES

### SILENCER ELEMENT NOT PROVED

(A) It was not proved that the air rifle device at issue constituted a "device for silencing,
     muffling or diminishing the report of a portable firearm" because the device was
     neither used with a gunpowder firearm nor intended to be so used and was a part of
     the air rifle with which it was found.

(B) Even if the correct "silencer" criteria were its "capability" as opposed to "design or
     intent" the evidence shows that government witnesses were not able to identify any
     known firearm with barrel threading that matched the threading to the air rifle device
     and ATF Examiner Craze had to use a threaded adapter from an array of adapters
     along with a threaded replacement barrel to get the air rifle device to function on a
     Ruger firearm. Accordingly, the device itself was not "capable" of diminishing the
     report of a firearm and the "combination of parts" needed was never possessed by
     the defendant.

See Docket Item 166 Renewed Motion for a required Finding of Not Guilty Under Rule
29(c).

## KNOWLEDGE ELEMENT NOT PROVED

There was no proof of actual knowledge that the air rifle device could function as a silencer on a gunpowder firearm. As it was clean of gunshot residue and never tested on a firearm, even the agents who seized it could not know until they had the laboratory test it. See Docket Item 96 Defendant's Motion to Dismiss Due to Scientific Impossibility of Conviction, Item 166 Renewed Motion for a Required Finding of Not Guilty Under Rule 29(c).

## INTERSTATE COMMERCE ELEMENT NOT PROVED

Crooker did not "cause" the alleged silencer to travel in interstate commerce; he only attempted to so cause it but was prevented in said attempt by the seizure of his parcel before it was even scanned or inputted into the mail stream. Inspector Dailey had several choices about what to do. He could have arrested Crooker for unregistered possession of a silencer and not sent the device to his Cleveland office or he could have returned the parcel from whence it came to the Feeding Hills Post Office and allowed it to move to Ohio on its own steam. Crooker cannot be said to be the "cause" of whichever option that Dailey chose. Federal agents are not allowed to create their own interstate commerce jurisdiction to complete a federal offense or move objects across state lines so that they can say that the defendant "caused" them to do it. Since Dailey did not have to ship the alleged silencer to the Cleveland Postal Inspector's Office then Crooker cannot be the "cause" of it, much less the "direct cause" as stated in the judge's Jury Instructions. Further, the double pouch, Express Mail, airmail accomodation that was used is a federal law enforcement conveyance that is separate and apart from Interstate Commerce. See Docket Item 161 Request for Jury Instructions; Item 162 Motion for Judgment of Acquittal; Item 166 Renewed Motion for Required Finding of Not Guilty.

### JURY INSTRUCTION ISSUES

### INSTRUCTIONS AS TO DEFINITION OF "SILENCER"

## FIRST PART OF SILENCER DEFINITION

Throughout this case from Day One the meaning of the language in the statutory silencer definition at 18 U.S.C. 921(a)(24) has been hotly disputed. Exactly what does "device *for* silencing" mean? Defense contends it means "***designed or intended***" and government says it means "device *capable* of silencing" even though that necessarily brings within its ambit lawnmower mufflers, motorcycle mufflers, pillows, towels, potatoes, litre soda bottles, etc. The final jury charge used the "capable" interpretation and specifically said that defendant's lack of intent to use it on a firearm was to be disregarded as was the device's lack of ever being so used. Judge Ponsor did this to hook defendant on the air rifle silencer, a first in Federal Court history. No court prior to this court has ever held that a silencer is any object that is "capable"; one court said "capability" *was not* a salient feature of a silencer. Another court in the District of Connecticut in a potato silencer case used an "intent" instruction and not a "capability"

4

one. <u>See</u> Docket Item 28 and 29 Motion to Dismiss, Item 33 Government Opposition, Item 56 Motion to Reconsider or Clarify; Item 66 Government Opposition; Item 82 Proposed Jury Instruction on "Silencer"; Item 87 Memorandum Decision; Item 130 Renewed Motion to Reconsider, Item 161 Request for Jury Instructions.

