```
                  UNITED STATES DISTRICT COURT

                   DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA      )
                              )
     v.                       )    CRIMINAL NO. 04-30034-MAP
                              )
MICHAEL CROOKER               )
```

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Michael Crooker, submits this memorandum to assist the Court in sentencing. For the reasons that follow, defendant submits that the fifteen-year sentence mandated by the Armed Career Criminal Act (ACCA) is inapplicable to him because such a sentence is based on prior convictions not alleged in the indictment or proven to a jury. The Court should therefore sentence defendant without regard to the statutory minimum using the applicable guideline sentencing range of 33-41 months.[1]

Alternatively, should the Court determine that the ACCA applies to defendant, defendant should be accorded a two-level reduction for acceptance of responsibility (notwithstanding his decision to go to trial) for an adjusted offense level of 32; the resulting sentencing range in Criminal History Category VI is therefore 210-262 months. Defendant submits that departure from

---

[1] The 33-41 month range reflects an adjusted offense level of 18 in Criminal History Category IV; this adjusted offense level is derived from a base offense level of 20 (see PSR ¶ 28) with a two-level reduction for acceptance of responsibility as argued infra.

that range to a sentence of 180 months - the minimum permitted under the statute - is warranted using long-recognized and encouraged grounds of departure. Finally, even if the Court finds that recognized grounds of departure do not support a sentence of time served, the Court should consider the sentencing factors contained in 18 U.S.C. § 3553(a) and find that a sentence of 180 months with a period of supervised release to follow is sufficient and not greater than necessary to satisfy the sentencing goals set forth in the statute.

## ARGUMENT

I. **CROOKER IS NOT SUBJECT TO THE ARMED CAREER CRIMINAL ACT (ACCA) EITHER BECAUSE (1) THE PRIOR CONVICTIONS WERE NOT PLED IN THE INDICTMENT AND PROVED TO THE JURY, OR (2) THE GOVERNMENT HAS FAILED TO SHOW THAT THE PREDICATE CONVICTIONS AT ISSUE ARE RELIABLE AND/OR ARE CRIMES OF VIOLENCE.**

   A. **THE GOVERNMENT'S FAILURE TO ALLEGE THE PREDICATE OFFENSES IN THE INDICTMENT AND PROVE THEM AT TRIAL IS A VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION.**

While the indictment in this case alleges that Crooker was a felon at the time of the offense, it does not allege any prior violent felonies or serious drug offenses that would trigger the ACCA. Similarly, the government did not seek to prove to the jury any of the predicate crimes of violence or serious drug offenses necessary to trigger the ACCA's applicability.

The Probation Department issued its draft Presentence Report that identified four predicate violent felonies and one serious

drug offense and concluded that Crooker is an Armed Career Criminal subject to the fifteen-year mandatory minimum sentence specified in the ACCA. Defendant has objected to the PSR's conclusion that the ACCA applies to him.

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court found those provisions of the Federal Sentencing Reform Act of 1984 calling for mandatory Guidelines sentences based on judicial fact-finding incompatible with the Sixth Amendment. <u>Id.</u> at 756. In so doing, however, <u>Booker</u>, like <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) before it, expressly created an exception from its <u>Sixth Amendment</u> holding for facts of prior conviction, stating, "[a]ny fact <u>(other than a prior conviction)</u> that is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilt or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>Booker</u>, 125 S. Ct. at 756 (emphasis added). But this exception is not consistent with the broad reasoning of all three cases, which would seem to require that <u>any</u> fact increasing the sentence range must be either admitted or proven to the jury. See <u>Apprendi</u>, 530 U.S. at 499-523 (Thomas, J., concurring).

In <u>Shepard v. United States</u>, 125 S. Ct. 1254 (2005), decided after <u>Booker</u>, the Court strongly suggested that the prior

conviction exception should be viewed narrowly and that Almendarez-Torres v. United States, 523 U.S. 224 (1998), on which the exception is based, may soon be overturned. In section III of Shepard, which only commanded a four-justice plurality, Justice Souter explained that, in addition to relying on the questionable Almendarez-Torres line of cases, the Court's holding limiting the scope of judicial fact-finding regarding prior convictions was required by the "rule of reading statutes to avoid serious risks of unconstitutionality." 125 S. Ct. at 1263. He explained that judicial fact-finding about disputed prior conviction "raises the concern underlying Jones [v. United States, 526 U.S. 227, 243 n.6 (1999)] and Apprendi: the Sixth and Fourteenth Amendments guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence." Id. at 1262. Justice Souter than noted that the dissent charges the Court's decision "may portend the extension of Apprendi . . . to proof of prior convictions." Id. at 1263 n.5. Justice Souter did nothing to dispel this impression, but instead observes that any risk that a defendant might be prejudiced by proof of prior convictions to the jury could easily be addressed by the defendant waiving the right to have the jury decide that issue.

