This Court has previously recognized that the wide range of disparate conduct nominally swept within the purview of the firearms guidelines can justify departure in the unusual case. In United States v. Vito Resto, No. 05-30016-MAP, Resto, like Crooker, had a significant criminal history including convictions for drug trafficking, armed robbery, and prior firearms possession. At the time of Resto's offense he was under state court indictment for offenses arising out of a shooting incident. He nevertheless rented weapons and ammunition on two different occasions, falsely stating that he had not been convicted of a felony. In a post Booker sentencing, the Court sentenced Resto to 24 months' imprisonment, substantially below the advisory range of 57-71 months, in part because the nature and circumstances of Resto's conduct warranted consideration not given by the Sentencing Commission.

Resto's conduct was far more culpable than Crooker's good-faith but mistaken belief that the airgun silencer that he openly and notoriously possessed, and constituted acts far more clearly targeted by § 2K2.1 than Crooker's offense. Crooker's actual conduct is of far less serious - both in terms of culpability and in resulting harm - than Resto's. The outcome of that case, Crooker submits, compels the conclusion that departure to a sentence of 180 months - seven and one-half times that imposed on

Resto, and at 33% a reduction of far less magnitude - for Crooker is warranted and appropriate.

**B. DEPARTURE PURSUANT TO U.S.S.G. § 5K2.11 IS WARRANTED BECAUSE CROOKER'S CONDUCT IN POSSESSING AND ATTEMPTING TO MAIL AN AIRGUN SILENCER DID NOT CAUSE OR THREATEN THE HARM OR EVIL SOUGHT TO BE PREVENTED BY THE NATIONAL FIREARMS ACT.**

The undisputed testimony at trial established that the airgun silencer that was the subject of trial was designed for use only on an airgun and was substantially different from an ordinary firearm silencer in that its interior fabric construction made it incapable of repeated use. Crooker submits that departure is warranted because the harm or evil sought to be prevented by the enhanced penalties of the National Firearms Act is completely absent in the circumstances of this case.

U.S.S.G. § 5K2.11, entitled "Lesser Harms," is a Sentencing Commission Policy Statement containing an encouraged departure ground. United States v. Carvell, 74 F.3d 8, 11-12 (1st Cir. 1996)(U.S.S.G. § 5K2.11 is an encouraged departure ground once factual predicate has been established). The relevant portion of the policy statement notes that in some instances "conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue." Id. At least two courts of appeal have recognized that § 5K2.11 authorizes a substantial departure where, as here, the actual conduct in possessing National Firearms Act weapons, while technically

illegal, did not accord with the "harm or evil" sought to be proscribed by the broad reach of the statue. Those courts recognized that the aim of the statue was to prevent violent crimes and loss of human life; thus a lack of criminal motive or intent to use a National Firearms Act weapon in a criminally violent way constituted a basis for departure. United States v. White Buffalo, 10 F.3d 575, 576-77 (8th Cir. 1993)(affirming lesser harms departure because harm or evil that 18 U.S.C. § 5861(d) seeks to prevent "is violent crimes and loss of human life," not reasonable use); United States v. Hardaway, 998 F.2d 917, 920 (11th Cir. 1993) (remand for consideration of § 2K2.11 departure because departure authority clear where possession of sawed-off shotgun - one item amongst a large collection of guns - was for reasonable purposes and defendant demonstrated no intent to use it in criminal fashion).

In White Buffalo, the defendant was convicted of possession of unlawful possession of an unregistered short-barreled rifle that was subject to the National Firearms Act. Id. at 575. The defendant testified that he used the gun to kill vermin, and that he had sawed off the rifle to make it easier to handle in close quarters. Id. At sentencing, the district court downwardly departed pursuant to § 5K2.11 to a sentence of three years probation, finding that White Buffalo did not use the gun in a violent or offensive way and that therefore his actions were not

the kind of misconduct and danger sought to be prevented by the gun statute. Id. at 576. The district court reasoned that 18 U.S.C. § 5861 was designed to protect people from crime and violence and not to restrict the otherwise lawful use of weapons. Id.

