UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
                                  )
V.                                )          CR-04-30034-MAP
                                  )
                                  )
MICHAEL ALAN CROOKER              )


AFFIDAVIT OF MICHAEL ALAN CROOKER
REGARDING THE LEGITIMATE USES OF SILENCERS

I, Michael Alan Crooker, declare as follows:

(1)  This affidavit is to respond to the Government's allegation at Page 11 of their Sentencing Memorandum that "There is no legitimate purpose for a silencer."

(2)  The air rifle silencer in this case, Exhibit 9, as well as the oil filter mentioned in Exhibit 38, and the lawnmower muffler mentioned by AUSA O'Regan in his Opening Arguments to the jury at Page 13 of the June 29, 2006 Transcript, under this court's definition, are all silencers but all have legitimate uses as well.

(3)  The court itself stated so on Page 4 of Document 172 Memorandum and Order:  "Indeed it is hard to fathom how this sort of specific intent could be proved beyond a reasonable doubt in the face of evidence that the device had other uses."

(4)  When AUSA O'Regan questioned ATF Expert Richard Craze on June 30, 2006, at Page 92:

-2-

Q.      Can silencers be used with air rifles?

A.      Yes, sir.

Q.      And what would be the purpose of using a silencer with
        an air rifle?

A.      Well, air rifles are very loud and it would be the
        same in theory as it would be on a firearm to entrap
        the energy that's pushing the projectile out of the
        weapon.  So if you can entrap that, you will lessen
        the noise of that particular device.

        (5)  At Page 94 AUSA O'Regan continues on:

Q.      And could this silencer, Government's Exhibit Number 9,
        be screwed on the front of Government's Exhibit Number
        4 and be used to silence the sound of this air rifle?

A.      As you've demonstrated, yes.

        (6)  Page 82 of the July 5, 2006 Transcript mentiones

Defense Exhibit G, an ATF Evidence Transmittal Form, that has

the language "All four silencers were fitted for air rifles

ranging from .22 to .44 caliber and were advertized as

moderators."

        (7)  ATF Agent Larry Ward also testified that when he

found three additional air rifles equipped with silencers in

the home of Mr. Paulus, that Mr. Paulus told him that he used

them to muffle the sound of his air rifles so as to not irk

his neighbors.

        (8)  At no time during the 3-year course of this criminal

case has there been even a suggestion, let alone proof, that

the air rifle device was used or intnded to be used for anythiug

but a legitimate purpose.

-3-

(9)  I am aware of at least two times that ATF has
ruled that silencers for airguns were legitimate and permitted.

(10)  On July 26, 1987 ATF ruled that a silencer made or
marketed by West End Paintball Supplies for a compressed air
gun was not a silencer for a firearm.  This was Defense Exhibit
J for Identification.

(11)  On October 12, 2005 in ATF Ruling 2005-4 ATF ruled
that .68 caliber compressed air paintballguns equipped with
integral silencers were legitimate and permitted, even though
examiners were able to hacksaw off and use them with adapter
pieces to muffle the report of a Ruger gunpowder firearm.
This was marked Defense Exhibit B for Identification.

I DECLARE THAT THE FOREGOING IS TRUE AND CORRECT.  EXECUTED
THIS 7TH DAY OF JUNE, 2007.  28 U.S.C. 1746.

S/ _Michael Alan Crooker_
Michael Alan Crooker
CCI MacDougall
1153 East Street South
Suffield, CT   06080

AIRGUNS VERSUS PAINTBALLGUNS

July 5, 2006 Transcript at Page 98-99

Q.      And would you agree with me that at least in the past
        ATF has had occasion to classify some air gun and
        paintball silencers as actual firearm silencers and
        some were not?

                MR. O'REGAN:  Objection.

                THE COURT:  I'm going to sustain the objection.

Q.      (By Mr. Bongiorni)  Are you aware of whether or not
        while you were employed in the Firearms Technology Branch
        whether examiners such as yourself had classified some
        paintball silencers as non-firearms?

                MR. O'REGAN:  Objection.

                THE COURT:  I'm going to sustain the objection.
                I'm going to preclude any testimony with regard
                to paintball silencers.

Q.      (By Mr. Bongiorni)  Have you yourself ever examined
        any suspected silencers that were designed or adapted
        for use on a paintball gun or an air gun?

                MR. O'REGAN:  Objection.

                THE COURT:  Well, I'm going to sustain the objection
                with regard to paintball gun.  I will allow the
                question with regard to an air gun.


(At no point, in any portion of these 3-year's proceedings, has
 anyone ever drawn a distinction between an "air gun" and a
 "paintball gun."  There is in fact no legal or physical
 difference.)