## "COMBINATION OF PARTS" PROVISION

The government's "capability" theory of what a firearm silencer is, as opposed to the defense's "designed or intended" sparked a vigorous defense under Part Two of the silencer statute:

> The term "firearm silencer" and "firearm muffler" mean any device for silencing, muffling, or diminishing the report of a portable firearm, *including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler,* and any part intended only for use in such assembly or fabrication.
> 18 U.S.C. 921(a)(24)(emphasis added)

According to the evidence, the ATF Examiner who declared the air rifle device to be a firearm silencer, had to use two additional parts consisting of a special threaded replacement barrel (on the ATF Reference Collection firearm) as well as a threaded adapter from an array of adapters in order to make the device "capable" of diminishing the report of the ATF firearm. The defense took pains to demonstrate through cross-examination that the device, standing alone, could not diminish, except on the air rifle to which it mated and was designed for. To diminish the report of a firearm to which it did not mate or was not designed for required additional parts. This brought in the Part Two statutory definition and provided a two-part defense: (a) that the complete "combination of parts" necessary to make it "capable" of working on a firearm was never possessed or shipped and (b) that the "combination of parts" was not "designed or redesigned and intended for use" as a firearm silencer.

## DEFENSE REQUESTED THE FOLLOWING INSTRUCTION AND WAS DENIED:

> *An air-rifle is not a firearm under the Gun Control Act.* 18 U.S.C. 921(a)(3).

This is an absolutely correct statement of the law yet the court failed to use the term "air rifle" or "airgun" anywhere in its 19 pages of Jury Instructions though the whole trial was about an air rifle and its muffler. The instruction given: "Under the law, a "firearm" includes any weapon that will, or is designed to or may readily be converted to, expel a projectile by the action of an explosive" could easily have been misconstrued by jurors who might have thought that the violent discharge of air from an air rifle could be an "explosive." (There was much extraneous testimony allowed in over defense objection to show how "powerful" the air rifle was including the huge slugs that it fired and a

photograph of a steel ammunition can that they penetrated.)  Jurors came back with a question 8 hours into deliberations asking for a better instruction as to "firearm silencer." Reversible error occurs when requested instruction (1) was correct, (2) was not substantially covered by the court's charge to the jury, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense.  United States v. Frazier-el, 204 F.3d 553, 562 (4th Cir. 2000)  See Docket Item 82 Proposed Jury Instructions on "Silencer" at 1.:

## DEFENSE REQUESTED THE FOLLOWING INSTRUCTION AND WAS DENIED:

*The term "device for silencing, muffling or diminishing" means a device that is designed or intended to be used with a portable, powderburning firearm.*  18 U.S.C. 921(a)(24).

This is at the heart of the case.  The government requested an instruction in the exact words of the statute with the following modifiers attached:

*For a device to be a firearm silencer, it must be capable of silencing, muffling or reducing the report of a portable firearm.  The government must prove that the defendant knew that the device was capable of silencing, muffling or reducing the report of a portable firearm.  The government is not required to prove that the defendant used the device with a firearm or intended to use the device with a firearm. Rather, the government must prove that the defendant knew that the device was capable of acting as a firearm silencer as I have defined that term.*

The court agreed and stated in its instructions:

*For a device to be a firearm silencer, it must have been designed and fabricated in such a way that it is capable of silencing, or significantly reducing, the report of a portable firearm*

See Docket Item 28 and 29 Motion to Dismiss, Item 33 Government Opposition, Item 56 Motion to Reconsider or Clarify; Item 66 Government Opposition; Item 82 Proposed Jury Instruction on "Silencer", Item 87 Memorandum Decision; Item 130 Renewed Motion to Reconsider, Item 161 Request for Jury Instructions.

## DEFENSE REQUESTED THE FOLLOWING INSTRUCTION AND WAS DENIED:

*If you find from the evidence that the device in question was for silencing an air rifle and was not for silencing a firearm, you must acquit the defendant.*

Since the statute defining a firearm-silencer states that it is a "device for silencing, muffling or diminishing the report of a portable firearm" the above requested instruction

6

is precisely correct. While the entire trial was all about an air rifle and its muffler, the
word "air rifle" or "airgun" does not even appear anywhere in the court's 19 pages of
Jury Instructions. See Docket Item 161 Defendant's Request for Jury Instruction at 5.

## DEFENSE REQUESTED THE FOLLOWING INSTRUCTION AND WAS DENIED:

> *An air rifle silencer does not necessarily constitute a
> firearm silencer.* 18 U.S.C. 921(a)(24).