 The fair implication of this plurality opinion is that any judicial fact-finding that strays beyond the "fact of prior conviction," whether that be facts regarding the nature of the

offense, probationary status, or release date from custody risks constitutional infirmity.  Justice Thomas concurred in the other parts of Shepard but did not join in Part III only because it did not go far enough.  Thomas stated that "a majority of the Court now recognizes that Almendarez-Torres, was wrongly decided," and he would find the ACCA unconstitutional as applied to Shepard because it requires an increase in the sentence based on facts (i.e., the prior convictions) not admitted by the defendant or proven to a jury.  Shepard, 125 S. Ct. at 1264 (Thomas, J. Concurring).

The four-judge plurality, along with Justice Thomas's now oft-repeated statements that Almendarez-Torres was wrongly decided, dictates that a statutory enhancement based on judicially-found prior convictions is unconstitutional.  Cf. United States v. Schlifer, 403 F.3d 849, 852 (7th Cir. 2005)(recognizing that Shepard calls Almendarez-Torres into question but ruling that prior conviction exception applies to guidelines, rather than statutory, enhancement).  Instead, where, as here, the prior convictions raise both the maximum sentence (from ten years up to life) and the minimum mandatory sentence, such convictions must be charged in the indictment and proven to the jury beyond a reasonable doubt.  In the instant matter, the government's failure to allege the predicate convictions and

-5-

prove them beyond a reasonable doubt at trial or plea therefore renders the ACCA inapplicable to Crooker.[2]

Although defendant submits that <u>Almendarez-Torres</u> will ultimately be overruled by the Supreme Court, this Court need not overrule <u>Almendarez-Torres</u> in order to find application of the ACCA unconstitutional as to Crooker.  This is so because the decision in <u>Almendarez-Torres</u> was limited to the particular facts and the <u>Fifth Amendment</u> claim raised there.  In <u>Almendarez-Torres</u>, the defendant admitted in the course of pleading guilty to violating 8 U.S.C. § 1326 that he had been deported pursuant to three earlier felony convictions.  523 U.S. at 227.  For this reason, as the Court in <u>Apprendi</u> noted, <u>Almendarez-Torres</u> raised "no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact." <u>Apprendi</u>, 530 U.S. at 288.  The only issue in <u>Almendarez-Torres</u>, was whether under the <u>Fifth Amendment</u> the prior convictions should have been charged in the indictment.  Since, unlike here, the <u>Sixth Amendment</u> jury trial issue was not factually or legally presented in <u>Almendarez-Torres</u>, the decision must be viewed only as a limited ruling on the <u>Fifth Amendment</u> indictment issue.

---

[2]Defendant recognizes that the First Circuit has repeatedly reject this argument. <u>See</u>, <u>e.g.</u>, <u>United States v. Mastera</u>, 435 F.3d 56, 59 n.1 (1st Cir. 2006)(<u>Almendarez-Torres</u> "remains binding law that we must apply until overruled by a majority of the Supreme Court.").  Defendant nevertheless submits that the prior conviction exception violates the constitutional principles clarified by <u>Apprendi</u>, <u>Jones</u>, and <u>Shepard</u>.

Thus, Almendarez-Torres does not preclude application of Apprendi's Sixth Amendment ruling to prior convictions.

In sum, this Court should deem the ACCA inapplicable to Crooker and should sentence him without regard to the increased statutory maximum and minimum sentences mandated in it.