The government appealed, arguing that § 5K2.11 can never apply to possession of National Firearms Act weapons. Id. The Eighth Circuit rejected the government's argument and affirmed the departure, noting that the guideline itself authorizes departure for possession that is technically unlawful:

> As an example of a situation to which § 5K2.11 applies, the guideline points to "a war veteran's possession of a machine gun or grenade as a trophy." Given this example, the sentencing commission must have envisioned departures under § 5K2.11 when an illegal weapon is not possessed for an unlawful purpose. Indeed, the legislative history shows the "harm or evil" the law seeks to prevent is violent crimes and loss of human life.

Id. at 576-77 (citing H.R. Rep. No. 1577, 90th Cong., 2d Sess., reprinted in 1968 U.S.C.C.A.N. 4410, 4412-13).

In United States v. Hardaway, the defendant consented to a search of his home where a short-barreled shotgun was found. Id. at 919. He argued at sentencing that the circumstances of his possession of the shotgun - he acquired it in trade for building material and was not sure it worked - were atypical and not what Congress intended in providing for the stricter penalties under the National Firearms Act. Id. The district court believed it

had no discretion and refused to depart. Id. The Court of Appeals reversed, crediting the defendant's argument that possession of a "sawed-off shotgun for reasonable purposes with no intent to use it in the fashion that our gun laws are designed to deter." Id. at 919-20. The Eleventh Circuit noted the wide range of conduct reached by the gun control and National Firearms Acts and held that the district court had clear authority, pursuant to § 5K2.11, to take into account the circumstances and intent involved in possession of a National Firearms Act weapon, including whether the violation involved the inherent lethality and potential for use in criminal activity. Id. at 920 & n.5.

Crooker's conduct here is exactly the kind of technical violation that Eighth Circuit recognized in White Buffalo and the Eleventh Circuit identified in Hardaway. Indeed, Crooker's conduct was more quintessentially technical than the conduct in either White Buffalo or Hardaway: unlike those defendants, Crooker's purchase, possession, and sale of the airgun silencer was accomplished openly and through entirely proper channels. Consequently, Crooker's conduct here does not, as was the case in White Buffalo or Hardaway, concern a prohibition to owning the firearm at issue; rather, the offense was a technical violation as to whether the airgun silencer was subject to the NFA at all.

Most importantly here, as was the case in White Buffalo and Hardaway, the evidence is undisputed that Crooker's possession

and transportation of the airgun and silencer, while technically illegal because of the silencer's capability to also muffle an actual firearm, was for a reasonable purpose and bereft of any intent to use the silencer in a criminal fashion. The Court should therefore find - as did the Courts of Appeal in White Buffalo and Hardaway - that the harm or evil sought to be vindicated by the statute and its accompanying high guideline is simply not present in Crooker's conduct in the circumstances of this case. Rather, the harm or evil targeted by the government in Crooker's case is his incorrect legal interpretation of the NFA.

The lesser harm involved in Crooker's conduct is more than adequately captured by a sentence of 180 months. See generally U.S.S.G. §2K2.1, comment. (n.5)(providing for departure, in certain circumstances not applicable here, to a base offense level of six to reflect the minor nature of the violation where a defendant does not seek to avoid firearms law or intend any other underlying unlawful purpose).

Departure is therefore warranted and a sentence of 180 months is appropriate to reflect the seriousness of the offense. White Buffalo, supra, 10 F.3d at 577 (departure from level fifteen to level eight on the basis of § 5K2.11 alone reasonable).