This too is absolutely correct. While the government tried to insinuate that all airgun
silencers constitute "firearm-silencers," the excluded defense exhibits prove that many
airgun silencers do not constitute firearm-silencers: ATF Ruling 2005-4 Paintballgun
Silencers, 1987 Westend Paintballgun Silencer Ruling, ATF Air Silencer Classification
Letters from 2000 all demonstrate that some air silencers are approved even by ATF.
Also court does not mention the word "air rifle" or "airgun" anywhere in its Jury
Instructions. See Docket Item 82 Proposed Jury Instruction on "Silencer" at 4; Item 161
Defendant's Request for Jury Instruction at 2.

## DEFENSE REQUESTED THE FOLLOWING INSTRUCTION AND WAS DENIED:

> *There are many kinds of "silencers" and "mufflers." Some examples
> include gasoline engine mufflers, air tool silencers, and paintballgun silencers. But
> only "firearm silencers" and "firearm mufflers" are covered by the Gun Control Act.*
> 18 U.S.C. 921(a)(24).

This is a correct statement of the law and serves to clarify that there exist innocent
"silencers" for objects other than gunpowder firearms. (In this case the jury came back
with a question 8 hours into deliberations, seeking a better definition of "silencer" and the
court did not oblige them). Also the court does not mention the word "air rifle" or
"airgun" anywhere in its Jury Instructions. See Docket Item 82 Proposed Jury Instruction
on "Silencer" at 5; Item 161 Defendant's Request for Jury Instruction at 4.

## DEFENSE AND GOVERNMENT BOTH REQUESTED AN INSTRUCTION IN THE WORDS OF THE STATUTE AS TO THE "COMBINATION OF PARTS" SECTION OF THE SILENCER DEFINITION AND WERE DENIED:

> A "firearm silencer" or "firearm muffler" under the Gun Control Act is a
> device for silencing, muffling or diminishing the report of a portable firearm, *including
> any combination of parts, designed or redesigned, and intended for use in assembling
> or fabricating a firearm silencer or firearm muffler,* and any part intended only for use
> in such assembly or fabrication.

This is the exact silencer statute, word for word. Both parties agreed that this was to be
the instruction given. But the court, in order to scuttle the defense's "combination of

7

parts" defense that had come up by way of a Rule 29 motion, refused to instruct in the words of the statute and instead gave this watered down and misleading instruction:

*In the circumstances of this case, a device that is merely a part of a firearm silencer is not a firearm silencer.*

This is misleading and confusing and is not a correct statement of the law under these circumstances because the defense was not claiming that the device in question was only a part to a silencer; rather the defense was claiming that the device in question could not by itself diminish on the firearm for which it was not designed without the addition of other parts. Reversible error occurs when requested instruction (1) was correct, (2) was not substantially covered by the court's charge to the jury, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense. United States v. Frazier-el, 204 F.3d 553, 562 (4th Cir. 2000). See Docket Item 161 Defendant's Request for Jury Instructions at 3.

## INSTRUCTIONS AS TO KNOWLEDGE (WILLFUL BLINDNESS)

To support willful blindness that has to be evidence to support the inference that the defendant was aware of a high probability that the air rifle device constituted a firearm-silencer, that is, would function on a gunpowder firearm to reduce its report, and that he "purposely contrived" to avoid learning this "in order to have a defense in the event of a subsequent prosecution." USA v. Bilis, 170 F.3d 88, 92 (lst Cir. 1999). But defendant did not "purposely contrive" because he did not think he needed a defense. The evidence proves that he thought that the law used "intent" and not "capability" to define a firearm-silencer. See Exhibit 40 – "Federal Law Definition of a Silencer". Since he thought it irrelevant whether the air rifle device could also function on a gunpowder firearm and believed that design or intent were the relevant characteristics, he had no reason to "contrive" in order to have a defense.

Also, he had no legal way to learn whether it could function on a gunpowder firearm since he had no firearm with which to try it out and even if he did, that would have been illegal. He could not mail it to ATF for them to try it out because that too would put him in violation of 922(g) for having shipped it if ATF determines that it will function on a gunpowder firearm. So he had no possible way to legally learn whether it would be classified as a silencer based upon a "capable" criteria. See Docket Item 166 Renewed Motion for Required Finding of Not Guilty.