**B.    OF THE FIVE PREDICATE CRIMES OF VIOLENCE AND SERIOUS DRUG OFFENSES IDENTIFIED IN THE PSR AS POSSIBLE PREDICATES FOR APPLICATION OF THE ACCA, FOUR CANNOT BE CONCLUSIVELY DEMONSTRATED TO MEET THE CONSTITUTIONAL OR STATUTORY REQUIREMENTS NECESSARY FOR ENHANCEMENT.**

- PSR ¶35 - 1970 Hampden County Armed Robbery Conviction

Defendant submits that, although Crooker nominally was represented by counsel, the circumstances of the conviction evidence a complete denial of Crooker's Sixth Amendment right to counsel and therefore should not be counted as predicate for application of the ACCA. Custis v. United States, 511 U.S. 485, 493-97 (1994). Specifically, the PSR correctly notes that Crooker was 16 years old at the time of conviction of the offense. M.G.L. ch. 119 § 74 prohibits the direct institution of criminal charges against any person before his seventeenth birthday. Instead, charges must be brought in juvenile court and then dismissed. Id. In order to dismiss juvenile charges and charge a 16-year-old as an adult, the Commonwealth must hold a transfer hearing before a juvenile court judge who must consider a number of factors before allowing the Commonwealth to proceed against the child as an adult. M.G.L. ch. 119 § 61. Crooker

denies that any such transfer hearing ever occurred in connection with this case and there is no affirmative evidence that such a transfer hearing took place; indeed, the PSR states only that "the juvenile complaint was dismissed and [Crooker] was proceeded against as an adult in Superior Court." PSR ¶ 35. More troubling still is the fact that, despite the PSR's suggestion that Crooker "was already on parole from a Youth Service Board commitment," there is no recording of a juvenile adjudication of any kind. PSR ¶ 34. These indicia underscore a procedure that necessarily occurred without any meaningful assistance of counsel. The conviction should not be counted as a predicate for operation of the ACCA.

- <u>PSR ¶38 - 1975 Connecticut Burglary Conviction</u>

Defendant submits that there is insufficient information to determine whether he was actually convicted of Burglary as the PSR indicates. While the PSR is correct that Crooker did not previously challenge this conviction and its factual allegations when included in prior PSR's, defendant submits that he previously had no reason to do so as the conviction did not substantially affect the outcome of his sentencing.

- <u>PSR ¶43 - 1977 Federal Threatening Communications Conviction</u>

In order to assess whether a prior conviction qualifies as a violent felony for purposes of the ACCA, the Court must first look to the elements of the predicate offense to determine

whether the defendant necessarily was convicted of a crime of violence. Taylor v. United States, 495 U.S. 575 (1990). The Taylor court went on to hold, however, that where the statutory elements include both violent and nonviolent offenses, a sentencing court should adopt a "modified categorical approach" that looks beyond simply the statutory elements. Id. The modified categorical approach is limited to assessing the statutory definition, the charging document, transcripts, and any explicit factual findings made by the trial judge. Shepard v. United States, 544 U.S. 13 (2005).

As set forth in the PSR, defendant appears to have been convicted under 18 U.S.C. § 876. Although that statute describes and criminalizes a variety of offenses that include the "use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(e), it also criminalizes "any threat to injure the . . . reputation of the addressee or another, or the reputation of a ceased person, or any threat to accuse the addressee or any other person of a crime." 18 U.S.C. § 876(d). As a result, this is a statute requiring the "modified categorical approach" of Taylor and Shepard. Here, the description of the offense set forth in the PSR fails to adequately detail whether the offense at issue involved the use, attempt use, or threatened use of physical force rather than a threat to injure reputation or to accuse

another person of a crime.  Consequently, the offense should not be counted as a predicate for purposes of the ACCA.

- <u>PSR ¶46 - 1985 Hampden County Possession of Machine Gun Conviction</u>

While Crooker does not deny that he was convicted of under a Massachusetts generic state statute prohibiting possession of a machine gun, defendant denies that the conduct set forth in this paragraph was the basis for the conviction.  Instead, Crooker maintains he was convicted of possessing a part associated with weapons modification, <u>not</u> possession of a machine gun itself.  In these circumstances, defendant submits that the Court should employ the modified categorical approach and determine that his conduct establishes a non-generic, nonviolent felony violation of the statute.  Thus, the conviction should not serve as a predicate for application of the ACCA.

Defendant recognizes that although the First Circuit has not ruled specifically as to statutes prohibiting machine guns, it has strongly indicated that violations concerning weapons identified in 26 U.S.C. §§ 5845(a) and 5861(d) are violent felonies because they inherently involve conduct that presents a serious potential risk of physical injury to another.  <u>United States v. Fortes</u>, 133 F.3d 157, 161-163 (1st Cir. 1998).  Defendant submits however, that the <u>Fortes</u> court did not consider the unique, non-generic nonviolent manner in which possession of a weapon - or, as in this case, weapons parts - could be

-10-

committed.  The Court should therefore employ the modified categorical approach and determine whether defendant committed the offense at issue in its generic form.  Cf. United States v. Piccolo, 441 F.3d 1084 (9th Cir. 2006)(while recognizing that most circuits consider escape categorically a crime of violence because of inherent physical risk, employing modified categorical approach to determine that failure to return to a halfway house not a crime of violence).