**IV. EVEN IF LONG-STANDING DEPARTURE GROUNDS DO NOT COMPLETELY SUPPORT A SENTENCE OF TIME SERVED, A SENTENCE OF 180 MONTHS - THE MINIMUM ALLOWABLE UNDER THE STATUTE - COMPORTS WITH THE SENTENCING GOALS OF 18 U.S.C. § 3553(a).**

Tensions in the guideline promulgation process have resulted in sentencing guidelines that are generalized and can produce outcomes that may appear unreasonable to sentencing judges in particular cases. United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006). Thus, under United States v. Booker, 125 U.S. 738, 757 (2005), sentencing courts are to treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a) keeping in mind the primary directive that sentencing courts "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Id. See Jimenez-Beltre, supra, at 518("Booker's remedial solution makes it possible for courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness.") This obligation includes consideration of factors that, under the former mandatory guidelines regime, might not or could not support deviation from the guideline sentencing range. See United States v. Jones, 445 F.3d 1 (1st Cir. 2006)(no legal error in considering factors discouraged or forbidden under guidelines); United States v. McBride, 434 F.3d 470, 476 (6th Cir. 2006)("the decision to deny a Guidelines-based downward departure is a smaller factor in the sentencing calculus . . .

many of the very factors that used to be grounds for a departure under the Guidelines are now considered by the district court -- with greater latitude -- under section 3553(a)”).

**A. A sentence of 180 months more than adequately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.**

There is no disputing that the conduct Crooker engaged in was serious; Congress has given the Bureau of Alcohol, Tobacco, and Firearms some latitude and discretion to determine which items fall into its purview and which do not, and the government has an interest in insuring that individuals comply with those dictates. Notwithstanding the seriousness of his behavior, Crooker’s conduct here was far more benign than the possession and trafficking of an ordinary firearms silencer. As the undisputed evidence at trial demonstrated, the airgun silencer at issue, although capable of effectively muffling a single firearm report, was not designed to work with a firearm and would have been quickly destroyed had it been so used.

_____The offense conduct here arguably merits significant punishment; the jury’s verdict explicitly recognized that Crooker went too far in his attempt to push the envelope of permissible activities given his status as a felon. It cannot be seriously argued, however, that in these circumstances only a sentence of almost 22 years can promote respect for the law, both specifically as to Crooker and generally as to the public at

large.[5] Even a sentence at the statutorily mandated minimum of 180 months will keep Crooker incarcerated in federal prison until his late 60's as a result of his good-faith but mistaken belief that the airgun silencer shipped with the airgun it was designed for was not subject to NFA regulation. The public's right to just punishment for the offense is more than vindicated by Crooker's conviction and punishment by the significant sentence created by the mandatory minimum floor. See United States v. Bariek, 2005 WL 2334682 (E.D. Va., 2005)(unpublished)(variance from a guideline in part justified because defendants lacked knowledge of the regulation he was accused of violating - an element Congress expressly omitted from the statute - and showed no effort to hide his noncompliance).

**B. A Sentence of 180 Months Is Appropriate Notwithstanding the Sentencing Range Established by the Sentencing Commission.**

As argued in Section III(A), supra, Crooker submits that the guideline sentencing range nominally applicable to him is artificially inflated by the erroneous premise that possession of a firearm automatically represented increased culpability and

[5] As the Court is aware, Crooker's predilection for and success in litigation has resulted in a certain amount of celebrity, particularly in the airgun and firearms public arena. Not surprisingly, his conviction and potential sentence have already attracted public notice in these communities. See, e.g., http://www.beemans.net/silencers_on_airguns.htm (last visited April 12, 2007)(discussing "America's First Airgun Silencer Case").

potential harm. Crooker submits that independently of any heartland departure analysis, 180 months is sufficient but not greater to achieve the goals set forth in 18 U.S.C. § 3553(a). See Jimenez-Beltre, supra, at 518("Booker's remedial solution makes it possible for courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness.").