## INSTRUCTIONS AS TO INTERSTATE COMMERCE

## DEFENSE REQUESTED AN 18 U.S.C. 2(b) AIDING AND ABETTING INSTRUCTION AS TO CAUSATION AND WAS DENIED:

A Section 2(b) "willful causation" instruction was requested which would have been the only valid legal theory to support the notion that defendant "caused" the federal agents to transport the alleged silencer in interstate commerce between the U.S. Postal

Inspector Offices of Springfield, MA and Cleveland, OH. See Docket Item 161
Defendant's Request for Jury Instructions at 8; Item 162 Motion for Judgment of
Acquittal at 3; Item 166 Renewed Motion for Required Finding of Not Guilty at 1-6.

## DEFENSE REQUESTED THE FOLLOWING INSTRUCTION AND WAS DENIED:

> *Depositing an object for mailing does not alone constitute
> Interstate commerce under the Gun Control Act; actual
> Interstate movement is necessary.* 18 U.S.C. 921(a)(2).

This is a correct statement of what the law is and therefore should have been given as
requested. See Docket Item 161 Defendant's Request for Jury Instruction at 6.

## DEFENSE REQUESTED THE FOLLOWING INSTRUCTION AND WAS DENIED:

> *Attempting to mail an object to another state does not alone
> constitute interstate commerce under the Gun Control Act;
> Actual interstate movement is necessary.* 18 U.S.C. 921(a)(2).

Again, this is a correct statement of the GCA's commerce clause. See Docket Item 161
Defendant's Request for Jury Instruction at 7.

### EVIDENCE ADMISSIONS AND EXCLUSIONS

## IRRELEVANT AND PREJUDICIAL EVIDENCE ADMISSIONS UNDER RULES 403 AND 404B

The main issues in the trial were whether the air rifle muffler constituted a firearm-
silencer and if so, did Crooker have knowledge that it did. This would have been a very
clean case with only an air rifle involved since no firearms were seized from Crooker, his
vehicle or his residence. But to prove the knowledge element, the government introduced
a plethora of firearms that were once owned by Crooker 14-25 years earlier as well as
anti-government, anti-ATF writings by Crooker, all in a purported effort to create an
inference that because he had a generalized knowledge of firearms, including how to
convert semiautomatic assault weapons into machineguns, that he would necessarily
know that a specific air rifle muffler would function as a firearm silencer. This theory
would only be valid if the evidence directly related to air rifle mufflers being put to use
on firearms, or at the very least, be limited to evidence of silencers only, and not all other
aspects of firearms.

## 404B EVIDENCE ADMISSIONS IN GENERAL:

## THE USE OF 404B EVIDENCE THAT DEMONSTRATES A NONSPECIFIC, GENERALIZED KNOWLEDGE OF FIREARMS IN ORDER TO PROVE ACTUAL KNOWLEDGE THAT AN AIRGUN MUFFLER WILL FUNCTION AS A SILENCER ON A FIREARM REQUIRES EXPERT TESTIMONY AND NONE WAS PRODUCED.

The minutae of firearms is very vast and the notion that one's illegal ownership, modification, disassembly, and assembly of firearms 14-25 years earlier translates to current actual knowledge of the functionality of a specific airgun muffler on a gunpowder firearm is like assuming one's knowledge of the chemical compounds in ammunition cartridge primers. Military recruits who are trained to disassemble and reassemble firearms while blindfolded do not know the first thing about silencers and unless in the Special Forces, would never encounter them. Does an ordinary automobile mechanic know about the operation of dragsters or rocket powered cars on the Bonneville Salt Flats? Does a commercial blaster in a construction company know anything about Hellfire Missiles? Lay jurors are simply not qualified to assume knowledge in hypertechnical matters without the guidance of expert testimony. There was no expert testimony presented that would enable a jury to properly weigh the 404B evidence in relation to the knowledge element of the alleged offense, hence it was prejudicial and not probative.

## RULE 404B EVIDENCE – SPECIFIC INSTANCES:

## M11/NINE MACHINEGUN, KG9 MACHINEGUN, AND COBRAY STREETSWEEPER SHOTGUN

These three weapons were fierce, terrible, gangsterish looking guns commonly used by criminals, insurgent groups and the military. The two machineguns had been modified from semiautomatics and sold by Crooker 15 years earlier, and a decade before he ever acquired the air rifle or its sound muffler. The Streetsweeper, a 12-shot, drum-fed cylinder shotgun that resembles a Thompson submachinegun and was invented by the Apartheid South African Police Forces was never even seen or possessed by Crooker. He merely knew that his sister-in-law purchased it for his brother and he counseled his brother in letters from prison, to have her register the gun since ATF was reclassifying Streetsweepers as destructive devices but grandfathering existing ones. It is very hard to see how these weapons did not have a prejudicial effect in the jury room or how they were probative to Crooker's knowledge of silencers. While one of these firearms, the Mll/Nine machinegun, had factory installed threading at the muzzle that would permit the attachment of muzzle devices including silencers, the air rifle muffler was tried and would not fit.