**II.   CROOKER SHOULD BE AWARDED A TWO-LEVEL DECREASE FOR ACCEPTANCE OF RESPONSIBILITY NOTWITHSTANDING HIS DECISION TO GO TO TRIAL.**

Conviction at trial does not automatically preclude a defendant from consideration for acceptance of responsibility. U.S.S.G. §3E1.1, comment. (n. 2).  Examples include cases where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt of the offense, such as when a defendant goes to trial to challenge the applicability of a statute to his conduct.  Id.

Here, the material facts underlying Crooker's conduct have always been largely undisputed.  See, e.g., Memorandum Re: Defendant's Motion to Reconsider/For Clarification of Defendant's Motion to Dismiss (Docket No. 87) at 2 & n.1 (noting lack of dispute as to underpinnings of defendant's Motion to Dismiss). Crooker readily admitted at all times up to and during trial that he possessed the item at issue in the indictment.  The major

dispute at trial was whether his possession of and attempt to mail an airgun muffler was a violation of law - an extremely close legal question with which the Bureau of Alcohol, Tobacco and Firearms itself continues to grapple with.  See BATF Ruling 2005-4, attached hereto as Exhibit A.  Crooker regularly, repeatedly, and at length admitted ownership and intent as he explained to law enforcement agents, the government, and the Court why he held the belief (later determined by the jury to be mistaken) that he could possess, sell, and transport the item notwithstanding his status as a felon.  Consequently, this was a trial not about factual guilt or innocence but rather when and how certain items in the gray fringes of firearm regulation are criminalized, precisely the kind of case contemplated by the Sentencing Commission where acceptance of responsibility could be available after trial.  See U.S.S.G. §3E1.1, comment. (n. 2).

For the above reasons, Crooker should be granted a two-level reduction for acceptance of responsibility notwithstanding the fact that he went to trial.  Such a reduction results in a guideline sentencing range of 33-41 (if Crooker is not subject to the ACCA) or 210-262 (if Crooker is determined to be an Armed Career Criminal).

**III. NEITHER THE SENTENCING COMMISSION NOR CONGRESS CONTEMPLATED THAT THE ELEVATED OFFENSE LEVEL AND AUTOMATIC CRIMINAL HISTORY INCREASE WOULD APPLY TO THE TYPE OF CONDUCT IN WHICH CROOKER ENGAGED; <u>KOON</u> AND U.S.S.G. §5K2.11 PRINCIPLES THEREFORE APPLY AND THE COURT SHOULD DEPART TO A SENTENCE OF 180 MONTHS.**

The facts underlying the Court's sentencing of Crooker have been extensively litigated throughout the pretrial and trial phases of this case. At sentencing, as has been the case throughout this litigation, very little of the factual basis is disputed. Indeed, some common themes based on undisputed facts run through this unique prosecution brought by the United States Attorney's Office for the District of Massachusetts:

- Airgun silencers are widely purchased without special license and, prior to the litigation in this case, buyers of airgun silencers were not on notice that the items were subject to regulation under the National Firearms Act.

- Although airgun silencers have been manufactured and sold to persons in the United States, and possessed by all manner of citizens, none have been seized from any person before law enforcement's investigation and the District of Massachusetts USAO's prosecution of Crooker.

- No United States Attorney's Office in the country has previously brought a prosecution based on possession or transportation of an airgun silencer; indeed, neither the manufacturer of the airgun silencer at issue nor the individual who desired to purchase it (and who possessed several) have been prosecuted.

Notwithstanding these undisputed themes, the Presentence Report recommends a sentence of nearly 22 years on the low end of the guideline sentencing range. For the reasons that follow,

defendant submits that longstanding departure principles compel a sentence of no more than 180 months' imprisonment.

### A. THE CONDUCT UNDERLYING CROOKER'S CONVICTION IN THIS CASE IS ATYPICAL OF THE HEARTLAND OF MISCONDUCT COVERED BY U.S.S.G. § 2K2.1 AND §4B1.4(b).