**C. A Sentence above 180 Months Will Create Unwarranted Sentencing Disparity.**

Crooker's actual conduct here - as set forth more fully in Section III, supra - was comparatively benign and clearly would not have been prosecuted absent the government's singular exercise of discretion to prosecute Crooker under a strict-liability theory in response to factors unrelated to his actual culpability or even guilt in this case. Such exercises in discretion cannot help but create unwarranted sentencing disparity where, as here, the prosecution brings with it draconian sentencing enhancements and a statutory minimum sentence below which the Court may not go.

Commentators have long noted that broad federal jurisdiction to pursue de minimis technical infractions as well as more substantive violations of criminal law presents the opportunity for selective federal prosecution, which may result in a disparity between similarly-situated persons for reasons other than the nature of the conduct or other legitimate law

enforcement needs. See Task Force on the Federalization of Criminal Law, Am. Bar Ass'n, The Federalization of Criminal Law 28-32 (1998); Paul Rosenzweig, The Gang Act Needs Modification, Web Memo published by the Heritage Foundation (May 3, 2004), www.heritage.org; Steven D. Clymer, Unequal Justice: The Federalization of Criminal Law, 70 S. Cal. L. Rev. 643 (March 1997); Jay M. Cohen & David J. Fried, United States v. Lopez and the Federalization of Criminal Law, 29-DEC Prosecutor 23, 27 (Nov./Dec. 1995); Sara Sun Beale, Reporter's Draft for the Working Group on Principles to Use When Considering the Federalization of Criminal Law, 46 Hastings L.J. 1277, 1300 (April 1995). At the same time, Courts have traditionally had the power, through their sentencing decisions, to ameliorate the effect of those discretionary prosecution decisions in unusual circumstances, even where that reason does not rise to a level where dismissal might have been warranted. United States v. Jones, 399 F.3d 640, 649-50 (6th Cir. 2005)(after Booker, district court may consider selective prosecution as basis for sentence below the guideline range). United States v. Jones, 399 F.3d 640, 649-50 (6th Cir. 2005)(after Booker, permissible for district court to consider outrageousness of local police department practice); United States v. Coleman, 188 F.3d 354 (6th Cir. 1999)(district court erred in refusing to consider improper investigative techniques selectively aimed only at African

Americans as ground for downward departure); United States v. Parham, 16 F.3d 844, 848 (8th Cir. 1994) (district court could consider government's "bizarre" selection of black voting registrars for prosecution for voter fraud in county where blacks had long been disenfranchised as basis for downward departure).

As the Court recognized in its decision denying defendant's Motion to Dismiss, the United States Attorney's Office possesses nearly unlimited discretion to prosecute in the absence of invidious motive. See Memorandum and Order Re: Pending Pretrial Motions (Docket #151). That required deference, however, ends at the charging decision: a sentencing court may ameliorate those decisions that result in unjustifiable sentencing disparity created by investigative and prosecutorial decisions. See, e.g., United States v. Montoya, 62 F.3d 1, 4 (1st Cir. 1995)(sentencing court may reduce sentence "even in the teeth of a statute or guideline approved by Congress," to ameliorate government conduct). Here, the government's charging decision has brought with it a 180-months sentence required to be imposed for conduct far less culpable than that underlying any other defendant similarly sentenced. A seven-year increase above that minimum only serves to widen the disparity. Defendant submits that this fact alone warrants a sentence substantially below the advisory guideline range.

## CONCLUSION

For the foregoing reasons, if the Court finds that Crooker is not subject to the ACCA, it should sentence him to a term of 33 months. If the Court finds that Crooker is subject to the enhanced statutory penalties of the ACCA, it should impose a sentence of imprisonment of 180 months. The Court should impose no fine.

MICHAEL CROOKER
By his attorney,

/s/ Timothy Watkins
Timothy Watkins
B.B.O. #567992
Federal Defender Office
408 Atlantic Ave., Third Floor
Boston, MA 02110
(617) 223-8061

CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), as well as to United States Probation Officer Richard Rinaldi by electronic mail, on April 16, 2007.

/s/ Timothy G. Watkins
Timothy G. Watkins