## FIVE OTHER FIREARMS

Five other gunpowder firearms including another 12-guage shotgun also went into the jury room with the air rifle and its sound muffler.  Some of these had been owned and sold by Crooker 14-25 years earlier and some had not.  But because Crooker had mentioned them in an affidavit that exculpated himself from their current possession or ownership, they were allowed into evidence even though none of them related to silencers.  None of the five had muzzle threads that would permit the attachment of a silencer.

## EVIDENCE OF STEN MACHINEGUN

While this gunpowder firearm, made by Crooker 14 years earlier, did not physically come in, the writings about it did including the details of its manufacture and burial in an ammunition can in a field.  Again, there was no relation to silencers.

## GUERILLA WARFARE WEAPONS BOOK – EXHIBIT 14

A book found in Crooker's residence depicting weapons of war was admitted that included everything from land mines and hand grenades to machineguns.  On page 97 was a photograph of a M11 silenced machinegun.  The defense fails to see how this could be probative to Crooker's knowledge of air rifle mufflers being used as firearm silencers anymore than would be his possession of the DVD movie, "The Godfather" where numerous silencers were used including a towel-silencer.  There was no suggestion that the page 97 device had  been an air rifle device before being misused on a firearm.

## FIREQUEST CATALOG, WORLD GUIDE TO GUN PARTS CATALOG, GUN PARTS CORPORATION ORDER FORM DATED 08/27/1992 – EXHIBITS 15, 16 AND 17.

All that these demonstrate are a past or present interest in firearms generally, but not a thing probative as to firearm-silencers.

## LEGAL GUNS FOR PROHIBITED PERSONS – 52 PAGES – EXHIBIT 18

These writings by Crooker, some published and copyrighted, instruct and counsel how prohibited persons may lawfully possess weapons by using exemptions in the gun laws that exclude antique firearms and airguns.  Nothing at all is mentioned or suggested as to whether such an air rifle silencer could also function on a gunpowder firearm.  Some anti-ATF, anti-government passages were redacted from the 52 pages.  Other defense requested redactions were refused, some of which are included in the following passages that went to the jury room:

> You can ride around in your car with a fully loaded
> 50 caliber air rifle, cocked and locked, under a blanket,
> and you can thumb your noses at the ATF'ers.

(Page 2)

Or you can do it the smart way, circumvent their
asinine laws, and get yourself a good airgun that
will outperform some regular, powderburning firearms.
(Page 5)

We at FPE have some good friends who are felons,
and would sooner trust these people than half the
current crop of bureaucrats in government.
(Page 16)

Unknown to most persons, except lawyers and those
ATF victims incarcerated in federal prisons...
(Page 17)

Just don't move the finished product interstate or
the ATF fanatics will try to claim that you "designed them
for use" in modern firearms.
(Page 23)

Throughout the entire 52-page document only a single paragraph mentions "silencer":

While I have not heard of a silencer (in air gun parlance,
called a "sound moderator") for the Career Ultra (probably
due to unusual internal threads at the muzzle), ones are
being sold for the Sam Yang for about $150 that reduces
the report by about 50%.
(Page 4)

While even this passage adds nothing to an inference that Crooker's Sam Yang air rifle
sound device could work as a firearm-silencer, there was no probative reason to admit the
remainder of the book, which paints Crooker an an anti-ATF, anti-government gun-nut
whose stated aims are to circumvent the spirit of the nation's gun control laws by using
loopholes.

## ALL OF THE ABOVE COMBINED

The cumulative effect of the two machineguns, the Streetsweeper shotgun, five other
gunpowder firearms, writings about a third machinegun, Guerilla Warfare Weapons
book, other firearms publications, the Legal Guns for Prohibited Persons 52-pager and
other writings in the government's Exhibit List that were introduced combined together
with devastating prejudicial effect, yet had little, if any, probative value regarding the
knowledge of silencers or whether the air rifle device could be put to use on a firearm.
See Docket Item 94 Defendant's First Motion in Limine; Item 121 Government's
Opposition to Further Additional Motions; Item 153 Defendant's Motion in Limine Rule

404(b) Evidence; Item 154 Second Motion in Limine and Objection to Government's Rule 404(b) List; Item 155 Government's Opposition to Motions in Limine.