The draconian guideline sentencing range calculated by the Probation Department - calling for just under 22 years at the low end of the range - is driven far above the mandatory minimum sentence of fifteen years largely because of an additional one-point enhancement in the offense level and automatic two-category enhancement in Criminal History Category.  PSR ¶¶ 32, 52.  Both of these sentence enhancements flow from the airgun silencer's nominal qualification as an item subject to the National Firearms Act.  U.S.S.G. §4B1.4(b)(3)(A) & (c)(2).  In contrast, had Crooker been convicted of being a felon in possession of an automatic pistol - an act clearly and unequivocally a violation of the Gun Control Act - he would face a sentencing range (as an Armed Career Criminal) of only 188-235 months' imprisonment.[3] Defendant submits that the misconduct of transporting a dual-use

---

[3] This sentencing range is derived from a base offense level of 33 that would have been applicable to Crooker's possession of an automatic handgun, see U.S.S.G. §4B1.4(b)(3), and the Probation Department's determination that Crooker would have fallen into Criminal History Category IV if not for the automatic boost to Criminal History VI flowing from his possession of a NFA weapon.  As noted in Section II, supra, defendant submits that two-level reduction for acceptance of responsibility should apply; here, such a reduction would further lower the sentencing guideline range to 135-168 months, far below the applicable statutory minimum.

airgun silencer he in good faith but mistaken belief that it was legal for him to possess is so far out of the heartland of misconduct covered by § 2K2.1 as to require departure to the statutory minimum sentence of 180 months.

The Sentencing Commission specifically envisioned that the district court would have departure authority to properly sentence an individual in an "atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm." U.S.S.G. § 1A1.1, comment. Editorial Note 4(b). The Commission saw this departure provision is necessary, because inevitably there would be "unusual cases outside the range of the more typical offenses for which the guidelines were designed." Id. In its pre-Booker watershed decision in United States v. Koon, 518 U.S. 81 (1996), the Supreme Court cited § 1A1.1 to hold that district courts could consider the fact-bound circumstances of the misconduct at issue to determine whether that misconduct was atypical and thus out of the "heartland" covered by the specific guideline at issue. Id. at 100. In this case, Crooker's conduct, like the Koon defendants' conduct, constitutes an entirely different class of case from the wide range covered by the guideline.

    **1. Conduct That Is a Technical Violation of the National Firearms Act Where the Item at Issue Was Specifically Designed for Legal Use Is Not the Type of Offense for Which the Sentencing Commission Designed Enhanced Penalties**.

<u>Koon</u> provides a highly useful analogy for Crooker's case. The elevated offense level and raised criminal history category clearly contemplate knowing illegal possession of a National Firearms Act (NFA) weapon; the base offense level is a significant and steep step up from clearly illegal possession of an ordinary firearm. The increased sentencing range thus presumes a knowledge element (that the weapon is regulated under the National Firearms Act) with a willfulness aspect (intent to violate the statute)[4] that is simply absent where, as here, the violation arose from a good-faith dispute over the reach of the National Firearms Act ("NFA").

It is clear that the Sentencing Commission did not intend such a result. The first sentencing guideline amendment singling out NFA weapons for higher penalties was added in the 1991

---

[4]There is, of course, generally no requirement that the government prove intent to violate the law to obtain conviction. And indeed, the jury in this case was instructed that it only need find that the defendant knew of the airgun silencer's characteristic ("capable of silencing a firearm") in order to find defendant guilty, notwithstanding his belief that the silencer was not regulated under the NFA. Nevertheless, a defendant's actual intent is highly relevant to the sentencing decision. See 18 U.S.C. § 3553(a)(court must consider the nature and circumstances of the offense in determining whether a sentence is both sufficient but not greater than necessary); U.S.S.G. §5K2.11 (encouraged consideration of intent or purpose of defendant).

amendment cycle to the Sentencing Guidelines. The relevant portion of the amendment, which was eventually adopted as Amendment 374 to the guidelines, arose from a proposal by the Sentencing Commission Firearms and Explosives Materials Working Group (hereinafter "Working Group"). In considering and ultimately developing an increased base offense level for NFA items, the Working Group attempted to reconcile perceived disparate sentencing of defendants whose offenses involved more serious types of firearms but who were actually convicted under statutes not directly addressing NFA weapons. The Working Group wrote:

> Such a system poses an obvious potential for sentencing disparity. <u>Such disparity might be justified if N.F.A. included both serious and minor record-keeping violations, such that the exercise of prosecutorial discretion to distinguish between the two would be appropriate. ATF, informs us, however, that with regard to possession of N.F.A. firearms . . . there are virtually no minor violations</u>.