## UNFAIR AND IMPROPER EXCLUSIONS

While hundreds of firearms and pages of writings extraneous to the issues were being admitted, the defense exhibits below were ordered excluded as not relevant.

## ATF RULING 2005-4 ON AIRPOWERED PAINTBALLGUN SILENCERS

This ruling clarifies that certain .68 caliber airgun silencers are not to be considered to be "firearm-silencers" as long they remain permanently affixed to the airgun. More importantly, the ATF Director's ruling uses the terms "intended" and "intention" and does not use the terms "capable" and "capacity." Admission would have supported the defense theory several ways (1) it supports the defense theory that "designed or intended" as opposed to "capability" is the correct criterion of what constitutes a firearm-silencer, (2) it proves that some airgun silencing devices are permitted even by ATF, and (3) it would have supported a defense jury argument that Crooker's device had been permanently affixed to the air rifle and had been removed, along with the rifle's shoulder-stock, **only temporarily** to permit shipment in the too-small shipping box.

## 1987 WESTEND PAINTBALLGUN SILENCER RULING

An air-powered paintballgun press-on silencing device was found not to constitute a firearm-silencer. This was relevant to the defense theory that not all airgun silencing devices would be declared illegal by the ATF and that it is virtually impossible for a layman to know, without illegally trying it out on a gunpowder firearm, whether a device would be capable or functioning to silence a firearm.

## THREE ATF AIR SILENCER CLASSIFICATION LETTERS FROM 2000

Three different rulings by ATF in 2000 in airgun and paintballgun silencer classification matters stated that "some" previous classifications had determined that the air devices would constitute firearm-silencers (implying that "some" would not). These too would have advanced the defense claim that not all airgun silencing devices would be illegal and that there would be no way to have knowledge one way or another, without illegally trying them out with a gunpowder firearm, or illegally mailing them in for a classification decision.

## ATF EVIDENCE TRANSMITTAL FORM

Over defense objection, the following ATF authored language was redacted from jury view:

> All four silencers were fitted for air rifles ranging from
> .22-.44 caliber and were advertised as "moderators."

The fact that the device in this case was "fitted" for an air rifle as opposed to being fitted for a firearm is relevant and exculpatory to Crooker's defense that his device was "for silencing" an airgun and not "for silencing" a firearm. (The statutory definition of a silencer is a "device for silencing a portable firearm.")

## OTHER ISSUES

### UNFORESEEN EXPANSIVE INTERPRETATION DOCTRINE

Because no court has ever made such an expansive "capable" interpretation of the "any device for silencing" language in 18 U.S.C. 921(a)(24), defense moved under the Unforeseen Expansive Interpretation provision of the Fair Warning Doctrine and supported it with a lengthy affidavit that the defendant had relied on the plain English interpretation implying design or intent, as well as legal research that showed no previous "capable" interpretations or airgun silencer prosecutions. See Docket Item 84 Motion to Dismiss; Item 92 Government memorandum in Opposition; Item 104 Memorandum and Order (summary denial in docket entries).

### EXCULPATORY EVIDENCE ON LAPTOP COMPUTER

Approximately 1,000 files in the seized laptop are encrypted and the FBI is unable to decrypt them. Some are exculpatory and needed for the trial. Defense requested an order of access and Judge Ponsor ordered the filing of an Ex Parte Affidavit outlining the exculpatory evidence. Government refuses to permit access to the laptop unless defense gives up the passwords. But that would give the government more *inculpatory* evidence. So defense was faced with gaining some *exculpatory* evidence only if it gives the government a lot of *inculpatory* evidence in unrelated cases. Judge Ponsor ruled that the defense would have to give up the passwords in order for the government to turn over the exculpatory files. He also ruled that defense could present the evidence through the live witness instead, but that was incorrect for the witness could not be located (the airgunsmith who had the silencing device manufactured for the Sam Yang air rifle). See Docket Items under "Laptop Search" section plus Item 79 Motion for Return of Property; Item 124 Ex Parte Affidavit; Item 149 Defendant's Closing Memorandum Regarding Outstanding Motions; Item 151 Memorandum and Order.