U.S. Sentencing Commission, <u>Firearms and Explosive Materials Working Group Report</u>, December 11, 1990 ("Working Group Report") at p. 16 (emphasis supplied). A copy of the Working Group Report as attached hereto as Exhibit B.

The case at bar is a case that is directly counter to the premise offered to the Working Group. Crooker's possession of the airgun silencer was accomplished through legally proper channels and with the proviso that because of its design it could not be used on a firearm. Indeed, ATF concedes that an airgun

-17-

silencer, if integral to a weapon, is not regulated by the NFA. <u>See</u> Exhibit A, <u>supra</u>. The undisputed facts at trial establish that Crooker openly sold and then transported the airgun silencer with the airgun to which it belonged in a good faith and logical and belief that neither was not regulated. Consequently, Crooker's offense is quintessentially the kind of minor violation that the Sentencing Commission Working Group was told could not exist. Because the premise upon which the Working Group recommended categorical prohibition was based is completely faulty in Crooker's case, the resulting sentencing guideline - which increase Crooker's sentence by seven years over that applicable to a defendant owning a clearly prohibited firearm - cannot logically apply to Crooker.

Consideration of the guideline history compels the conclusion that Crooker's conduct in possessing the airgun silencer is an "atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm." U.S.S.G. §1A1.1, <u>comment.</u> Editorial Note 4(b). Rather, Crooker's conduct here more closely resembles conduct underlying application of principles underlying the sentencing of those violating minor regulatory offenses that appeared not to have even been considered by the Sentencing Commission when promulgating the harsh enhancements that nominally apply to Crooker. Indeed, Crooker's conduct is less

-18-

culpable; regulatory offenses assume a deliberate violation. Departure to the otherwise applicable mandatory minimum is therefore warranted and the Court should sentence Crooker to 180 months' imprisonment.

### 2. Crooker's Actual Conduct Is Vastly Different From the Mine-Run of Conduct for Which Defendants Are Ordinarily Sentenced Under § 2K2.1.

In Koon, the Court noted with approval the district court's analysis of the "heartland" of assaultive crimes and its determination that the police officers' conduct, while unlawful, did not neatly fit within that heartland. Id. at 102-105. The Court ruled that it was entirely appropriate to consider the wide range of conduct and offenders ostensibly covered by a nominally applicable guideline:

> [U.S.S.G. § 2H1.4] incorporates the Guideline for the underlying offense, here § 2A2.2 for aggravated assault, and thus creates a Guideline range and a heartland for aggravated assault committed under color of law. As the District Court was correct to point out, the same Guideline range applies both to a Government official who assaults a citizen without provocation as well as instances like this where what begins as legitimate force becomes excessive. The District Court did not abuse its discretion in differentiating between the classes of cases, nor did it do so in concluding that unprovoked assaults constitute the relevant heartland.
>
> . . .
>
> The punishment prescribed by § 2A2.2 contemplates unprovoked assaults, and as a consequence, the District Court did not abuse its discretion in departing downward for King's misconduct in provoking the wrong.

-19-

Id. at 105.  That Crooker's conduct was of a completely different class than the mine-run of defendants subject to NFA-induced elevated base offense levels contained in §2K2.1 and §4B1.4 is starkly demonstrated by the undisputed fact that no individual in the country has ever previously (or since) been prosecuted under 18 U.S.C. § 922(g) for possessing an airgun silencer, an item that ATF has admitted that in some forms is not within the purview of the NFA.  Thus, unlike the circumstances of every other prosecution and conviction involving items prohibited by the NFA, the circumstances of Crooker's offense do not implicate the actual prohibition to owning NFA firearms; rather, Crooker's offense is quintessentially a technical regulatory offense where the values of culpability and just desserts are at their lowest. Cf. U.S.S.G. §1A1.1, comment. Editorial Note (4)(f)(discussing general application principles and noting the difficulty in assigning culpability for regulatory violations; reserved the lowest base offense level where an offender may have intentionally violated statute, but without knowledge or intent that substantive harm would follow).  Crooker's conduct is therefore completely out of the heartland of defendants sentenced to enhanced penalties under §2K2.1 and §4B1.4  for possessing silencers prohibited by the NFA.  See Koon, supra, 518 U.S. at 105.