### SELECTIVE PROSECUTION

This is a first-in-the-nation federal prosecution involving an air rifle silencer alleged to constitute a "firearm-silencer." Defense identified previous airgun and paintballgun silencer cases going back to the 1980's but no one has ever been prosecuted. In the present case the manufacturer in South Carolina, the retailer in Missouri, or the buyer in Ohio who was caught with three additional air rifles tipped with silencers were not arrested or prosecuted. The information that defense had came from FOIA documents consisting of 24 classification letters from ATF with the names/addresses deleted. The government claims that a selective prosecution claim could not be made without identifying these persons not prosecuted. Defense claimed it was the reverse; that the

government had the information and refused to give it up.  **See** Docket Item 78 Motion to Dismiss for Selective Prosecution; Item 92 Government Opposition; Item 121 Government Opposition; Item 149 Defendant's Closing Memorandum Regarding Outstanding Motions; Item 151 Memorandum and Order.

## IT WAS IMPROPER TO ALLOW ATF EXAMINER RICHARD CRAZE TO TESTIFY AS AN EXPERT THAT THE DEVICE WAS A SILENCER

Mr. Craze has no higher education.  No was there any written criteria in the ATF to guide his determination as to exactly what constituted a silencer or what would be a "significant diminishment" of sound.  Mr. Craze himself was the sole judge of what would be considered a silencer and what would not.  **See** Docket Item 152 Defendant's Motion in Limine to Preclude Expert Testimony; Item 155 Government's Opposition to Motions in Limine.

## DEPRIVATION OF A SPEEDY TRIAL

On July 26, 2004 in an Automatic Discovery disclosure, defendant, having been detained without bail for one month, received 5 Applications and Affidavits for Search Warrants and 7 Search Warrants and Returns.  Counsel filed a Motion to Suppress regarding this material and Suppression Hearings commenced on August 23, 2005, after 1 year and 2 months of being detained without bail, at which time a Trial Date was set for November 7, 2005.

At the third day of suppression testimony, on September 26, 2005, after 1 year and 3 months of being detained without bail, the prosecutor disclosed 1 additional Search Warrant and Return, 4 additional Applications and Affidavits for Search Warrants (including 2 supporting the Search Warrants and Returns released on July 26, 2004), and 17 DVD and CD Evidence Discs that included 30 wiretapped telephone calls and over 100,000 seized files from two different computers.

The September 26, 2005 late-disclosure caused the court at a October 19, 2005 hearing, to scuttle the November 7, 2005 Trial Date due to the necessity of what it called "Suppression Hearings, Round Two."

The Round One hearings ended October 25, 2005 and the Round Two hearings commenced May 9, 2006 (after 1 year, 11 months of being detained without bail).  During the May-June, 2006 Suppression Hearings the prosecutor disclosed 4 more Search Warrants and Returns, 4 more Applications and Affidavits for Search Warrants, plus 115 First Class Sealed Letters that had been surreptitiously opened and copied without Search Warrants.  This caused the filing of "Round Three" Suppression Motions and Motions for Sanctions under Rule 16.

Actual trial did not commence until June 28, 2006 (over 2 years of pretrial detention without bail).  Meanwhile, commencing with letters to the court in August, 2005, defendant complained of the deprivation of a speedy trial and violation of 18 U.S.C.

3164. This included four successive motions to dismiss on speedy trial grounds. Simply put, had the prosecutor not abused the Automatic Discovery rules, this case would have been tried on November 7, 2005 and there would not have been the unavailablity of defendant's star witness who was available November 7, 2005 but became unavailable by 8 months later for the June-July, 2006 trial.

See Docket Items 49, 50, 53 (Letters); Item 101 Defendant's Motion to Dismiss Due to Deprivation of Speedy Trial and Prosecutorial Misconduct Related Thereto; Item 103 Defendant's Renewed Motion to Dismiss Due to Deprivation of a Speedy Trial and Violation of 18 U.S.C. 3164; Item 119 Defendant's Third Pro Se Motion to Dismiss Due to Deprivation of a Speedy Trial/Prolonged Detention, Item 121 Government's Opposition to Further Additional Motions, Item 139 Renewed Motion for Rule 16 Sanctions; Item 144 Government's Supplemental Opposition to Outstanding Pretrial Motions, Item 145 Defendant's Fourth Motion to Dismiss Due to Deprivation of Speedy Trial (Caused by Government Misconduct); Item 149 Defendant's Closing memorandum Regarding Outstanding Motions; Item 150 Government's Opposition to Fourth Speedy Trial Motion; Item 151 Memorandum and Order Re: pending Pretrial Motions.

## INEFFECTIVE ASSISTANCE OF COUNSEL

## FAILURE TO PROCURE A DEFENSE EXPERT ON SILENCERS

Defendant requested dozens of times both orally and in writing, including many repeated and updated "to-do" lists, to find a defense expert. These requests spanned at least 6-9 months prior to the trial. Counsel failed to do so.

## FAILURE TO FIND AND SUBPOENA MARTIN MACNAUGHTON, THE DEALER OF THE DEVICE IN QUESTION WHO HAD IT MANUFACTURED FOR THE AIR RIFLE

Defendant requested dozens of times both orally and in writing, to issue a subpoena to Mr. MacNaughton. Mr. MacNaughton was not likely to take the Fifth because he freely spoke to ATF Agent Burns in November, 2004 admitting that he was hired to design a sound muffler for the air rifle and that he subcontracted that task out to a Roy Katsen before selling it to the defendant. MacNaughton would have testified that the device was specifically made for the air rifle and that he told the defendant it would not work on a powderburning firearm. Counsel spoke to MacNaughton at one time but misplaced his telephone number. Then, during the week of trial, counsel tried to call MacNaughton at the cell phone number he had when he had spoken to Agent Burns in 2004—that cellphone by then had been inactivated. So counsel gave up and did nothing more.

## FAILURE TO INTRODUCE VIA ATF AGENT BURNS THE MACNAUGHTON EMAILS

The government found a series of e-mails in the Steven Crooker residence search between MacNaughton and the defendant in which the sound device is ordered for the air

rifle and pictures of the air rifle and its dimensions are given to enable the device to be designed and manufactured. Also the money order receipts in payment were attached and a statement by MacNaughton is made where he instructs that the device is built for air only and cannot work on a real firearm. The government wisely chose not to introduce this exculpatory evidence. But the defendant wanted it introduced. It was a centerpiece of the defendant's defense yet counsel simply forgot to get it introduced.

## LACK OF INTERSTATE COMMERCE – FAILURE TO ARGUE THAT DEFENDANT DID NOT "DIRECTLY CAUSE" INSPECTOR DAILEY'S INTERSTATE SHIPMENT OF THE DEVICE TO THE POSTAL INSPECTOR'S OFFICE IN CLEVELAND, OHIO

Counsel was supposed to argue this very important point to the jury but forgot.

## COUNSEL FAILED TO REQUEST LESSER INCLUDED INSTRUCTIONS

Defendant requested counsel to ask for lesser-included instructions of 18 U.S.C. 371 Conspiracy by a Felon to Transport a Firearm in Interstate Commerce, 18 U.S.C. 922(e) Unlawful Delivery of a Firearm to a Common Carrier, and 18 U.S.C. 1715 Knowingly Depositing for Mailing a Concealable Firearm which carried penalties of 0-5 years, 0-5 years, and 0-2 years respectively as opposed to 15 years–Life. Counsel failed to so request and the evidence would support one or more of these lesser-included offenses.

## COUNSEL PARTICIPATED IN A CHARGING CONFERENCE WITHOUT THE PRESENCE OF THE DEFENDANT

On July 10, 2006 defendant arrived in the courtroom only to discover that a Charging Conference had just concluded. Defendant, who has taken an active role in the defense and who authored most of the motions in the case word for word, had previously instructed counsel not to partake in any proceedings without him. Defendant himself authored most of the requested jury instructions including the pro se filing of Docket Item 82 Defendant's Proposed Jury Instructions on "Silencer."

## COUNSEL FAILED TO ISSUE SUBPOENAS TO TWO POLICE OFFICERS ON ATV PATROL

Defendant requested counsel to issue subpoenas to two ATV Patrol Officers who on May 18, 2004 encountered in a remote forest the defendant with a female target shooting with the alleged "silencer" tipped air rifle. These police officers who knew of defendant's former felon status examined the rifle and actually fired it after defendant offered to, and did turn it over to them to prove that it was legal. Counsel forgot to obtain the subpoena forms and never issued them.

Respectfully submitted,

Michael Alan Crooker, pro se
CCI-MacDougall
1153 East Street South
Suffield, CT  06080